Michael W. Malter, Esq. #96533
Robert G. Harris, Esq. #124678
Julie H. Rome-Banks, Esq. #142364
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Michael@bindermalter.com
Rob@bindermalter.com
Julie@bindermalter.com

Proposed Attorneys for debtor and debtor in possession
Artesian Future Technology, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>ARTESIAN FUTURE TECHNOLOGY, LLC,<br>a North Carolina limited liability company,<br>dba ARTESIAN BUILDS, dba ARTESIAN,<br>LLC, dba BLDYR, INC., dba ARTESIAN,<br><br>Debtor. | Case No. 22-40396 CN<br><br>Chapter 11<br><br>Date: May ____, 2022<br>Time: 11:00 a.m.<br>Place: Via Tele/Videoconference |

**MOTION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 105 APPROVING THE ENGAGEMENT CONTRACT BETWEEN BPM, LLP AND THE DEBTOR**

TO THE HONORABLE CHARLES NOVACK:

Artesian Future Technology, LLC, the debtor and debtor in possession (the "Debtor" or "Artesian") moves this Court for approval of the April 22, 2022 Consulting Engagement Letter Terms & Conditions (the "Engagement Contract") governing the terms of engagement and compensation of Edward Webb, DBA and a partner at BPM, LLP ("BPM") as the Chief Restructuring Officer ("CRO") of the Debtor and as its Responsible Individual ("RI") and for BPM to provide support to the CRO as set forth below. The Engagement Contract is attached as

Exhibit "A" to the Webb Declaration[1] filed in support of this Motion. The Debtor seeks approval of the Engagement Contract under 11 U.S.C. §363 conditioned on compliance with the Jay Alix Protocol.

The Debtor respectfully represents as follows in support of this Motion:

## I.     STATEMENT OF FACTS

**A. Commencement of Bankruptcy Case**

1. On April 22, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in which it elected to proceed under Subchapter V of title 11. The Debtor is managing its property as a debtor and debtor in possession pursuant to section 1184 of the Bankruptcy Code.

**B. General Background**

2. The Debtor is a North Carolina limited liability company with operations in Oakland, California and Durham, North Carolina. The Debtor was founded by Noah Katz. Noah Katz is Debtor's managing member and sole owner. Prior to February 2022, the Debtor manufactured high end custom computers for gaming and cryptocurrency mining and related parts. The Debtor developed a strong following in the gaming community and reputation for quality associated with its name. On March 1, 2022, the Debtor's reputation and industry following were damaged severely after a small streamer asserted that Mr. Katz, had, during a livestreamed event, denied her a sweepstakes prize in a drawing. Unfortunately, the streamer's complaint was retweeted over 8,000 times. Mr. Katz later apologized, but those events eventually resulted in a steep downward financial spiral for the Debtor. The Debtor was forced to close

---

[1] Declaration Of Dr. Edward Webb In Support Of Motion For Entry Of Order Pursuant To Bankruptcy Code Sections 363 And 105 Approving The Engagement Contract Between At BPM, LLP And The Debtor (the "Webb Declaration").

down its operations and laid off all of its employees. As a result, the Debtor now maintains saleable inventory both Oakland and North Carolina. The Debtor has engaged in discussions with several potential buyers in an effort to arrange a competitive sale of these assets and maximize what may be a valuable brand name. No sale of the Debtor's name or assets can recover market value with Mr. Kat' reputation influencing potential buyers. In addition to a fresh face for the sale, strong financial management is necessary to prepare the books and records for the expected sale. As a result, the Debtor has moved for approval of a chief restructuring officer.

**C. Engagement of BPM**

3. Debtor seeks to retain BPM whose address is 2001 North Main Street, Suite 360, Walnut Creek, CA 94596. BPM is a full-service audit, tax and financial consulting firm with over 64 partners and 12 offices in internationally.

4. On March 16, 2022, the Debtor engaged BPM to provide operational and financial management advice in anticipation of bankruptcy. A copy of BPM's March 16, 2022 Engagement letter is attached to the Webb Declaration as Exhibit "B". BPM's pre-filing tasks included preparing a situational analysis, evaluating asset value, and determining short- and long- term debt constraints. This work included accounting statement review and the updating the Debtor's balance sheet. BPM was engaged with an Initial Retainer (defined below) of $50,000.

5. On April 22, 2022, the Debtor entered into the Engagement Contract that is the subject of this Motion. Dr. Webb's duties under the Engagement Contract are to serve as the Debtor's CRO, provide financial reporting and management advice to Artesian including advice regarding cash flow management, oversee bank accounts, and engage in lease negotiations, lead efforts to market and conduct an asset sale, oversee the management of the bankruptcy for the Debtor, and develop a Subchapter V plan. Dr. Webb's billing rate for this case is $680 per hour.

6. The Engagement Contract contemplates accounting support from three other employees of BPM: (a) Managing Director Michael Ruane who specializes in valuation services and financial analysis, (b) Corporate Finance Associate Mahnoosh Moghadam, who will provide transactional services and general financial support, and (c) Executive Assistant Terri Oswald, who will provide general support to all members of BPM's team on this engagement. Mr. Ruane's hourly billing rate is $420.00. Mr. Moghadam's hourly rate is $240.00. Ms. Oswald's services will not be charged to the Debtor.

7. Exhibit A to the Engagement Contract provides as follows: "Indemnification. You agree to indemnify, defend, and hold harmless us and any of our partners, principals, shareholders, officers, directors, members, employees, agents or assigns with respect to any and all claims made by third parties arising from this engagement, regardless of the nature of the claim, and including the negligence of any party, excepting claims arising from our gross negligence or intentionally wrongful acts." As part of this Motion, the Debtor requests that the Court approve this limited indemnification provision.

**D. Third-Party Retainers Paid and Source**

8. The only way to maximize asset value through a bankruptcy was to retain the legal and financial professionals and a CRO. Debtor had no liquid assets to pay for such fees. The only way for the Debtor could do so was to borrow. The only lenders willing to advance funds were Belinda Novick and Barry Katz, the parents of Noah Katz. Ms. Novick and Mr. Barry Katz were only willing to make this loan on a secured basis.

9. On April 6, 2022, the Debtor authorized by unanimous written consent the borrowing of $398,425 from Belinda Novick and Barry Katz, as lenders, and the granting of a lien against its assets to secure it. On the same date the Debtor (under the signature of Mr. Noah Katz) executed a Secured Demand Promissory Note (the "Note") and a security agreement to evidence

MOTION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 105 APPROVING THE ENGAGEMENT CONTRACT BETWEEN BPM, LLP AND THE DEBTOR Page 4
Case: 22-40396    Doc# 12    Filed: 04/27/22    Entered: 04/27/22 14:48:22    Page 4 of 14

the debt. The purpose of the secured borrowing was to fund pre-petition professional fees and post-petition retainers for BPM and general reorganization counsel, Binder & Malter, LLP, and to pay certain critical expenses such as rent. Ms. Novik and Mr. Barry Katz filed UCC-1 financing statements with the Secretaries of State of North Carolina and California on April 6, 2022. The Note, the security agreements and the two UCC-1 financing statements are attached to the Webb Declaration as Exhibits "C", "D" and "E".

10. On March 23, 2022, BPM received a wire transfer of $50,000 from Belinda Novik (its "Initial Retainer") as an advance under the Note. BPM expended $46,934.12 of the Initial Retainer prior to the filing of this bankruptcy case.

11. On April 12, 2022, BPM received $100,000 from the trust account of Baskin & Fowler[2] as a further advance under the Note. The remaining $3,065.88 from the Initial Retainer, along with the $100,000 paid on April 12, 2022, constitutes BPM's Chapter 11 retainer for this case.

12. The relief requested herein is necessary to the successful administration of this bankruptcy case. The Debtor seeks to retain the CRO and BPM so they may continue to provide financial, accounting, management services and guide the Debtor through a successful resolution of its chapter 11 case. Further, any delay of the CRO's, and BPMs services could cause irreparable harm to the Debtor's estate.

## II. QUALIFICATIONS

**E. Qualifications of Dr. Edward Webb as Chief Restructuring Officer**

---

[2] Mr. Caleb Baskin was counsel for Artesian at the time. Mr. Baskin resigned as entity counsel just prior to the bankruptcy filing. Mr. Baskin now represents Belinda Novick and Barry Katz personally

13. Dr. Edward Webb's curriculum vitae are attached as Exhibit "C' to his supporting declaration. Dr. Webb leads the Corporate Finance Consulting group at BPM and sits on the firm's Board of Directors and Management Committee and serves as Partner in Charge of the firm's Virtual Region. Dr. Webb was on the adjunct faculty at San Jose State University for 9 years. Dr. Webb has served both as an interim Chief Executive Officer and Chief Restructuring Officer of troubled companies, a rents and profits receiver, a financial advisor in bankruptcy cases, and an expert witness in litigation. Dr. Webb is a Certified Turnaround Professional (CTP), 2016 and completed Bankruptcy Mediation Training, St. John's University/ABI, 2016. Dr. Webb's academic credentials include a BA with Honors from the University of North Carolina at Chapel Hill; an MBA in Finance from Indiana University; and, a Doctorate in Business Administration from Temple University.

14. Michael Ruane is a Managing Director in BPM's Advisory practice and specializes in providing valuation services and financial analysis to clients of all sizes for diverse purposes. Mr. Ruane's academic credentials include the following: B.B.A. in Finance from Loyola University Chicago; M.B.A. in Finance from Loyola University Chicago; Accredited Senior Appraiser by the American Society of Appraisers; and Member of the Board of Examiners of the American Society of Appraisers. Mr. Ruane is budgeted to expend 50 hours on this case. Mr. Ruane's resume is attached to the Webb Declaration as Exhibit "G".

15. Mahnoosh Moghadam is a Finance associate with the responsibility of preparing weekly cash reports, assisting in the cash flow budgeting process. She also provides additional accounting support for bankruptcy reporting requirements. Ms. Moghadam is a graduate of University of California, Irvine and has 4 years of restructuring focused finance and accounting experience. Mr. Moghadam is budgeted to expend 100 hours on this case. Mr. Moghadam's resume is attached to the Webb Declaration as Exhibit "H".

16. As a firm, BPM has advised dozens of clients over the past 5 years in bankruptcy and insolvency proceedings across the country and is well qualified to provide the services set forth in the Engagement Contract.

**F. Compliance with Jay Alix Protocol**

17. Notwithstanding any provisions of the Engagement Contract to the contrary, consistent with the "Jay Alix Protocol" implemented by the Office of the United States Trustee, Dr. Webb and BPM agree that:

a. In the event the Debtor seeks to have any of persons assume executive officer positions other than Dr. Webb, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed.

b. No principal, employee, or independent contractor of BPM and its affiliates will serve as a director of the Debtor during the pendency of the Debtor's chapter 11 case.

c. For a period of three (3) years after the conclusion of the engagement, neither BPM nor any of its affiliates will make any investments in the Debtor.

d. BPM shall file with the Court and serve copies on the United States Trustee and the Subchapter V trustee, a monthly report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

e. BPM shall file with the Court and serve copies on the United States Trustee and the Subchapter V trustee, reports of compensation earned and expenses incurred on at least a quarterly basis. Such reports shall contain summary charts which describe services provided, identify the compensation earned by the CRO and each BPM employee provided, and itemize the expenses incurred. Time records for the CRO and all Additional

Personnel shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. When BPM personnel are providing services at an hourly rate, such personnel shall record their time entries in increments of no greater than one-half hour (0.5). All compensation shall be subject to review by the Court in the event an objection is filed. The first quarterly report will be submitted forty-five (45) days from the end of the first calendar quarter after the Petition Date and will cover the period to and including the last day of the first quarter after the Petition Date. This procedure will continue at three-month intervals thereafter. Because the CRO and BPM are not being employed as professionals under section 327 of the Bankruptcy Code, they will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. The CRO and BPM will, however, submit the reports described above.

### G. DISINTERESTEDNESS OF BPM

18. Although the Debtor does not propose to retain the CRO and BPM under section 327 of the Bankruptcy Code, BPM and the CRO have nonetheless performed a computerized conflict check and, to the best of their knowledge and except to the extent disclosed in the Webb Declaration and below, do not hold any interest adverse to the interests of the Debtor's estate. By his declaration, Dr. Webb provides full and complete disclosure to demonstrate that he and BPM satisfy all requirements that would be imposed by the Bankruptcy Code and Bankruptcy Rules for employment under section 327.

19. The CRO and BPM have agreed not to share with any person or entity any compensation received by it in the Debtor's case with any non-affiliated entity.

20. The Debtor does not owe BPM or the CRO any amount for services performed or expenses incurred prior to the Petition Date as BPM drew down from funds on hand for all unpaid

fees and costs before the filing. The CRO had incurred no fees as of the filing. Thus, BPM and the CRO are not pre-petition creditors of the Debtor.

21. Neither the CRO nor BPM, nor any of its principals, employees, agents or affiliates, have any connection with the Debtor, its significant creditors, the United States Trustee or any other significant party with an actual or potential interest in this bankruptcy case or their respective attorneys or accountants, except as set forth in the Webb Declaration and as follows: (a) BPM's and the CRO's pre-petition fees and Chapter 11 retainer were paid from an advance under the Note; and (b) BPM has worked as an appointed accounting, finance and/or valuation professional in other chapter 11 bankruptcy cases in the Northern District of California Bankruptcy Court in which Binder & Malter LLP has been counsel for the chapter 11 debtor.

## H. IN RE LOTUS PROPERTIES ANALYSIS

22. 11 U.S.C. §§ 327(a) and 1107 provide authority which can be applied, by analogy, to BPM's employment under section 363 and the Jay Alix Protocol. These sections authorize a debtor-in-possession, with the court's approval, to employ attorneys "…that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." BPM does not represent any other person or entity in this case and has no claim against the estate.

23. The term "adverse interest" is not defined in the Bankruptcy Code. Reported cases have defined what it means to hold an adverse interest as follows: "(1) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate." *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688, 2006 Bankr. LEXIS 1664, *13 (9th Cir. BAP 2006).

24. Disinterestedness is implicated when a third party supplies a professional's retainer or pays its fees. The Ninth Circuit follows the majority view that such payments do not result in

*per* se disqualification. Instead, courts are to apply the "analytical" or "totality of circumstances." test. In *In re Lotus Properties, LP*, 200 B.R. 388, 391 (Bankr. C.D. Cal. 1996), the bankruptcy court refused to adopt a per se rule against legal representation by payment from a third party, in that case the principal of the debtor, and instead adopted the approach set forth in <u>In re Kelton</u>, 109 Bankr. 641 (Bankr.D.Vt. 1989):

> Kelton established a five-part test to serve as a guideline where counsel for the debtor is funded by debtor's insiders. The list includes the following elements:
>
> (1) the arrangement must be fully disclosed to the debtor/client and the third-party payor/insider;
>
> (2) the debtor must expressly consent to the arrangement;
>
> (3) the third-party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;
>
> (4) the factual and legal relationship between the third-party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation;
>
> (5) the debtor's attorney/applicant must demonstrate and represent to the Court's satisfaction the absence of facts which would otherwise create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest. Id. at 658.

<u>In re Lotus Props. LP</u>, 200 B.R. 388, 393, 1996 Bankr. LEXIS 1425, *15-16 (Bankr. C.D. Cal. 1996). Application of the Lotus Properties/Kelton factors to the appointment of Dr. Webb and BPM follows.

**Factor 1:** <u>The Arrangement Was Fully Disclosed to the Court and Creditors Through Broad Notice of This Application.</u>

25. Ms. Novik, Mr. Barry Katz and Artesian were each sent letters pursuant to the obligations of counsel under Rule 3-310(f) of the California Rules of Professional Conduct that

MOTION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 105 APPROVING THE ENGAGEMENT CONTRACT BETWEEN BPM, LLP AND THE DEBTOR
Page 10
Case: 22-40396    Doc# 12    Filed: 04/27/22    Entered: 04/27/22 14:48:22    Page 10 of 14

included disclosures as to the CRO and BPM, though accountants are not subject to California's Ethics Rules as are counsel. The letter to the Debtor, which is available on request for in camera review, provides the following mandatory notifications:

> Ms. Novik and Mr. Barry Katz paid $398,425 for current fees and costs as well as Chapter 11 retainers of BPM and Binder & Malter, LLP and operating expenses and took a lien against estate assets to secure the borrowing;
>
> The Debtor must consent to payment by Ms. Novik and Mr. Barry Katz of the fees and retainers referenced above to address the hypothetical issue of a professional's loyalties being divided.
>
> Ms. Novik and Mr. Barry Katz are not the client, the Debtor is, and BPM and Binder & Malter will represent Artesian's interests fully and vigorously without regard to the interests of Ms. Novik and Mr. Barry Katz.

26. The letter to Ms. Novik and Mr. Barry Katz, a copy of which is attached as Exhibit "I" to the Webb Declaration provides as follows:

> This letter discusses the fact that you loaned Artesian $398,425.00 for use to pay professional fees, retainers and operational expenses and took and perfected a lien against Artesian's assets to secure that borrowing.
>
> On April 6, 2022, the Debtor under the signature of your son, Mr. Noah Katz, executed a Secured Demand Promissory Note (the "Note") to evidence the $398,425 debt. The purpose of the secured borrowing was to fund pre-petition professional fees and post-petition retainers for BPM, LLP ("BPM") and general reorganization counsel, Binder & Malter, LLP and pay other operating expenses. You filed UCC-1 financing statements with the Secretaries of State of North Carolina and California on April 6, 2022.
>
> The loan proceeds specifically funded the following payments of professionals:
>
> - $60,000 on March 10, 2022, to my firm for services rendered and costs advanced between the date of payment and April 22, 2022;
>
> - $50,000 on March 23, 2022 to BPM for services rendered and costs advanced between the date of payment and April 22, 2022;
>
> - $150,000 on April 12, 2022, to my firm to pay pre-petition fees and costs in excess of the initial $60,000 paid and to

MOTION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 105 APPROVING THE ENGAGEMENT CONTRACT BETWEEN BPM, LLP AND THE DEBTOR
Page 11
Case: 22-40396    Doc# 12    Filed: 04/27/22    Entered: 04/27/22 14:48:22    Page 11 of 14

fund a Chapter 11 retainer with the balance of $108,879.72; and,

- $100,000 on April 12, 2022, to BPM to fund its Chapter 11 retainer.

I am also writing to seek confirmation of your understanding that (a) my firm's and BPM's duty is solely to Artesian, (b) Binder & Malter, LLP and BPM intend to represent the interests of Artesian vigorously without regard to your interests, (c) neither my firm nor BPM nor Artesian can or will take any instructions from you as to how to prosecute any aspect of this case, (d) there is no agreement of any kind between, on one hand, my firm and BPM and, on the other hand, you, including but not limited to any agreement or understanding as regards the payment of further fees, (e) my firm and BPM, on one hand, and you on the other hand have no other connections of any kind; (f) neither my firm nor BPM is in any way prohibited from investigating the lien you took against estate assets or seeking to avoid any defect in it; and (g) under no circumstances will my firm or BPM take direction from you with respect to any sale of assets in the Artesian bankruptcy case, who has made the highest or best offer, and who the successful bidder at auction should be.

You should consult legal counsel about your decision to loan funds to Artesian and my firm's duties of loyalty and confidentiality as set forth above. This letter contains a place below for a signature by your own counsel.

**Factor 2:** <u>The Debtor Expressly Consented to the Arrangement.</u>

27. Noah Katz, Debtor's sole member, counter-signed the letter to the Debtor stating that "I have read the foregoing, understand it and, by signing below, give the consent of Artesian Future Technology, LLC on the terms and conditions set forth above."

**Factor 3:** <u>Ms. Novik and Mr. Barry Katz Retained Separate Counsel and Understand That the Professionals' Duty of Undivided Loyalty is Owed Exclusively to the Debtor/Client.</u>

28. Ms. Novik and Mr. Barry Katz counter-signed the letter to them, stating that "[w]e have had the opportunity to consult our own legal counsel and understand the duty of loyalty that Binder & Malter, LLP and BPM have to Artesian as set forth above." The Debtor has been informed and believes that Ms. Novik and Mr. Barry Katz retained North Carolina counsel who

provided them with legal advice as regards the Note and perfection of the lien with respect thereto. as their counsel. Counsel for Ms. Novik and Mr. Barry Katz signed off on the letter to them.

**Factor 4:** <u>The Factual and Legal Relationship Between the Third-Party Payor/Insider, the Debtor, the Respective Attorneys, and Their Contractual Arrangement Concerning the Fees, Must Be Fully Disclosed to The Court at the Outset</u>.

29. As set forth in the Webb Declaration, the details of the Debtor's relationship with Ms. Novik and Mr. Barry Katz, their relationship with proposed professionals, and the absence of any agreement regarding past, current or future fees, as set forth above, is as follows:

- On April 6, 2022, the Debtor authorized by unanimous written consent the borrowing of $398,425 from Belinda Novick and Barry Katz

- On the same date the Debtor executed the Note to evidence the debt.

- The purpose of the secured borrowing was to fund pre-petition professional fees and post-petition retainers for BPM and general reorganization counsel, Binder & Malter, LLP and also to pay certain operating expenses of the Debtor.

- Ms. Novik and Mr. Barry Katz filed UCC-1 financing statements with the Secretaries of State of North Carolina and California on April 6, 2022.

- On March 23, 2022, BPM received a wire transfer of the Initial retainer of $50,000 from Belinda Novik

- On April 12, 2022, BPM received $100,000 on April 12, 2022 from the trust account of Baskin & Greene of funds supplied by Belinda Novick and Barry Katz, as a further advance under the Note.

- Ms. Novik and Mr. Barry Katz are owed on an unsecured basis the sum of $723,442.87 for previous loans made to the Debtor and payments to creditors made on its behalf prior to March 2022, which unsecured loans are evidenced by accounting entries in the Debtor's financial records. There are no contracts between the Debtor and Ms. Novik and Mr. Barry Katz other than the Note and related Security Agreement.

- Ms. Novik and Mr. Barry Katz, the parents of Debtor's sole and managing member, are statutory insiders within the meaning of 11 U.S.C. §101(31).

- Proposed counsel provided written notification to the Debtor that the firm's duty of loyalty and confidentiality run solely to the Debtor and not to Ms. Novik and Mr. Barry Katz.

- Proposed counsel also informed Ms. Novik and Mr. Barry Katz in writing that

    (a) Binder & Malter's and BPM's duty is solely to Artesian;

    (b) Binder & Malter, LLP and BPM intend to represent the interests of Artesian vigorously without regard to their interests;

    (c) neither Binder & Malter nor BPM nor Artesian can or will take any instructions from them as to how to prosecute any aspect of this case;

    (d) there is no agreement of any kind between, on one hand, Binder & Malter and BPM and, on the other hand, Ms. Novik and Mr. Barry Katz, including but not limited to any agreement or understanding as regards the payment of further fees,

    (e) Binder & Malter and BPM, on one hand, and Ms. Novik and Mr. Barry Katz, on the other hand have no other connections of any kind;

    (f) neither Binder & Malter nor BPM is in any way prohibited from investigating the lien Ms. Novik and Mr. Barry Katz took against estate assets or seeking to avoid any defect in it; and,

    (g) under no circumstances will Binder & Malter or BPM take direction from Ms. Novik and Mr. Barry Katz with respect to any sale of assets in the Artesian bankruptcy case, who has made the highest or best offer, and who the successful bidder at auction should be.

30. Accordingly, to the extent relevant, the Debtor respectfully submits that BPM is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion and approve the Engagement Contract under 11 U.S.C. §363 conditioned on compliance with the Jay Alix Protocol, and for such other and further relief as the Court deems just and proper.

Dated: April 27, 2022                               BINDER & MALTER, LLP

                                                    By: /s/ Robert G. Harris
                                                    Robert G. Harris
                                                    Proposed Attorneys for Debtor and Debtor-in Possession Artesian Future Technology, LLC