1 TIMOTHY S. LAFFREDI (WI BAR 1055133)
Assistant United States Trustee
2 ELVINA ROFAEL (CA SBN 333919)
Trial Attorney
3 United States Department of Justice
Office of the United States Trustee
4 450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102
5 Telephone: (415) 252-2080
Facsimile: (415) 705-3379
6 Email: Elvina.Rofael@usdoj.gov

Attorneys for Tracy Hope Davis,
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>ARTESIAN FUTURE TECHNOLOGY, LLC, a North Carolina limited liability company, dba ARTESIAN BUILDS, dba ARTESIAN, LLC, dba BLDYR, INC., dba ARTESIAN,<br><br>Debtor. | Bankruptcy Case No. 22-40396<br><br>Chapter 11<br><br>Date: May 13, 2022<br>Time: 11:00 a.m.<br>Judge: Honorable Charles Novack<br>Place: Tele/Videoconference |

**OBJECTION AND RESERVATION OF RIGHTS OF THE**
**UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR ORDER AUTHORIZING**
**EMPLOYMENT OF CHIEF RESTRUCTURING OFFICER**

Tracy Hope Davis, United States Trustee for Region 17 (the "UST"), by and through her undersigned counsel, hereby files this objection and reservation of rights to the *Motion for Entry of Order Pursuant to Bankruptcy Code Sections 363 and 105 Approving the Engagement Contract Between BPM, LLP and the Debtor* (ECF No. 12) (the "Motion") filed by the above-captioned debtor Artesian Future Technology, LLC (the "Debtor").[1] In support of her Objection, the UST respectfully represents as follows:

---

[1] Unless otherwise noted: "Section" refers to a section of title 11 of the United States Code (as amended, the "Bankruptcy Code"); "FRBP" refers to the Federal Rules of Bankruptcy Procedure; "FRE" refers to the Federal Rules of Evidence; and "ECF No." refers to the bankruptcy docket for case number 22-40396. The UST requests that the Court take judicial notice of pleadings and documents filed in this case, pursuant to FRBP 9017 and FRE 201. To the extent that the objection contains factual assertions predicated

## I. INTRODUCTION

1. The UST objects to the Motion to employ Dr. Edward Webb as the chief restricting officer ("CRO") and BPM, LLP ("BPM") to provide CRO support, and it should be denied.

2. Pursuant to 11 U.S.C. § 327, Dr. Webb is not disinterested by virtue of a third-party relative of the Debtor's Insider paying the professional's retainer in return for a blanket lien on the Debtor's assets. Further, the Motion does not provide sufficient evidence to allow the court to assess the relationship between the Debtor, Dr. Webb and BPM, and Belinda Novik and Barry Katz. Thus, without further disclosures, the Debtor has failed to satisfy its burden under both the "restrictive" and "analytical" approach as further explained below and the Motion should be denied.

3. In light of these concerns, the UST opposes the Debtor's retention of Dr. Webb as chief restructuring officer and BPM to provide CRO support.

## II. STATEMENT OF FACTS

**A. General Case Background**

4. On April 22, 2022 (the "Petition Date"), the Debtor commenced a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in which it elected to proceed under Subchapter V of title 11. *See* ECF No. 1. The Debtor is currently a debtor-in-possession under sections 1107 and 1008 of the Bankruptcy Code. The Debtor seeks to be represented by Binder & Malter, LLP.[2] *See* docket generally.

---

upon statements made by Debtor, its agents, attorneys, professionals, or employees, the UST submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under FRBP 9017 and FRE 801(d)(2).

[2] An application for appointment of attorneys for Debtor was filed on May 4, 2022. *See* ECF No. 29.

Page -2-

5. On April 25, 2022, the UST appointed Mark M. Sharf as the Subchapter V trustee. *See* ECF No. 5.

6. The meeting of creditors under 11 U.S.C. § 341(a) is scheduled for May 16, 2022 at 1:00 p.m. *See* ECF No. 3.

7. The Debtor's Schedule A/B discloses that the Debtor has $991,024.87 worth of assets, primarily comprised of computer materials and parts and partially constructed computer units.[3] *See* ECF No. 31. The Statement of Financial Affairs ("SOFA") discloses that the Debtor generated $17.3 million in gross revenue in the year 2021 and generated $2.7 million in gross revenue from January 1, 2022 to the Petition Date. *Id*. According to the SOFA, within one year of the Petition Date, the Debtor paid: (1) $199,286.52 to Noah Katz, the Debtor's President for payroll, bonuses, and expense reimbursements; (2) $84,162.37 to Brian Quinlivan, the "person in control," for payroll, bonuses, and expense reimbursements; and (3) $77,823.83 to Nicholas Dankner, the "person in control," for payroll and expense reimbursements. *Id*.

8. Mr. Katz holds a 100% interest in the Debtor. *Id*.

9. The Debtor's Schedule D discloses three creditors holding secured claims against the Debtor: (1) Barry Katz and Belinda Novik, Mr. Katz's parents, holding a $398,425 claim and a blanket lien on the Debtor's assets; (2) Binder & Malter, LLP, holding a claim listed as "unknown" with a lien on the initial retainer; and (3) Navitas Credit Corp, holding a claim listed as "unknown," with the collateral also listed as "unknown." *Id*. The Debtor's Schedule E/F lists creditors holding unsecured claims that total approximately $2.1 million. *See* ECF No. 32.

10. According to the declaration of Noah Katz, filed in support of the Motion, prior to February 2022, the Debtor manufactured high end custom computers for gaming and cryptocurrency

---

[3] The Debtor also lists several assets on its Schedule A/B with a value presently listed as "unknown."

Case: 22-40396    Doc# 38    Filed: 05/09/22    Entered: 05/09/22 20:36:39    Page 3 of 13

mining and related parts. See ECF No. 12-2. The Debtor was forced to close down its operations and laid off all of its employees after a streamer asserted that Mr. Katz had denied her a sweepstakes prize in a drawing. *Id*. The Debtor has now engaged in discussions with several potential buyers to arrange a competitive sale and maximize the value of the Debtor's brand name. *Id*.

11. According to the declaration Dr. Edward Webb, filed in support of the Motion, BPM was engaged by the Debtor on March 16, 2022, to provide financial operational and management advice in anticipation of bankruptcy. See ECF No. 12-1. Dr. Webb, who is a partner at BPM, has been acting as the Debtor's Chief Restructuring Officer since the Petition Date. *Id*. Dr. Webb signed the Debtor's Schedules as the responsible individual. See ECF Nos. 30-33.

12. According to Dr. Webb's declaration, on April 6, 2022, the Debtor authorized the borrowing of $398,425 from Belinda Novik and Barry Katz, Mr. Katz's parents, as lenders, and granted a lien against all of the Debtor's assets to secure the loan. See ECF No. 12-1. The purpose of the secured borrowing was to fund pre-petition professional fees and post-petition retainers for BPM and Binder & Malter, LLP. *Id*.

13. According to Dr. Webb's declaration, BPM received a $50,000 wire transfer directly from Ms. Novik on March 23, 2022 and received an additional $100,00 from the trust account of Baskin & Fowler on April 12, 2022. *Id*. The declaration explains that Caleb Baskin was counsel for Artesian at the time but resigned as entity counsel just prior to the bankruptcy filing, and now represents Mr. Katz's parents personally. *Id*.

**B.    The Motion**

14. In the Motion, the Debtor seeks entry of an order authorizing: (i) the designation of Dr. Webb as the Debtor's CRO and (ii) the employment of BPM to provide CRO support and additional personnel to the Debtors. See ECF No. 12.

Page -4-

Case: 22-40396    Doc# 38    Filed: 05/09/22    Entered: 05/09/22 20:36:39    Page 4 of 13

15. According to the Consulting Engagement Letter (the "Engagement Contract") dated April 22, 2022, the scope of Dr. Webb and BPM's proposed services includes: (i) "provide financial reporting and management advice to" the Debtor, including "cash flow management, overseeing bank accounts, lease negotiations and working with creditors during this bankruptcy"; (ii) "oversee the management of the bankruptcy for the Debtor and as [the responsible individual], Dr. Webb will oversee the expected asset sale along with Debtor's legal counsel"; and (iii) "work closely with counsel on developing a plan to wind down the [c]ompany after the expected asset sale." *See* ECF No. 12-1, Exhibit A.

16. As disclosed in the Motion and the Engagement Contract, the salient terms of BPM's proposed engagement include the following:

   a. The retention would be approved pursuant to Sections 105(a) and 363(b), as opposed to Section 327. *See* Motion, at pp. 1, 8 of 14.

   b. BPM "will immediately make Dr. Webb available to provide financial reporting and management advice to Artesian." *See* Engagement Contract, at. ¶ 2.

   c. In the event the Debtor seeks to have any of persons assume executive officer positions other than Dr. Webb, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed. *See* Motion, at p. 7 of 14.

   d. No principal, employee, or independent contractor of BPM and its affiliates will serve as a director of the Debtor during the pendency of the Debtor's chapter 11 case. *Id*.

   e. For a period of three years after the conclusion of the engagement, neither BPM nor any of its affiliates will make any investments in the Debtor. *Id*.

   f. The Debtor agrees to indemnify, defend, and hold harmless BPM and its partners, principals, shareholders, officers, directors, members, employees, agents or assigns with respect to any and all claims made by third parties arising from this engagement, regardless of the nature of the claim, and including the negligence of any party, excepting claims arising from BPM's gross negligence or intentionally wrongful acts. *See* Motion, at p. 4 of 14.

g. BPM shall file a monthly report of staffing on the engagement for the previous month. *See* Motion, at p. 7 of 14.

h. BPM shall file compensation reports with the Court on a quarterly basis. Compensation shall be subject to review by the Court if an objection is filed. *Id*.

### III. OBJECTION

**A. The Debtor's Retention of BPM is Subject to 11 U.S.C. § 327(a).**

17. Section 327(a) of the Bankruptcy Code provides, in pertinent part, that a trustee "may employ one or more attorneys, accountants … or other professional persons, that do not hold or represent an interest adverse to the estate, *and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title." *See* 11 U.S.C. § 327(a) (emphasis added); *see also In re Tevis*, 347 B.R. 679, 687 (B.A.P. 9th Cir. 2006) ("Section 327(a) requires the application of a two-pronged test for employment of professional persons.").[4]

18. The use of section 363(b) as authority for allowing employment of chief restructuring officers who are not "disinterested persons" has been met with criticism and rejected by some bankruptcy courts. *See, e.g., In re Copenhaver, Inc.*, 506 B.R. 757, 762 (Bankr. C.D. Ill. 2014) (internal citations omitted); *see also In re Tamarack Resort, LLC*, 2010 WL 4117459 at *14 (Bankr. D. Idaho, Oct. 19, 2010) (denying motion to appoint a "responsible officer," and noting that "Chapter 11 is a flexible process," but non-statutory fiduciaries like CROs are not "so easily transported into the post-bankruptcy context"); *In re Kobra Properties*, 406 B.R. 396, 400-01 (Bankr. E.D. Cal. 2009) (noting that debtor-in-possession's proposal to hire a chief restructuring officer "elicited skepticism" and was withdrawn, "because of the vagueness of the CRO concept in the context of chapter 11 … and the inability to articulate whether and to whom a CRO would owe fiduciary and loyalty duties and how those duties would contrast with the duties of a chapter 11 trustee").

---

[4] In a chapter 11 case, a debtor in possession has the powers and duties of a trustee. *See* 11 U.S.C. § 1107(a).

Case: 22-40396    Doc# 38    Filed: 05/09/22    Entered: 05/09/22 20:36:39    Page 6 of 13

19. The term "professional persons" is a "term of art reserved for those persons who play an *intimate role in the role* in the debtor's estate. *See In re That's Ent. Mktg. Grp., Inc.*, 168 B.R. 226, 230 (N.D. Cal. 1994) (emphasis added). *See also In First Merchants Acceptance Corp.,* 1997 WL 873551, 1997 Bankr. LEXIS 2245 (Bankr. D. Del. Dec. 15, 1997). [5] Here, as discussed above, the scope of BMP's services indicate that it will play an "intimate role" in the reorganization process, including by overseeing the anticipated sale of all of the Debtor's assets and developing a plan to wind down the company. *See* ¶ 15, *supra*.

20. Thus, the Court should evaluate the proposed retention under the more rigorous standards of 11 U.S.C. § 327(a). *See In re McDermott Int'l, Inc.*, 614 B.R. 244, 253, 255 (Bankr. S.D. Tex. 2020) (analyzing retention of chief transformation officer under § 327(a), because applicants "routinely push more and more services under the auspices of § 363(b) to avoid court oversight" and "[f]inancial advisory services are inappropriately categorized as 'back office' support services …."); *In re Copenhaver, Inc.*, 506 B.R. at 762 ("'Generally, financial advisors, workout specialists and consultants are, for the purpose of Section 327 of the Bankruptcy Code, professionals.' … When employment is proposed for one of these positions, the procedures required by § 327 should be followed in order to further the policies of ensuring that employed persons are impartial and that the costs and administrative expenses of a case remain subject to judicial oversight.") (emphasis added).

---

[5] The Bankruptcy Court in this case considered a number of factors in determining whether an individual is a "professional": (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach, (5) the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

### B. The Motion Does Not Provide Sufficient Evidence to Allow the Court to Assess the Relationship Between the Debtor, Dr. Webb and BPM, and Belinda Novik and Barry Katz

21. Under FRBP 2014(a), proper disclosure is necessary to enable the court to make an informed decision as to whether the applicant meets the statutory requirements for employment under Section 327(a), i.e., that such person does not "hold or represent an adverse interest to the estate" and is a "disinterested person." 11 U.S.C. § 327(a); *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995). "All facts that may be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate must be disclosed." *Id*. at 882 (quoting *In re Hathaway Ranch Partnership*, 116 B.R. 208, 219 (Bankr. C.D. Cal. 1990). "The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest. . . . They cannot pick and choose which connections are irrelevant or trivial . . . . No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it." *Park-Helena Corp*., 63 F.3d at 882 (quoting *In re EWC, Inc*., 138 B.R. 276, 280-281 (Bankr. W.D. Okla. 1992)).

22. Failure to disclose is alone a sufficient basis for denying a professional's employment. *See In re Film Ventures Int'l, Inc*., 75 B.R. 250, 252 (B.A.P. 9th Cir. 1987); *In re Lee*, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1988) (citing *Diamond Lumber, Inc. v. Unsecured Creditor's Comm.*, 88 B.R. 773, 777 (N.D.Tex.1988).

23. Disinterestedness is implicated when a third-party supplies a professional's retainer or pays its fees. *In re Castellucci,* 2007 WL 7540955, 2007 Bankr. LEXIS 4874 at *33-34 (B.A.P. 9th Cir. July 26, 2007) (citing *In re Lotus Props. L.P.,* 200 B.R. 388, 389 ( Bankr. C.D. Cal. 1996). As discussed above, Dr. Webb and BPM received a $50,000 wire transfer

directly from Barry Katz and Belinda Novik, Mr. Katz's parents, on March 23, 2022 and received an additional $100,00 from the trust account of Baskin & Fowler on April 12, 2022. *See* ¶ 13, *supra*. In exchange, Mr. & Ms. Katz hold a blanket lien over the Debtor's assets. *Id*.

24. When a third party pays a debtor's attorney's retainer, the Court can analyze whether the professional is disinterested under the restrictive or analytical approach. *In re Castellucci,* 2007 WL 7540955 Bankr. at *33-34.

      *i. Without further disclosures the Debtor has failed to satisfy its burden and the Motion should be denied under the restrictive approach*

25. The restrictive approach is examined in *In re Hathaway Ranch Partnership*, 116 Bankr. 208 (Bankr. C.D. Cal. 1990)." Under *Hathaway Ranch Partnership* "an actual conflict of interest . . . disqualifies a professional from being employed pursuant to 11 U.S.C. § 327 absent a showing that the interests of the third party and the bankruptcy estate are identical upon notice to all creditors, equity security holders and other parties in interest." *In re Hathaway Ranch Partnership*, 116 B.R. at 219. A generally accepted definition of "adverse interest" is: (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate. *In re AFI Holding, Inc.,* 355 B.R. 139, 148-49 (B.A.P. 9th Cir. 2006), aff'd 530 F.3d 832 (9th Cir. 2008) (citation omitted).

26. Based on the Debtor's Summary of Assets and Liabilities, the Debtor's liabilities of approximately $2.5 million exceed the Debtor's assets of $991,024.[6] *See* ECF No. 31. Here, Mr. Katz's parents loaned money to the Debtor on a secured basis, because of the anticipated bankruptcy

---

[6] Several assets listed on Schedule A/B and several claims listed on Schedule D and E/F are disclosed as "unknown." *See* ECF Nos. 31 & 32.

Case: 22-40396   Doc# 38   Filed: 05/09/22   Entered: 05/09/22 20:36:39   Page 9 of 13

filing, that not only lessens the value of the bankruptcy estate, but also decreases the return to unsecured creditors. If Mr. Katz's parents's interest is getting a maximum return on their secured claim and the Debtor has a fiduciary duty to all of its creditors, a question remains as to how the two parties can have an identity of interests to pass the *Hathaway Ranch Partnership* test.

27. Further, according to the Motion, "[t]he only lenders willing to advance funds were Belinda Novik and Barry Katz, the parents of Noah Katz . . . on a secured basis." *See* ECF No. 12. However, the Motion does not address what other avenues the Debtor explored to obtain funding. *Id*. Accordingly, without further disclosures, the Motion should be denied under the restrictive approach.

      ***ii.   In the alternative, the Debtor has failed to satisfy its burden under the analytical approach and the Motion should be denied***

28. The Analytical Approach rejects a *per se* approach and instead reviews the issue on a case-by-case basis. Courts using the Analytical Approach use a 5-part test in determining whether counsel can be employed when counsel's retainer was paid by principal or insider of the Debtor. These factors include:

    (1)    the arrangement must be fully disclosed to the debtor/client and the third party payor/insider;

    (2)    the debtor must expressly consent to the arrangement;

    (3)    the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;

    (4)    the factual and legal relationship between the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation;

(5) the debtor's attorney/applicant must demonstrate and represent to the Court's satisfaction the absence of facts which would otherwise create non-disinteredness, actual conflict, or impermissible potential for a conflict of interest. Id. at 658.

*In re Lotus Props. LP*, 200 B.R. at 392 (citing *In re Kelton*, 109 Bankr. 641 (Bankr. D. Vt. 1989) (the "*Kelton* Factors").

29. Specifically, under this approach, courts "reject Creditors' invitation to adopt a *per se* rule against this disclosed arrangement for legal representation by payment from a third party payor-insider where there is no evidence of a fee guarantee or *material creditor relationship between the payor-insider and corporate debtor/client*." (emphasis added). *Id*. As stated above, here, there is a material creditor relationship between the payor-insider (Mr. Katz's parents) and the corporate Debtor (managed by Mr. Katz as the Debtor's sole member). An independent board of directors does not exist to consent to the terms of this third-party retainer.

30. Further, the Motion and the Webb Declaration do not adequately address the *Kelton* factors. The third *Kelton* Factor states that the "third-party insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client." *Id*. In response to the third factor, the Motion states that Ms. Novik and Mr. Barry Katz retained counsel in North Carolina. *See* ECF No. 12. However, footnote two of the Motion states that BPM received a $100,000 retainer from the trust account of Caleb Baskin of Baskin & Fowler, who was counsel for Artesian, but resigned as entity counsel just prior to the bankruptcy filing and now represents Ms. Novik and Mr. Barry Katz. *Id*. The Motion does not expand on the resignation of Baskin & Fowler from representing the Debtor at the 11th hour. For instance, was there written consent given by the Debtor? And even if there was written consent, how can the former law firm extricate itself from the past concurrent representation so that it can give independent

Page -11-

Case: 22-40396    Doc# 38    Filed: 05/09/22    Entered: 05/09/22 20:36:39    Page 11 of 13

advice? Further, the attorney still has duties under the California ethical rules that prohibits an attorney from doing anything "that will injuriously affect the former client in any matter in which the lawyer represented the former client." *See* Cal. Rule 1.9. Salient questions remain as to how this firm can be independent. *See Oasis West Realty, LLC v. Goldman*, (2011) 51 Cal.4th 811, 821 (an attorney "may not do anything which will injuriously affect [the] former client in any matter in which [the attorney] formerly represented [the client] nor may [the attorney] at any time use against [the] former client knowledge or information acquired by virtue of the previous relationship.") (citing *Wutchumna Water Co. v. Bailey*, (1932) 216 Cal. 564, 573-574).

31. Additionally, the Motion and the Webb Declaration do not sufficiently disclose certain aspects of the relationships as it pertains to the fifth *Kelton* factor. The Motion is the place to disclose all of the facts that would satisfy the Court that an actual conflict of interest, or even an impermissible potential for a conflict of interest, is not present. It is generally accepted that "[a]n actual conflict exists if there is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'" *In re Git-N-Go, Inc.*, 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004) (citing *In re BH&P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989), aff'd in pertinent part. 119 B.R. 35 (D.N.J. 1990)). As stated above, the parents, in holding a secured claim, are competing for the Debtor's assets to get a maximum return on their claim. Further, if Mr. Katz's parents hired counsel that formally represented the Debtor, a clear connection exists between the two parties that cases a conflict pursuant to the fifth *Kelton* factor.

32. Accordingly, under the analytical approach, the Debtor should disclose all legal and factual connections between Ms. Novik and Mr. Barry Katz and the Debtor and its insiders and disclose why those connections do not present a conflict.

## V. CONCLUSION

Based on the foregoing, the UST respectfully requests that the Court (i) deny the Motion and (ii) grant such other relief as the Court deems appropriate and just. The UST reserves all her rights.

Dated: May 9, 2022

        Respectfully submitted,
        TRACY HOPE DAVIS
        UNITED STATES TRUSTEE

        By:/s/ Elvina Rofael
        Elvina Rofael
        Trial Attorney for the United States Trustee