Michael W. Malter, Esq. #96533
Robert G. Harris, Esq. #124678
Julie H. Rome-Banks, Esq. #142364
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA  95050
Michael@bindermalter.com
Rob@bindermalter.com
Julie@bindermalter.com

Attorneys for debtor and debtor in possession
Artesian Future Technology, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>ARTESIAN FUTURE TECHNOLOGY, LLC,<br>a North Carolina limited liability company,<br>dba ARTESIAN BUILDS, dba ARTESIAN,<br>LLC, dba BLDYR, INC., dba ARTESIAN,<br><br>Debtor. | Case No. 22-40396 CN<br><br>Chapter 11<br><br>NO HEARING SET |

**EX PARTE APPLICATION TO APPROVE AUCTION
AND OVERBID PROCEDURES (11 U.S.C. §§105(a), 363(b))**

TO THE HONORABLE CHARLES NOVACK:

    Debtor and debtor-in-possession Artesian Future Technology, LLC (the "Debtor") hereby applies to the Court for an order approving bidding procedures for an out-of-court auction to be conducted by the Debtor's Chief Restructuring Officer, Dr. Edward Webb, on either June 22, 2022, or June 29, 2022.  The Debtor will file a companion motion to approve the sale of its assets to the successful bidder or bidders at auction free and clear of all liens, claims and encumbrances and to approve back-up bids, if any.  The Debtor will present an oral application for shortened time at the June 3, 2022 status conference to have its anticipated motion to sell free and clear set for either June 24, 2022 or July 1, 2022.

    The Debtor respectfully represents as follows in support of this Ex Parte Application:

## FACTUAL BACKGROUND

1. The Debtor is a North Carolina limited liability company with operations in Oakland, California and Durham, North Carolina. Prior to February 2022, the Debtor manufactured high end custom computers for gaming and cryptocurrency mining and related parts. In March, 2022, the Debtor closed down its operations and laid off employees.

2. On April 22, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in which it elected to proceed under Subchapter V of title 11. The Debtor is managing its property as a debtor in possession pursuant to section 1184 of the Bankruptcy Code.

3. Dr. Edward Webb is engaged as the Debtor's Chief Restructuring Officer. Dr. Webb and BPM, LLC are operating the Debtor, administering this bankruptcy case, and preparing for a sale of assets per the terms of their engagement agreement. Dr. Webb and BPM have been employed by order of the Court subject to a cumulative $25,000 cap on fees.

4. The Debtor maintains saleable inventory of computer parts and related items in both Oakland and North Carolina. The Debtor and CRO have worked diligently to complete an inventory the tangible personal property the Debtor owns, secure that property and prepare it for sale in an auction along with the Debtor's name, domain names, and customer list (collectively, the "Assets"). In its Schedule B, the Debtor listed the values of its Oakland and North Carolina inventory, at cost, as $393,261.68 and $274,735.00, respectively, and FF&E at each location. The Debtor believes that the Assets have substantial equity in excess of liens against them.

5. The Debtor has been engaged in discussions with several potential buyers in an effort to arrange a competitive sale of the Assets. The Debtor wishes to advertise and conduct an auction of Debtor's tangible assets, trade name, domain names, and customer list and seek confirmation through an order approving their sale free and clear of liens. Once all assets have

been liquidated, the Debtor will then either file and prosecute a plan to distribute the proceeds or conclude, depending upon amount of priority claims, that it must convert.

## PROPOSED AUCTION PROCEDURES

**Overview**

6. The Debtor believes that procedures for conducting its out-of-court auction ("Bidding Procedures") will promote a transparent, competitive, and expedient sale process. If approved, the Bidding Procedures will allow the Debtor to solicit and identify bids from potential buyers, resulting in the highest or otherwise best offer for the Assets. The proposed Bidding Procedures are as follows:

**Auction**. The Debtor will conduct an auction (the "Auction") to determine the Successful Bidder(s) (as defined below) on either June 22, 2022, or June 29, 2022, at 11:00 a.m. Pacific Daylight Savings Time.

**Auction Time and Location**. The Auction shall take place via Zoom videoconference.

**Bid Deadline.** 11:00 a.m. (prevailing Pacific Time) on the date of Auction.

**Qualified Bid Requirements**. To participate in the Auction, a Qualified Bidder (as defined below) must submit a bid that, as determined by the Debtor in its business judgment, satisfies each of the following conditions (the "Bid Requirements"), unless such Bid Requirement is waived by the Debtor (each such bid is, a "Qualified Bid"):

1. Format. Each Bid and all documentation for each Bid must be provided in electronic form.

2. Commitment to Close. Each Bid must contain a written statement that the Bidder is willing to consummate and fund the sale of the Assets within five (5) Business Days after entry of an order approving sale and, in any event, no later than the close of business on July 6, 2022 (the "Closing Deadline").

3. Commitment to Serve as Backup Bidder. Each Bid must contain a written statement that the Bidder will serve as the Backup Bidder.

4. Assets to be Acquired. Each Bid must identify with reasonable particularity the Assets to be purchased. A Bid may offer to purchase substantially all of the Assets at Oakland ("Lot 1"), North Carolina ("Lot 2") or both. A Bid may but is not required to include the Debtor's name, domain names and customer list ("Lot 3").

5. Irrevocable. Each Bid must be irrevocable until, if a Bidder is designated as a Successful Bidder (as defined below), the Closing of the sale of the Assets to such Bidder. If a Bidder is designated as a Backup Bidder (as defined below), the offer must be irrevocable until the backup bid closes should the Successful Bidder at Auction fail to close.

6. Good-Faith Deposit. Each Successful Bid must be accompanied by a deposit paid by wire transfer of immediately available funds or such other form acceptable to the Debtor payable to the order of the Debtor (the "Good Faith Deposit") in the amount of not less than seventy percent (70%) of the cost value of the Assets for Lot 1 or Lot 2. The Debtor may, at its option, retain Good Faith Deposits and assert damages and deduct from it should any Successful Bidder fail to close.

7. Overbids. After the initial Bid, overbids shall proceed in minimum increments of $5,000.

8. Contingencies Waived. No Bid may be conditioned on any due diligence, internal approval, financing, or regulatory or third-party approval contingencies of any kind.

9. Proof of Financial Ability to Perform. Each Bid must be accompanied by written evidence, to the Debtor's satisfaction, of a firm commitment for financing, or other evidence of ability to consummate any sale of the Assets.

10. Identity of Purchaser. Each Bid must, to the satisfaction of the Debtor, fully disclose (i) the identity of each person or entity that will be bidding for the Assets or otherwise participating in connection with such Bid, (ii) the terms of any such participation, and (iii) any connections between (x) the bidding party and its affiliates and related persons and (y) the Debtor, its sole equity holder Noah Katz and the Debtor's primary creditors as identified by the Debtor.

11. No Fees or Commissions. No Bid may (i) request or entitle the Bidder to any break-up fee, expense reimbursement fee or similar type of payment, or (ii) obligate the Debtor to pay commissions, fees or expenses to any agent or broker. Further, by submitting a Bid, a Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code.

12. As Is, Where Is. Each Bid must contain an acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own

EX PARTE APPLICATION TO APPROVE AUCTION AND OVERBID PROCEDURES  Page 4

Case: 22-40396   Doc# 73   Filed: 06/02/22   Entered: 06/02/22 16:49:21   Page 4 of 18

independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid; and (iii) the purchase is without express or implied warranties or representations by the Debtor or estate and the sale is "as is/where is" under applicable law.

13. Corporate Authority. Each Bid by an entity must include evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission of its Bid.

14. Privacy Policies. Each Bid must provide to the Debtor's satisfaction that the Bidder will adhere to the Debtor's prepetition privacy policies regarding personally identifiable information or such other terms as a court-appointed Consumer Privacy Ombudsman may recommend.

**Qualified Bidder**. A "Qualified Bidder" is a Bidder that (i) submits a Qualified Bid by the Bid Deadline, and (ii) the Debtor determines, in the exercise of its business judgment is reasonably likely to close based on financial information submitted by the Bidder, if selected as a Successful Bidder (as defined below) or a Backup Bidder (as defined below).

**Participation at the Auction**. Qualified Bidders shall virtually attend the Auction in person (via Zoom), or through a duly authorized representative. Each Qualified Bidder participating in the Auction (including any Qualified Bidder participating through a duly authorized representative) will be required to confirm that he, she or it has not engaged in any collusion regarding the Bidding Procedures, the Auction or the sale of the Assets.

**Auction Procedures**.

1. Opening Bid. The first Qualified Bid received and accepted by the Debtor will be the opening bid for each Lot or combination of Lots.

2. Conduct of the Auction. The Debtor's professionals shall direct and preside over the Auction on behalf of the Debtor. At the start of the Auction, the Debtor's counsel shall describe the terms of the Opening Bid. All Bids made after the Opening Bid shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a written transcript of all Bids made and announced at the Auction, including the Opening Bid, all applicable Overbids, and the Successful Bid.

3. Terms of Overbid**.** An "Overbid" is any Bid made at the Auction subsequent to the announcement of the Opening Bid. To submit an

Overbid for purposes of the Auction, a Qualified Bidder must comply with the following conditions:

 i. Minimum Overbid Increment and Deadline. The Minimum Initial Overbid Amount and any subsequent Overbid shall be not less than $5,000.

 ii. Overbid Alterations. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtor's estate on the whole than any prior Bid or Overbid, as determined in the Debtor's reasonable business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

 iii. Announcing Highest or Otherwise Best Bid. After the Bids are announced, when the last overbid has been received, the Debtor shall, in the exercise of its business judgment, announce the Successful Bidder for each of Lot 1, Lot 2, and Lot 3.

 iv. Bids for Less than Substantially All Assets. The Debtor is expressly authorized to consider and accept Bids for Lot 1, Lot 2 and Lot 3 separately.

**Closing the Auction**.

1. The Auction shall continue until there is only one offer (which may consist of one Qualified Bid for substantially all of the Assets or more than one Qualified Bid for Lot 1, Lot 2 and Lot 3) that the Debtor determines in the exercise of its business judgment to be the highest or otherwise best offer for the Assets.

2. After determining the Successful Bid and the Successful Bidder, the Debtor will also determine, in its business judgment, the Qualified Bidders(s) with the next highest or otherwise best Bid(s) for the Assets. Such Bid(s) shall be declared the "Backup Bid," and the Qualified Bidder(s) making such Backup Bid, the Backup Bidder at which point the Auction will be closed.

3. The Debtor shall not consider any Bids or Overbids submitted after the closing of the Auction, and any such Bids or Overbids shall be deemed untimely and shall not constitute Qualified Bids. The determination of the Successful Bid and Backup Bid at the closing of the Auction shall be final, subject only to approval by this Court.

4. After the conclusion of the Auction, the Debtor shall ask that the Court declare the Successful Bidder and Backup Bidder and approve the sale. The Debtor shall thereafter file with this Court and serve upon all Qualified Bidders and parties that have requested notice in this case a notice identifying the Successful Bidder and the Backup Bidder.

5. As promptly as practicable following the conclusion of the Auction, (i) each of the Successful Bidder and the Backup Bidder, as applicable, will transfer via wire transfer of immediately available funds or such other form acceptable to the Debtor the amount of its Successful Bid net of its Good Faith Deposit; and (ii) the Debtor shall cause the Contemplated Transaction Documents for the Successful Bidder and the Backup Bidder to be filed with this Court.

6. Following the approval of the sale of the Assets to the Successful Bidder, if such Successful Bidder (i) fails to consummate a sale of the Assets by the Closing Deadline, (ii) breaches such Successful Bidder's Purchase Agreement, or (iii) otherwise fails to perform, the Debtor shall be authorized, but not required, to deem the Backup Bid(s), as disclosed at the Sale Hearing, the Successful Bid(s) and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder(s) submitting such Backup Bid(s) without further notice or orders of the Court. In the event that there are multiple Successful Bidders and/or Backup Bidders and only one of such Successful Bidders or Backup Bidders engages in the acts or omissions described in clauses (i) through (iii) of the foregoing sentence, the Debtor may elect to close the contemplated transactions with some or all of the other Successful Bidders or Backup Bidders, as applicable.

## IV. BASIS FOR RELIEF REQUESTED

**A. Sufficient Business Justification Exists for Consummation of a Sale under Sections 105(a) and 363(b) of the Bankruptcy Code**

Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of

property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor.

The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). The Debtor's selection of a Successful Bidder, coupled with compliance with the Bid Procedures, will provide evidence of Debtor's reasonable exercise of its business judgment and grounds to approve a sale under sections 105(a) and 363(b) of the Bankruptcy Code.

The Debtor has marketed the Assets post-petition, after having conducted a prepetition marketing process as well. The open and fair sale process contemplated by the Bidding Procedures will ensure that the Debtor's estate receives the highest or otherwise best value available for the Assets by allowing the market to determine the value of such Assets. Furthermore, compliance with the Bidding Procedures will ensure the fairness and reasonableness of the consideration to be paid and establish that the Debtor and such bidder have proceeded in good faith. The Debtor submits that ample business justification exists for conducting the Auction in accordance with the Bidding Procedures and, therefore, requests that the Court grant the requested relief herein.

### B. The Court Should Approve the Bidding Procedures

The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate.[1] Here, the Debtor has designed the Bidding Procedures to promote a

---

[1] *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor "had a fiduciary duty to protect and maximize the estate's assets"), *Official Comm. of Unsecured Creditors of Cybergenics, Corp v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (same). Procedures used to enhance competitive bidding support this objective and, therefore, are appropriate in the context of bankruptcy sales. *See Integrated Res. Inc.*, 147 B.R. at 659 (stating that bidding procedures generally are enforceable if they "encourage bidding and . . . maximize the value of

EX PARTE APPLICATION TO APPROVE AUCTION AND OVERBID PROCEDURES     Page 8

Case: 22-40396    Doc# 73    Filed: 06/02/22    Entered: 06/02/22 16:49:21    Page 8 of 18

competitive and fair bidding process and, thus, to maximize value for the Debtor's estate and creditors. The Bidding Procedures will allow the Debtor to conduct any Sale in a controlled, fair and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that the Debtor will receive the highest or otherwise best possible consideration for the Assets. The Bidding Procedures provide an appropriate framework for the Debtor to review, analyze and compare any bids received, and ultimately determine which bids are in the best interests of the Debtor's estate and creditors in a fair and objective manner. The Debtor submits that the Bidding Procedures strike an appropriate balance between expediency, on the one hand, and fairness and transparency, on the other. As such, an Auction conducted in accordance with the Bidding Procedures will encourage bidding and derive the highest or otherwise best bids for the Assets with minimal risk of delay-related value destruction.

Therefore, the Debtor requests that the Court approve the Bidding Procedures, including, without limitation, the timing proposed therein for the Auction and the Sale Hearing, the Stalking Horse Bidder, and the Bid Protections.

WHEREFORE, the Debtor respectfully requests entry of the Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and granting such other relief as is just and proper.

Dated: June 2, 2022                    BINDER & MALTER, LLP


By:   /s/ *Robert G. Harris*
        Robert G. Harris

Attorneys for debtor and debtor in possession
Artesian Future Technology, LLC

---

(cont.)
　　the debtor's assets").

EX PARTE APPLICATION TO APPROVE AUCTION AND OVERBID PROCEDURES                    Page 9

# EXHIBIT A

Michael W. Malter, Esq. #96533
Robert G. Harris, Esq. #124678
Julie H. Rome-Banks, Esq. #142364
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA  95050
Michael@bindermalter.com
Rob@bindermalter.com
Julie@bindermalter.com

Attorneys for debtor and debtor in possession
Artesian Future Technology, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

In re:

ARTESIAN FUTURE TECHNOLOGY, LLC, a North Carolina limited liability company, dba ARTESIAN BUILDS, dba ARTESIAN, LLC, dba BLDYR, INC., dba ARTESIAN,

Debtor.

Case No. 22-40396 CN

Chapter 11

NO HEARING SET

### ORDER APPROVING AUCTION AND OVERBID PROCEDURES
### (11 U.S.C. §§105(a), 363(b))

The Court has considered the Ex Parte Application to Approve Auction and Overbid Procedures.  There being no objection, and goods cause appearing therefor, the Application be and hereby is GRANTED.

IT IS THEREFORE ORDERED that

1. The Bidding Procedures attached hereto as Exhibit "A" are approved;

2. The Debtor shall transmit a copy of this Order and the Bidding Procedures to the potential bidders for its Assets.

3. The Debtor is authorized to conduct an auction of its assets on June __, 2022.

4. The Debtor is authorized to file and serve notice of a hearing on June/July __, 2022, to confirm the sale of its Assets to the successful bidder or bidders free and clear of all

liens, claims and encumbrances, and time is shortened therefor. Debtor shall file and serve its motion for sale free and clear and all supporting pleadings by June 9, 2022.

***** END OF ORDER *****

**COURT SERVICE LIST**

None

# EXHIBIT A
## Bidding Procedures

**Auction**. The Debtor will conduct an auction (the "Auction") to determine the Successful Bidder(s) (as defined below) on either June 22, 2022, or June 29, 2022, at 11:00 a.m. Pacific Daylight Savings Time.

**Auction Time and Location**. The Auction shall take place via Zoom videoconference.

**Bid Deadline.** 11:00 a.m. (prevailing Pacific Time) on the date of Auction.

**Qualified Bid Requirements**. To participate in the Auction, a Qualified Bidder (as defined below) must submit a bid that, as determined by the Debtor in its business judgment, satisfies each of the following conditions (the "Bid Requirements"), unless such Bid Requirement is waived by the Debtor (each such bid is , a "Qualified Bid"):

1. Format. Each Bid and all documentation for each Bid must be provided in electronic form.

2. Commitment to Close. Each Bid must contain a written statement that the Bidder is willing to consummate and fund the sale of the Assets within five (5) Business Days after entry of an order approving sale and, in any event, no later than the close of business on July 6, 2022 (the "Closing Deadline").

3. Commitment to Serve as Backup Bidder. Each Bid must contain a written statement that the Bidder will serve as the Backup Bidder.

4. Assets to be Acquired. Each Bid must identify with reasonable particularity the Assets to be purchased.  A Bid may offer to purchase substantially all of the Assets at Oakland ("Lot 1"), North Carolina ("Lot 2") or both.  A Bid may but is not required to include the Debtor's name, domain names and customer list ("Lot 3").

5. Irrevocable. Each Bid must be irrevocable until, if a Bidder is designated as a Successful Bidder (as defined below), the Closing of the sale of the Assets to such Bidder.  If a Bidder is designated as a Backup Bidder (as defined below), the offer must be irrevocable until the backup bid closes should the Successful Bidder at Auction fail to close.

6. Good-Faith Deposit. Each Successful Bid must be accompanied by a deposit paid by wire transfer of immediately available funds or such other form acceptable to the Debtor payable to the order of the Debtor (the "Good Faith Deposit") in the amount of not less than seventy percent (70%) of the cost value of the Assets for Lot 1 or Lot 2.  The Debtor may, at its option, retain Good Faith

Deposits and assert damages and deduct from it should any Successful Bidder fail to close.

7. Overbids. After the initial Bid, overbids shall proceed in minimum increments of $5,000.

8. Contingencies Waived. No Bid may be conditioned on any due diligence, internal approval, financing, or regulatory or third-party approval contingencies of any kind.

9. Proof of Financial Ability to Perform. Each Bid must be accompanied by written evidence, to the Debtor's satisfaction, of a firm commitment for financing, or other evidence of ability to consummate any sale of the Assets.

10. Identity of Purchaser. Each Bid must, to the satisfaction of the Debtor, fully disclose (i) the identity of each person or entity that will be bidding for the Assets or otherwise participating in connection with such Bid, (ii) the terms of any such participation, and (iii) any connections between (x) the bidding party and its affiliates and related persons and (y) the Debtor, its sole equity holder Noah Katz and the Debtor's primary creditors as identified by the Debtor.

11. No Fees or Commissions. No Bid may (i) request or entitle the Bidder to any break-up fee, expense reimbursement fee or similar type of payment, or (ii) obligate the Debtor to pay commissions, fees or expenses to any agent or broker. Further, by submitting a Bid, a Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code.

12. As Is, Where Is. Each Bid must contain an acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid; and (iii) the purchase is without express or implied warranties or representations by the Debtor or estate and the sale is "as is/where is" under applicable law.

13. Corporate Authority. Each Bid by an entity must include evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission of its Bid.

14. Privacy Policies. Each Bid must provide to the Debtor's satisfaction that the Bidder will adhere to the Debtor's prepetition

privacy policies regarding personally identifiable information or such other terms as a court-appointed Consumer Privacy Ombudsman may recommend.

**Qualified Bidder**. A "Qualified Bidder" is a Bidder that (i) submits a Qualified Bid by the Bid Deadline, and (ii) the Debtor determines, in the exercise of its business judgment is reasonably likely to close based on financial information submitted by the Bidder, if selected as a Successful Bidder (as defined below) or a Backup Bidder (as defined below).

**Participation at the Auction**. Qualified Bidders shall virtually attend the Auction in person (via Zoom), or through a duly authorized representative. Each Qualified Bidder participating in the Auction (including any Qualified Bidder participating through a duly authorized representative) will be required to confirm that he, she or it has not engaged in any collusion regarding the Bidding Procedures, the Auction or the sale of the Assets.

**Auction Procedures**.

1. Opening Bid. The first Qualified Bid received and accepted by the Debtor will be the opening bid for each Lot or combination of Lots.

2. Conduct of the Auction. The Debtor's professionals shall direct and preside over the Auction on behalf of the Debtor. At the start of the Auction, the Debtor's counsel shall describe the terms of the Opening Bid. All Bids made after the Opening Bid shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a written transcript of all Bids made and announced at the Auction, including the Opening Bid, all applicable Overbids, and the Successful Bid.

3. Terms of Overbid**.** An "Overbid" is any Bid made at the Auction subsequent to the announcement of the Opening Bid. To submit an Overbid for purposes of the Auction, a Qualified Bidder must comply with the following conditions:

    i. Minimum Overbid Increment and Deadline. The Minimum Initial Overbid Amount and any subsequent Overbid shall be not less than $5,000.

    ii. Overbid Alterations. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtor's estate on the whole than any prior Bid or Overbid, as determined in the Debtor's reasonable business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

ORDER APPROVING AUCTION AND OVERBID PROCEDURES Page 6

  iii. Announcing Highest or Otherwise Best Bid. After the Bids are announced, when the last overbid has been received, the Debtor shall, in the exercise of its business judgment, announce the Successful Bidder for each of Lot 1, Lot 2, and Lot 3.

  iv. Bids for Less than Substantially All Assets. The Debtor is expressly authorized to consider and accept Bids for Lot 1, Lot 2 and Lot 3 separately.

**Closing the Auction**.

1. The Auction shall continue until there is only one offer (which may consist of one Qualified Bid for substantially all of the Assets or more than one Qualified Bid for Lot 1, Lot 2 and Lot 3) that the Debtor determines in the exercise of its business judgment to be the highest or otherwise best offer for the Assets.

2. After determining the Successful Bid and the Successful Bidder, the Debtor will also determine, in its business judgment, the Qualified Bidders(s) with the next highest or otherwise best Bid(s) for the Assets. Such Bid(s) shall be declared the "Backup Bid," and the Qualified Bidder(s) making such Backup Bid, the Backup Bidder at which point the Auction will be closed.

3. The Debtor shall not consider any Bids or Overbids submitted after the closing of the Auction, and any such Bids or Overbids shall be deemed untimely and shall not constitute Qualified Bids. The determination of the Successful Bid and Backup Bid at the closing of the Auction shall be final, subject only to approval by this Court.

4. After the conclusion of the Auction, the Debtor shall ask that the Court declare the Successful Bidder and Backup Bidder and approve the sale. The Debtor shall thereafter file with this Court and serve upon all Qualified Bidders and parties that have requested notice in this case a notice identifying the Successful Bidder and the Backup Bidder.

5. As promptly as practicable following the conclusion of the Auction, (i) each of the Successful Bidder and the Backup Bidder, as applicable, will transfer via wire transfer of immediately available funds or such other form acceptable to the Debtor the amount of its Successful Bid net of its Good Faith Deposit; and (ii) the Debtor shall cause the Contemplated Transaction Documents for the Successful Bidder and the Backup Bidder to be filed with this Court.

ORDER APPROVING AUCTION AND OVERBID PROCEDURES Page 7

Case: 22-40396 Doc# 73 Filed: 06/02/22 Entered: 06/02/22 16:49:21 Page 17 of 18

| | |
|---|---|
| 1 | |
| 2 | 6. Following the approval of the sale of the Assets to the Successful Bidder, if such Successful Bidder (i) fails to consummate a sale of the Assets by the Closing Deadline, (ii) breaches such Successful Bidder's Purchase Agreement, or (iii) otherwise fails to perform, the Debtor shall be authorized, but not required, to deem the Backup Bid(s), as disclosed at the Sale Hearing, the Successful Bid(s) and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder(s) submitting such Backup Bid(s) without further notice or orders of the Court. In the event that there are multiple Successful Bidders and/or Backup Bidders and only one of such Successful Bidders or Backup Bidders engages in the acts or omissions described in clauses (i) through (iii) of the foregoing sentence, the Debtor may elect to close the contemplated transactions with some or all of the other Successful Bidders or Backup Bidders, as applicable. |