```
MICHAEL W. MALTER, #96533
ROBERT G. HARRIS, #124678
JULIE H. ROME-BANKS, #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA  95050
B: 408-295-1700
F: 408-295-1531
Email: michael@bindermalter.com
Email: rob@bindermalter.com
Email: julie@bindermalter.com

Attorneys for Debtor
Artesian Future Technology, LLC
```

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| In re: | Case No.   22-40396-CN |
|---|---|
| ARTESIAN FUTURE TECHNOLOGY, LLC, a North Carolina limited liability company, dba ARTESIAN BUILDS, dba ARTESIAN, LLC, dba BLDYR, INC., dba ARTESIAN,<br><br>                Debtor. | Chapter 11<br><br>Date: July 7, 2022<br>Time: 2:00 p.m.<br>Judge: Hon. Charles Novack<br>Via Tele/Video |

**DECLARATION OF JULIE H. ROME-BANKS IN SUPPORT OF DEBTOR'S MOTION TO APPROVE SALE ALLASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCE, AND OTHER INTERESTS**

I, Julie H. Rome-Banks, hereby declare:

1. I am an attorney licensed to practice by the State of California and admitted to practice before the above-entitled Court.  I am a partner with Binder & Malter, LLP, attorneys for the Debtor Artesian Future Technology LLC ("Debtor") in the above-referenced case and I make this Declaration in support of my client.

2. I have personal knowledge of the matters contained herein, except as t those matters alleged upon information and belief and as to those matters I believe them to be true.  If called upon as a witness, I could and would testify as follows.

DECLARATION OF JULIE H. ROME-BANKS IN SUPPORT OF DEBTOR'S MOTION TO APPROVE SALE ALLASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCE, AND OTHER INTERESTS                    Page 1

Case: 22-40396    Doc# 92    Filed: 06/29/22    Entered: 06/29/22 14:50:15    Page 1 of 19

3. <u>Auction Continuance:</u> On Monday, June 20, 2022, I was contacted by Edward Webb, the appointed Responsible Individual, who advised me that Dropbox had shut down the dataroom established by BPM LLP for potential bidders due to generating excess traffic. Mr. Webb forwarded to me the email from Dropbox received in the email box established at BPM for Artesian matters on Saturday, June 18, 2022 which was linked to the Dropbox account. I also understood that BPM had received 8-10 emails to the same email address starting on Saturday, June 18, 2022 advising that potential bidders were denied access to the Dropbox dataroom. After conferring with Mr. Webb and the supervising partner on this case, Michael Malter, it was determined that the best course of action was to continue the auction and bidder qualification deadline for a week so as not to prejudice any potential bidders. I reached out by email and telephone to the Subchapter V Trustee Mark Sharf to update him on the situation and inform him of the continuance of the auction. I also prepared and filed a notice advising of the continuance of the bidder qualification deadline and the auction (docket #85). The notice of continuance was served on the same parties who had received email notice of the original auction including individuals in the computer and computer parts liquidation industries, parties that had contacted BPM and were potential bidders, and one bidder who had already qualified. Since I did not want the potential bidders to know who their potential competitors in the auction might be and to reduce the possibility of collusion among bidders, the certificate of service of the notice of continuance was not filed until after the auction was concluded.

4. <u>Auction Outcome</u>: I conducted the auction of the Debtor's assets consisting of those assets identified as Lot #1 and Lot #2 in the Notice of Hearing on Debtor's Motion to Approve Sale of All Assets of the Debtor Free and Clear of All Liens, Claims, Encumbrances and Other Interests (docket #77). Lot #1 consisted of the inventory and equipment located at the Debtor's facility in Oakland, California and Lot #2 consisted of the inventory and equipment located at the Debtor's facility in Durham, North Carolina.

DECLARATION OF JULIE H. ROME-BANKS IN SUPPORT OF DEBTOR'S MOTION TO APPROVE SALE ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCE, AND OTHER INTERESTS Page 2

Case: 22-40396    Doc# 92    Filed: 06/29/22    Entered: 06/29/22 14:50:15    Page 2 of 19

5.     As detailed in the Supplemental Declaration of Edward Webb filed concurrently, the auction had been continued from its original scheduled date of June 21, 2022 at 11:00 a.m. to June 28, 2022 at 11:00 a.m. due to Dropbox having shut down the dataroom established by BPM to allow prospective bidders to view photographs of the assets contained in Lot #1 and Lot #2 allegedly because of too much web traffic on the Dropbox website.  After re-establishing a new dataroom through the BPM LLP "Box" enterprise account, prospective buyers were once again able to view photographs of the assets.  I personally confirmed that the new dataroom was accessible through Box to any person without the need for a Box account.

6.     Only one bidder had qualified to participate in the auction as of the original scheduled date of June 21, 2022.  By June 27, 2022, two additional bidders had qualified to participate in the auction.  All three qualified bidders were provided with a Zoom link to the auction as well as Subchapter V Trustee Mark Sharf, me and Michael Malter.  After logging onto Zoom, the auction began at approximately 11:02 a.m. on June 28, 2022.  Initial introductions were made by Mr. Webb and I then conducted the auction.

7.     I first reminded each of the qualified bidders of the requirements of the auction which had been approved by the Court, including the minimum bid increments of $5,000 and that each bidder would be required to state that they had not engaged in any collusion regarding the Bidding Procedures, the Auction or the sale of the Debtor's assets before the auction started.  I then asked each qualified bidder by name to affirm that statement to be true.  Each bidder in turn so affirmed that they had not engaged in any collusion.  I reminded the bidders that at the end of the auction the Debtor would select the highest and best offer to present to the Court for approval and I would ask if other bidders wished to serve as a backup bid in the event the sale did not close to the highest

DECLARATION OF JULIE H. ROME-BANKS IN SUPPORT OF DEBTOR'S MOTION TO APPROVE SALE ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCE, AND OTHER INTERESTS
Page 3

Case: 22-40396    Doc# 92    Filed: 06/29/22    Entered: 06/29/22 14:50:15    Page 3 of 19

and best bidder. I confirmed that the qualified bidders understood the auction requirements and had no questions. There was one question, which is discussed in paragraph 8 below.

8. I then announced the opening bid, which was the highest and best offer received from the three qualified bidders prior to the start of the auction of $125,000.00 for both Lot #1 and Lot #2. I then proceeded to ask for overbids. Two of the three bidders then actively participated in multiple rounds of the auction until a final bid of $140,000.00 was reached, being the bid of Mr. Alex Parshall of Computer Headquarters, Inc. (also known as Computer HQ). I then asked bidder Mr. Timothy Stack of Silicon Valley Dispositions if it wished to serve in the capacity of a backup bid for its last offer of $135,000.00. Silicon Valley Dispositions agreed to serve as a backup bid for $135,000.00. The third bidder, Mr. Ahmed Aziz of Cybertron International, Inc. dba CLXGAMING.com, was also willing to serve as a backup bidder at its last offer which was only $10,000.

9. A question was raised by the third qualified bidder Cybertron International, Inc. about the sale of Lot #3, which had been identified as the Debtor's intangible assets consisting of its two domain names, a recently issued trademark, the Debtor's customer list and the Debtor's list of marketing influencers. I explained that although these assets were being advertised at the same time as Lot #1 and Lot #2, they were not authorized to be included in the auction per the Court's order following the last hearing. In addition, because of the need to have any sale of the Debtor's customer list reviewed by a consumer privacy ombudsman pursuant to 11 U.S.C. §332, the Debtor would have to pursue approval of the sale the Lot #3 assets by separate motion and Court approval of that sale could not occur on July 7, 2022.

DECLARATION OF JULIE H. ROME-BANKS IN SUPPORT OF DEBTOR'S MOTION TO APPROVE SALE ALLASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCE, AND OTHER INTERESTS
Page 4

Case: 22-40396    Doc# 92    Filed: 06/29/22    Entered: 06/29/22 14:50:15    Page 4 of 19

10. <u>Disputed Lien of Navitas</u>: Although there were no objections filed to the Motion to approve the sale by auction free and clear of the liens of (i) Barry Katz and Belinda Novik and (ii) Navitas Credit Corporation, I wish to inform the Court that I was contacted by email on June 23, 2022 by an individual claiming to be a "recovery agent" for Navitas Credit Corp. I was provided with a copy of the same UCC-1 Financing Statement that is attached to the original Declaration of Edward Webb filed in support of the Motion to sell free and clear as Exhibit "A" (see docket #76-1). The same individual from Navitas also including a copy of an invoice issued by a company called "Fishbowl" for the purchase of multiple software licenses, software implementation charges and other similar charges by the Debtor at a former business location in Cary, North Carolina. A true and correct copy of the invoice that I received by email is attached hereto as Exhibit "A". No inventory is mentioned in that invoice and the only equipment mentioned in the Navitas' invoice were mobile scanner kits. The Navitas invoice was not attached or in any way filed with the UCC-1 Financing Statement of Navitas.

11. Based on my review of the Fishbowl invoice and Fishbowl's website, I am informed and believe that Fishbowl's mobile scanners consist of either a mobile smart telephone type apparatus designed to read industrial barcodes, or a handheld scanner similar in size and style to what a retail cashier would use to scan a barcode. The photos of the assets from the North Carolina facility that were auctioned as part of Lot #2 did not include any mobile scanners. In addition, the Debtor did not sell any software as part of the assets contained in Lot #2, nor is the Debtor requesting permission to assume and assign any software license as part of the pending sale of Lot #2 since most software licenses are by their nature not assignable. The representative of Navitas also provided me with a copy of the alleged Equipment Finance Agreement in the same email, copy is

DECLARATION OF JULIE H. ROME-BANKS IN SUPPORT OF DEBTOR'S MOTION TO APPROVE SALE ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCE, AND OTHER INTERESTS
Page 5

Case: 22-40396    Doc# 92    Filed: 06/29/22    Entered: 06/29/22 14:50:15    Page 5 of 19

attached hereto as Exhibit "B". However, as detailed in the original Declaration of Edward Webb, there is no record of that agreement contained in the Debtor's books and records.

12. As previously explained to the Court in the Motion, Navitas was scheduled as a disputed secured claimant. On June 28, 2022, Navitas filed a proof of claim which was assigned claim #89. The Navitas' proof of claim attaches the same UCC-1 Financing Statement and the Equipment Finance Agreement. In checking box #9 of the Proof of Claim to indicate that the Proof of Claim is secured, Navitas identified the property that secures its claim as "Software listed on INV#243559 D10/29/21". Navitas makes no mention of the mobile scanners identified in the Fishbowl invoice and does not include a copy of the Fishbowl invoice in support of the Proof of Claim. A true and correct copy of the Proof of Claim of Navitas is attached hereto as Exhibit "C" and incorporated herein by reference.

13. The Debtor continues to dispute the Navitas lien for the reasons set forth in the Motion (to wit, the lack of any collateral description in the UCC-1 Financing Statement) and renews its request for authorization to sell free and clear of the disputed lien of Navitas.

Executed on June 29, 2022 at Santa Clara, California. I declare under penalty of perjury that the foregoing is true and correct.

/s/ Julie H. Rome-Banks
Julie H. Rome-Banks

# EXHIBIT A

# Invoice



**Fishbowl**

Anthony Mann
580 East Technology Ave Suite C2500
Orem, UT 84097
Phone: 800-774-7085
Fax: 801-932-1101

| Order # | Date |
|---|---|
| **243559** | 10/29/2021 |

| Bill To: | Ship To: |
|---|---|
| Artesian Future Technolog<br>226 JAMES JACKSON AVE<br>CARY, NC  27513-3165 | Artesian FutureTechnology<br>226 JAMES JACKSON AVE<br>CARY, NC  27513-3165 |

**Notes**

\*\*\* 0% 36 Month Financing Approved \*\*\*

| Seller | Payment Terms |
|---|---|
| amann | CIA |

| # | Products | Qty | Unit Price | Total Price |
|---|---|---|---|---|
|  | **\*\*\* Fishbowl Software Options \*\*\*** |  |  |  |
| 1 | **15 User** Fishbowl Manufacturing Software User License |  | $ 1,759.67 | $ 26,395.00 |
| 2 | One year Maintenance and Support: Includes all new software releases over the first year of purchase and unlimited technical support (phone, email, online chat). | 1 | $ 0.00 | $ 0.00 |
|  | **\*\*\* Implementation and Training Options \*\*\*** |  |  |  |
| 3 | **Remote Implementation Hours** - Hours of Personalized Implementation Setup and Training | 12 | $ 225.00 | $ 2,700.00 |
| 4 | **Satisfaction Guarantee 2 Day Virtual Training** - Process interview, 2 days (8 hrs per day) software training, 4 Remote Implementation Hours | 1 | $ 3,995.00 | $ 3,995.00 |
|  | **\*\*\* Fishbowl GO and Hardware Options \*\*\*** |  |  |  |
| 5 | **Fishbowl Go** - Simplify and streamline the movement of tracking inventory with our scanning solution<br>*Includes $500 FBMFG/GO Bundle Discount* | 1 | $ 2,995.00 | $ 2,995.00 |
| 6 | **TC21 Mobile Scanner Kit - Standard** - Includes: Mobile Computer, Single Slot Cradle, Wall Charger, USB Cable, 2 year (software only) warranty | 5 | $ 1,045.00 | $ 5,225.00 |
|  | **\*\*\* Plugin Options \*\*\*** |  |  |  |
| 7 | **Fishbowl WooCommerce** - WooCommerce Shopping Cart Integration; Downloads New Orders, Uploads Shipping Tracking Numbers, Uploads Inventory, Shares Product Creation. Complete features specified here: https://www.fishbowlinventory.com/wiki/WooCommerce | 1 | $ 1,995.00 | $ 1,995.00 |
| 8 | **Fishbowl ShipStation** - Integrates Fishbowl with ShipStations eCommerce shipping software | 1 | $ 1,995.00 | $ 1,995.00 |
|  | **50% Bundle Discount** - Plugin Bundle Discount |  |  | -$ 997.50 |
|  | **\*\*\* Fishbowl Hosting Option \*\*\*** |  |  |  |
| 9 | **Fishbowl Hosting - Monthly Charge** - Fishbowl Hosting  Recurring Monthly Charge<br>*Server Specs: 8GB RAM, 4 cores, 120GB Hard Drive* | 36 | $ 199.00 | $ 7,164.00 |
| 10 | **Fishbowl Hosting One-time setup fee** - Fishbowl Hosting Setup | 1 | $ 365.00 | $ 365.00 |
|  | **\*\*\* 2nd/3rd Year Maintenance and Support \*\*\*** |  |  |  |
| 11 | **15 User** Fishbowl Manufacturing Software Updates & Support Contract - 2 Year Renewal |  | $ 1,106.00 | $ 16,590.00 |
|  | **25% Discount** - 25% Discount |  |  | -$ 4,147.50 |
|  | **Subtotal** |  |  | **$ 67,910.59** |
|  | **Navitas 36 months** - Navitas 36 months |  |  | -$ 6,960.84 |

|  |  |
|---|---|
| **Subtotal:** | **$ 57,313.16** |
| **Sales Tax:** | **$ 3,636.59** |
| **Total:** | **$ 60,949.75** |

Thank you for your purchase. Should you desire, you may return your product within 30 days for a full refund.

**Click Here To**
**PAY ONLINE**

All pricing in USD.

# EXHIBIT B

# EQUIPMENT FINANCE AGREEMENT

**NAVITAS CREDIT CORP.**
A UNITED COMMUNITY BANK COMPANY

**BORROWER:** Artesian Future Technology, LLC   **DBA:**           **Federal Tax ID#** 823933004
*(hereinafter referred to as "you" or "your")*
**Address:** 5801 Cascade Dr   **City:** Chapel Hill   **State:** NC   **Zip:** 27514   **Phone:**
**SECURED PARTY/LENDER:** **NAVITAS CREDIT CORP.**   **VENDOR:** Fishbowl Solutions, LLC   **AGREEMENT #** 40904151
*hereafter referred to as "We", "Us", or "Our")*   *(Vendor is not an agent of Secured Party nor is Vendor authorized to waive or alter any terms of this Agreement)*

| Equipment Description / Quantity / Serial # / VIN# | | |
|---|---|---|
| 15 User Fishbowl Manufacturing Software User License, 12 Remote Implementation Hours, 1 - 2 Day Virtual Training, 1 Fishbowl Go, 5 TC21 Mobile Scanner Kit – Standard, 1 Fishbowl WooCommerce, 1 Fishbowl ShipStation, 36 Fishbowl Hosting - Monthly Charge, 1 Fishbowl Hosting One-time setup, 15 User Fishbowl Manufacturing Software Updates & Support | **Term in Months:** 36<br>**Monthly Payments:**<br>36 @ $1,886.41 | **First Payment:** $1,886.41<br>**Last Payment:** $0.00<br>**Security Deposit:** $0.00<br>**Other:** $295.00 |
| **Equipment Location** *(if different than above address)*<br>5801 Cascade Dr Chapel Hill NC 27514 | **Amount Financed:** $67,910.59 | **INITIAL AMOUNT DUE:** $2,181.41 |

## TERMS AND CONDITIONS (PAGE 1 OF 2) – PLEASE READ CAREFULLY BEFORE SIGNING

1. **AGREEMENT:** You want to acquire the above equipment ("Equipment") from a vendor selected by you ("Vendor") and have requested that we finance the purchase price for you. You unconditionally promise to pay us the sum of all of the monthly payments indicated above or on any schedule ("Payments") and you agree to all of the terms stated in this Agreement. You authorize us to insert any Equipment serial numbers and other identification data and any other omitted facts and to correct obvious errors. We may adjust the monthly payment amount to finance any taxes due at the inception of this Agreement or if the actual cost of the Equipment is less than 10% higher or lower than the amount that the Payment amount was based on. At our discretion we may apply any amounts received from you to any amount you owe under this Agreement.

2. **TERM:** This Agreement shall become effective and shall commence only after you direct us to make disbursements to your Vendor, we approve your Vendor's invoice, we sign this Agreement and we make the initial disbursement or any later date that we designate ("Commencement Date"). The term of this Agreement shall terminate upon the date that all of your payment and other obligations have been paid and satisfied in full ("Term"). The Initial Amount Due shall be due on the Commencement Date and subsequent monthly payments are due on the day we select, payable to a location to be designated by us. **YOUR OBLIGATION TO PAY ALL PAYMENTS AND OTHER OBLIGATIONS TO US IS UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE OR COUNTERCLAIM. THIS AGREEMENT MAY NOT BE CANCELED FOR ANY REASON WHATSOEVER AFTER COMMENCEMENT EXCEPT BY YOUR PAYMENT AND SATISFACTION OF ALL OF YOUR OBLIGATIONS HEREUNDER.** We have the right, but not the obligation, to electronically withdraw funds from your bank account to pay for any unpaid Payments or other amounts due hereunder. You will provide us with any bank account information we request in order to process electronic payments.

3. **EQUIPMENT:** You agree that you are the owner of and have title to the Equipment, excluding any software. By signing the Pay Proceeds Direction at the end of this Agreement, you authorize us to pay your Vendor, either as a prepayment to your Vendor to initiate delivery or upon your acceptance of the Equipment when it is delivered. You hereby grant to us a first priority, purchase money security interest in the Equipment and all replacements, replacement parts, accessions and attachments now or hereafter made a part of the Equipment, and all cash and non-cash proceeds, and all general intangibles, accounts and chattel paper arising therefrom. You agree, at your expense, to protect and defend our interests in the Equipment. Further, you shall at all times keep the Equipment free from all legal process, liens and other encumbrances if asserted or made against you or the Equipment. You agree we have the right to inspect the Equipment upon reasonable notice to you.

4. **NO WARRANTIES; NO AGENCY:** **WE ARE FINANCING THE EQUIPMENT FOR YOU "AS IS". WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS AGREEMENT.** Neither the Vendor nor any other person is our agent, nor are they authorized to waive or change any term of this Agreement. No representation, guaranty or warranty by the Vendor or other person is binding on us. No breach by the Vendor will relieve or excuse your obligations to us. If you entered into a maintenance or service agreement the cost of which is included in the Payments, you acknowledge we are not a party to such agreements and are not responsible for any service, repairs, or maintenance of the Equipment. If you have a dispute with your Vendor about delivery, installation, service or any other matter, you must continue to perform all your obligations, hereunder.

5. **SALE/ASSIGNMENT:** **YOU MAY NOT SELL, TRANSFER, ASSIGN OR LEASE THE EQUIPMENT OR YOUR OBLIGATIONS UNDER THIS AGREEMENT WITHOUT OUR PRIOR WRITTEN APPROVAL.** We may sell, assign or transfer this Agreement or any part of it and/or our interest in the Equipment without notifying you and you agree that if we do, (i) the new Secured Party will have the same rights and benefits that we now have but will not have to perform any of our obligations, (ii) the rights of the new Secured Party will not be subject to any claims, defenses or setoffs that you may have against us or the Vendor, and (iii) you will not assert any claims, defenses or setoffs whatsoever against us or the new Secured Party.

6. **SECURITY DEPOSIT:** As security for the performance of all your obligations hereunder, you have deposited with us the amount set forth in the section shown as "Security Deposit". We have the right, but are not obligated, to apply the security deposit at any time to any amount you owe. Provided you have fully performed all of the provisions of this Agreement, we will return to you any then remaining balance of the security deposit. We will not keep the security deposit separate from our general funds and you shall not be entitled to any interest thereon.

7. **CARE, USE AND LOCATION; LOSS:** You are responsible for installing and keeping the Equipment in good working order and repair. You will keep and use the Equipment only for business or commercial purposes and in compliance with all applicable laws, ordinances or regulations and only at your address shown on this Agreement unless we agree to another location. You will not make any alterations to the Equipment without our prior written consent, nor will you permanently attach the Equipment to any real estate. In the event the Equipment is lost, stolen or damaged, so long as you are not in default hereunder, you shall have the option within

## TERMS AND CONDITIONS (PAGE 1 OF 2) – PLEASE READ CAREFULLY BEFORE SIGNING

By signing this Agreement you acknowledge that you have read and understand the terms and conditions on each page of this Agreement, and you warrant that the person signing this Agreement on your behalf has the authority to do so and to grant the power of attorney set forth in Section 13 of this Agreement.

**I AM AUTHORIZED TO SIGN THIS AGREEMENT ON BEHALF OF BORROWER:**   **ACCEPTED BY SECURED PARTY: NAVITAS CREDIT CORP., at Columbia, South Carolina**

X: *Noah Katz*   **Date Signed:** 10/29/2021   By: *signature*   **Date Accepted:** 11/01/21
*(signature)*                          *(signature)*
**Print Name & Title:** Noah Katz   CEO   **Print Name & Title:** Trisen Seabrook, Customer Service Represent

**UNCONDITIONAL GUARANTY:**
For the purposes of this Guaranty, "you" and "your" refer to the person making the guaranty. "We", "us" and "our" refer to the Secured Party, our successors or assigns. You acknowledge that you have read and understood the Agreement and this Guaranty and that this is an irrevocable, joint, several and continuing guaranty. You agree that you have an interest in the Borrower's business, economic or otherwise, and that we would not enter into this Agreement without this Guaranty. You unconditionally guaranty that the Borrower will fully and promptly pay all its obligations under the Agreement and any future Agreements with us when they are due and will perform all its other obligations under the Agreement even if we modify or renew the Agreement, or if any payments made by the Borrower are rescinded or returned upon the insolvency, bankruptcy or reorganization of the Borrower, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If the Borrower defaults, you will immediately pay and perform all obligations due under the Agreement. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property which secures the obligations of Borrower or you to us ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release the Collateral or any obligor under the Agreement or this Guaranty. You agree that we do not have to proceed first against the Borrower or any Collateral. You hereby waive any right of exoneration, notice of acceptance of this Guaranty and of all other notices or demands of any kind in which you may be entitled to except for demand for payment. You will reimburse all expenses we incur in enforcing our rights against Borrower or you, including, without limitation, attorney's fees and costs. We may obtain information from and report to credit reporting agencies to enter into the Agreement or to enforce this Guaranty. You consent to personal jurisdiction, forum, choice of law and jury trial and transfer of venue waiver as stated in section 17. **YOU AND WE EACH WAIVE TRIAL BY JURY IN ANY ACTION RELATING TO THE AGREEMENT OR THIS GUARANTY.** This Guaranty may be executed by facsimile, electronic or original signature and such a copy shall be treated as an original for all purposes.

X: *Noah Katz*   **Date Signed:** 10/29/2021   X:            **Date Signed:**
*(signature)*                          *(signature)*
**Print Name:** Noah Katz   **Print Name:**

NCC06162016EFA

DocuSign Envelope ID: C61A5AC3-AB57-4C16-9721-A541AD24A8F9

**TERMS AND CONDITIONS (PAGE 2 OF 2) – PLEASE READ CAREFULLY BEFORE SIGNING**

one week of such event to: (i) repair or replace the Equipment or (ii) pay to us the unpaid balance of the remaining Payments hereunder discounted to present value at the rate of three percent (3%) (or such greater amount that may be required by law) plus any other amounts due or to become due hereunder. **UNDER NO CIRCUMSTANCES ARE WE RESPONSIBLE FOR SERVICE OR MAINTENANCE ON THE EQUIPMENT**.

8. **TAXES:** You will pay when due to your appropriate taxing authority, all taxes, fines and penalties relating to this Agreement or the Equipment, and any applicable registration or titling fees or other governmental charges, that are now or in the future assessed or levied by any government authority or required for the lawful possession and use of the Equipment. Sales taxes due upon the purchase of the Equipment and any other such governmental charges, if included in the purchase price, may be financed hereunder.

9. **INDEMNITY:** We are not responsible for any injuries or losses to you or any other person or property caused by the installation, operation, maintenance, ownership, possession or use of the Equipment. You agree to reimburse us for, hold us harmless from, and defend us against any claims made against us, and for losses or injuries suffered by us, including, without limitation, those arising out of the negligence, tort, or strict liability claims. This indemnity shall continue even after the Term has expired.

10. **INSURANCE:** You agree to maintain comprehensive liability insurance acceptable to us. You also agree to maintain insurance against the loss of or damage to the Equipment for an amount not less than the replacement cost and name us and our assigns as loss payee. If you fail to timely provide such proof to us, we may, but are not obligated to, obtain property loss insurance to protect our interests in the Equipment. If we secure insurance in the form and amounts we deem reasonable:(i) you will reimburse the premium, which may be higher than a premium that you might pay if you obtained the insurance, (ii) the premium may include a profit to us and/or one of our affiliates through an investment in reinsurance or otherwise, and (iii) we will not name you as an insured party and your interests may not be fully protected. Any insurance proceeds received for the Equipment will be applied, at our option, to repair or replace the Equipment, or to the remaining payments due or that become due hereunder, discounted at three percent (3%) (or such greater amount that may be required by law).

11. **DEFAULT:** You will be in default if : (i) you do not pay any amount when due; (ii) you break any of your promises or representations hereunder or under any other agreement with us; (iii) you become insolvent, commence dissolution proceedings, assign your assets for the benefit of your creditors, or a trustee is appointed to take control of your assets; (iv) you or any guarantor enters (voluntarily or involuntarily) into a bankruptcy or other insolvency-related proceeding; (v) you default on any obligations to any of your other creditors; (vi) you have made any untrue or misleading representations to us; (vii) any guarantor dies; or (viii) you change your name, state of organization, chief executive office and/or place of residence without providing us with 30 days prior written notice of such change.

12. **REMEDIES:** In the event of a default by you, we can: (i) cancel this Agreement; (ii) declare you in default under any other agreement you have with us, and exercise any or all remedies provided to us thereunder; (iii) disable the Equipment or require that you ship the Equipment to us at your expense; (iv) accelerate and demand that you pay all the remaining Payments due under this Agreement discounted to present value at three percent (3%) (or such greater amount that may be required by law) together with any other amounts due hereunder; and/or (v) pursue any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral. Interest shall accrue on all amounts due us from the date of default until paid at the rate of the lesser of (i) one and one-half percent (1.5%) per month and (ii) the maximum rate permitted by law ("Remedy Interest Rate"). You agree to reimburse us for all charges, costs, expenses and attorney's fees that we have to pay to enforce this Agreement. If you return the Equipment pursuant to clause "(iii)" above or we take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling or leasing the Equipment. You agree that we do not have to notify you that we are selling or leasing the Equipment except as otherwise required by law. You also agree that we are entitled to abandon the Equipment if we believe it to be in our best interest.

13. **BORROWER REPRESENTATIONS AND OTHER AUTHORIZATIONS:** You hereby represent, warrant and promise to us that: (i) you have had an adequate opportunity to study this Agreement and consult your legal and other advisors before signing, and this Agreement is enforceable against you in accordance with its terms; (ii) you are not subject to any bankruptcy proceeding; and (iii) if this document was sent by you to us electronically, it has not been altered in any way and any alteration or revision to any part of this or any attached documents will make all such alterations or revisions non-binding and void. You hereby authorize us, and appoint us or our designee as your attorney-in-fact, to endorse insurance proceeds and to execute and file financing statements (naming you as "Debtor") and documents of title and registration (if applicable) on the Equipment or Collateral, and you agree to reimburse us for our out-of-pocket costs relating thereto.

14. **FEES AND CHARGES:** If any part of any Payment is not made by you when due, you agree to pay us fifteen percent (15%) of each past due amount (or the maximum amount permitted by law, if less than 15%). You agree to pay an administrative fee of fifty dollars ($50.00) if any check or ACH is dishonored or returned. **AS A MATERIAL INDUCEMENT TO US TO ENTER INTO THIS AGREEMENT AND FINANCE YOUR EQUIPMENT, YOU AGREE THAT IF ANY PAYMENT, CHARGE OR FEE BILLED OR COLLECTED BY US IS FOUND TO EXCEED THE MAXIMUM AMOUNT ALLOWED BY LAW, THEN (I) WE MAY MODIFY ANY SUCH EXCESSIVE AMOUNT BILLED SO AS TO MAKE IT NOT EXCESSIVE, (II) WE MAY REFUND TO YOU THE EXCESSIVE AMOUNT, TOGETHER WITH INTEREST AT THE "REMEDY INTEREST RATE" (AS DEFINED IN SECTION 12), AND (III) THE FOREGOING SHALL BE YOUR EXCLUSIVE REMEDY FOR THE BILLING OR COLLECTING OF THE EXCESSIVE AMOUNTS AND YOU WILL NOT RAISE ANY OTHER CLAIM, COMPLAINT OR OBJECTION WITH RESPECT THERETO.**

15. **ENTIRE AGREEMENT; CHANGES:** This Agreement contains the entire agreement between you and us relating to the financing of the Equipment, and it may not be terminated or otherwise changed except in writing by both of us. A limiting endorsement on a check or other form of payment will not be effective to modify your obligations or any of the other terms of this Agreement, and we may apply any payment received without being bound by such limiting endorsements.

16. **COMPLIANCE; NOTICES:** In the event you fail to comply with any terms of this Agreement, we can, but we do not have to, take any action necessary to effect your compliance upon ten (10) days prior written notice to you. If we are required to pay any amount to obtain your compliance, the amount we pay plus all of our expense in causing your compliance, shall become additional obligations and shall be paid by you together with the next due payment. This Agreement is for the benefit of and is binding upon you, your personal representatives, successors and assigns. Any notice required by this Agreement or the UCC shall be deemed to be delivered when a record properly directed to the intended recipient has been (i) deposited with the US Postal Service, (ii) transmitted by facsimile or through the Internet, provided there is reasonably sufficient proof that it was received by the intended recipient; or (iii) has been personally delivered.

17. **CHOICE OF LAW; JURISDICTION: THIS AGREEMENT SHALL NOT BE BINDING UNTIL IT IS ACCEPTED BY US IN WRITING, AND YOU HEREBY STIPULATE THAT OUR ACCEPTANCE AND SIGNING OF THIS AGREEMENT IN SOUTH CAROLINA FOLLOWING YOUR SIGNATURE MEANS THAT THIS AGREEMENT WAS MADE IN SOUTH CAROLINA. YOU HEREBY ACKNOWLEDGE THAT OUR ACCOUNT SERVICING OPERATIONS (INCLUDING THOSE SERVICING YOUR ACCOUNT) ARE LOCATED IN SOUTH CAROLINA. YOU HEREBY AGREE THAT THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF SOUTH CAROLINA, BUT WITHOUT GIVING EFFECT TO THE LAWS OF SOUTH CAROLINA GOVERNING CHOICE OF LAW. YOU CONSENT TO THE JURISDICTION OF THE STATE OR FEDERAL COURTS LOCATED IN THE STATE OF SOUTH CAROLINA FOR THE COUNTY OF LEXINGTON, AND AGREE THAT ANY ACTIONS OR PROCEEDINGS INITIATED BY YOU ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT (WHETHER SOUNDING IN BREACH OF CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT ONLY IN SUCH COUNTY IN SOUTH CAROLINA; PROVIDED HOWEVER, WE MAY BRING ACTION AGAINST YOU IN ANY STATE OR FEDERAL COURTS OUTSIDE SOUTH CAROLINA WE CHOOSE IN OUR SOLE DISCRETION, PROVIDED ONLY THAT SUCH COURT HAS PROPER JURISDICTION. IN THE EVENT THIS AGREEMENT IS ASSIGNED BY US, YOU CONSENT TO THE JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS. YOU UNDERSTAND THAT YOUR AGREEMENT TO SOUTH CAROLINA LAW AND YOUR SUBMISSION TO PERSONAL JURISDICTION IN SOUTH CAROLINA DIRECTLY BENEFITS US AND IS A MATERIAL INDUCEMENT TO OUR ENTERING INTO THIS AGREEMENT AND FINANCING YOUR EQUIPMENT.YOU AND WE EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING, WHETHER BROUGHT IN CONTRACT OR TORT, OR AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.**

18. **MISCELLANEOUS:** No delay or failure by us to enforce our rights under this Agreement shall prevent us from enforcing any rights at a later time. If any part of this Agreement is determined to be unenforceable, all other parts will remain in full force and effect. Any Equipment discounts we may negotiate with Vendor accrue solely to our benefit. The original of this Agreement shall be that copy which bears your electronic, facsimile or original signature, and our electronic or original signature.

**PAY PROCEEDS DIRECTION TO FINANCE AGREEMENT**

You hereby irrevocably instruct us to pay the Vendor(s) listed below for the Equipment listed on Vendor(s) proposals approved by us. You hereby acknowledge that the Equipment has been delivered and is acceptable in all respects OR the Equipment has NOT been delivered but you hereby authorize us to make payment to the Vendor(s) in order to initiate delivery. Disbursement by us in accordance with the foregoing instructions shall constitute payment and delivery to and receipt by you of any and all such proceeds.

X _DocuSigned by: Noah Katz_ FBE192686BB24C3...
(signature)     Print Name & Title: Noah Katz     CEO     Date Signed: 10/29/2021

I hereby authorize, in my absence, _____ Telephone # _____ , to verify my direction to disburse funds.
Vendor: Fishbowl Solutions, LLC     Vendor:     Vendor:

NCC06162016EFA

# EXHIBIT C

EXHIBIT C

FILED
U.S. Bankruptcy Court
California Northern Bankruptcy Court
6/28/2022

Edward J. Emmons, Clerk

**Fill in this information to identify the case:**

Debtor 1   Artesian Future Technology, LLC
Debtor 2
(Spouse, if filing)
United States Bankruptcy Court   California Northern Bankruptcy Court
Case number:  22–40396

# Official Form 410
# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Navitas Credit Corp.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Navitas Credit Corp.
Name
201 Executive Center Drive Ste. 100
Columbia, SC 29210

Contact phone   8035668245
Contact email    servicingadmin@navitascredit.com

Where should payments to the creditor be sent? (if different)

Name

Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)   Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                Proof of Claim                page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __4151__

**7. How much is the claim?** $ __56711.68__

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

__Breach of Contract__

**9. Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe: __Software listed on Inv#243559 D10/29/21__

**Basis for perfection:** __UCC Fil # 20210146548E__

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ __56711.68__
**Amount of the claim that is secured:** $ __56711.68__
**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ __4125.78__

**Annual Interest Rate** (when case was filed) __18__ %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

Official Form 410      Proof of Claim      page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | **Amount entitled to priority** |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | $ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  6/28/2022
MM / DD / YYYY

/s/ Leighton Bost
Signature

Print the name of the person who is completing and signing this claim:

Name: Leighton Bost
First name  Middle name  Last name

Title: Recovery Manager

Company: Navitas Credit Corp.
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 201 Executive Center Dr. Suite 100
Number  Street
Columbia, SC 29210
City  State  ZIP Code

Contact phone: 8035668245   Email: lbost@navitascredit.com

Official Form 410 — Proof of Claim — page 3

# ACCOUNT VERIFICATION

Lessee:                                            Artesian Future Technology, LLC
Lease #:                                       )4151

|  | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT REMAINING |
|---|---:|---:|---:|
| Lease Rent Payments | $67,910.76 | $9,432.05 | $58,478.71 |
| Partial Payment | $0.00 | $0.00 | $0.00 |
| Discount |  |  | -$2,135.66 |
| Net Funds Rec'd Post C/O | $0.00 | $0.00 | $0.00 |
| Sales Tax | $0.00 | $0.00 | $0.00 |
| Late Charges | $0.00 | $0.00 | $0.00 |
| Security Deposit | $0.00 | $0.00 | $0.00 |
| Purchase Option | $0.00 | $0.00 | $0.00 |
| Funds of Repo/Storage/Sale | $0.00 | $0.00 | $0.00 |
| Ins/Prop Tax/NSF Fees | $35.00 | $0.00 | $35.00 |

Amount Owed Upon Default                                                         $56,378.05

Interest from:   10 Apr 2022
to:   22 Apr 2022                    $333.63

Amount Owed (Including Interest)                                     $56,711.68

Attorney's Fee (0% of Amount Owed)                                  $0.00

Total Amount Owed As Of:       22 Apr 2022                   $56,711.68

Per Diem Interest on Amount Owed Upon Default                $27.80

DocuSign Envelope ID: C61A5AC3-AB57-4C16-9721-A541AD24A8F9

40904151

## EQUIPMENT FINANCE AGREEMENT

**NAVITAS CREDIT CORP.**
A UNITED COMMUNITY BANK COMPANY

| | | |
|---|---|---|
| BORROWER: Artesian Future Technology, LLC | DBA: | Federal Tax ID# |
| (hereinafter referred to as "you" or "your") | | |
| Address: 5801 Cascade Dr | City: Chapel Hill  State: NC  Zip: 27514 | Phone: |
| SECURED PARTY/ LENDER: **NAVITAS CREDIT CORP.** | VENDOR: Fishbowl Solutions, LLC | AGREEMENT # |
| hereafter referred to as "We", "Us", or "Our" | (Vendor is not an agent of Secured Party nor is Vendor authorized to waive or alter any terms of this Agreement) | |

| Equipment Description / Quantity / Serial # / VIN# | Term in Months: 36 | First Payment: | $1,886.41 |
|---|---|---|---|
| 15 User Fishbowl Manufacturing Software User License, 12 Remote Implementation Hours, 1 - 2 Day Virtual Training, 1 Fishbowl Go, 5 TC21 Mobile Scanner Kit - Standard, 1 Fishbowl WooCommerce, 1 Fishbowl ShipStation, 36 Fishbowl Hosting - Monthly Charge, 1 Fishbowl Hosting One-time setup, 15 User Fishbowl Manufacturing Software Updates & Support | Monthly Payments: 36 @ $1,886.41 | Last Payment: | $0.00 |
| | | Security Deposit: | $0.00 |
| | | Other: | $295.00 |
| Equipment Location (if different than above address) 5801 Cascade Dr  Chapel Hill NC 27514 | Amount Financed: $67,910.59 | INITIAL AMOUNT DUE: | $2,181.41 |

### TERMS AND CONDITIONS (PAGE 1 OF 2) – PLEASE READ CAREFULLY BEFORE SIGNING

1. **AGREEMENT:** You want to acquire the above equipment ("Equipment") from a vendor selected by you ("Vendor") and have requested that we finance the purchase price for you. You unconditionally promise to pay us the sum of all of the monthly payments indicated above or on any schedule ("Payments") and you agree to all of the terms stated in this Agreement. You authorize us to insert any Equipment serial numbers and other identification data and any other omitted facts and to correct obvious errors. We may adjust the monthly payment amount to finance any taxes due at the inception of this Agreement or if the actual cost of the Equipment is less than 10% higher or lower than the amount that the Payment amount was based on. At our discretion we may apply any amounts received from you to any amount you owe under this Agreement.

2. **TERM:** This Agreement shall become effective and shall commence only after you direct us to make disbursements to your Vendor, we approve your Vendor's invoice, we sign this Agreement and we make the initial disbursement or any later date that we designate ("Commencement Date"). The term of this Agreement shall terminate upon the date that all of your payment and other obligations have been paid and satisfied in full ("Term"). The Initial Amount Due shall be due on the Commencement Date and subsequent monthly payments are due on the day we select, payable to a location to be designated by us. **YOUR OBLIGATION TO PAY ALL PAYMENTS AND OTHER OBLIGATIONS TO US IS UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE OR COUNTERCLAIM. THIS AGREEMENT MAY NOT BE CANCELED FOR ANY REASON WHATSOEVER AFTER COMMENCEMENT EXCEPT BY YOUR PAYMENT AND SATISFACTION OF ALL OF YOUR OBLIGATIONS HEREUNDER.** We have the right, but not the obligation, to electronically withdraw funds from your bank account to pay for any unpaid Payments or other amounts due hereunder. You will provide us with any bank account information we request in order to process electronic payments.

3. **EQUIPMENT:** You agree that you are the owner of and have title to the Equipment, excluding any software. By signing the Pay Proceeds Direction at the end of this Agreement, you authorize us to pay your Vendor, either as a prepayment to your Vendor to initiate delivery or upon your acceptance of the Equipment when it is delivered. You hereby grant to us a first priority, purchase money security interest in the Equipment and all replacements, replacement parts, accessions and attachments now or hereafter made a part of the Equipment, and all cash and non-cash proceeds, and all general intangibles, accounts and chattel paper arising therefrom. You agree, at your expense, to protect and defend our interests in the Equipment. Further, you shall at all times keep the Equipment free from all legal process, liens and other encumbrances if asserted or made against you or the Equipment. You agree we have the right to inspect the Equipment upon reasonable notice to you.

4. **NO WARRANTIES; NO AGENCY:** WE ARE FINANCING THE EQUIPMENT FOR YOU "AS IS", WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS AGREEMENT. Neither the Vendor nor any other person is our agent, nor are they authorized to waive or change any term of this Agreement. No representation, guaranty or warranty by the Vendor or other person is binding on us. No breach by the Vendor will relieve or excuse your obligations to us. If you entered into a maintenance or service agreement the cost of which is included in the Payments, you acknowledge we are not a party to such agreements and are not responsible for any service, repairs, or maintenance of the Equipment. If you have a dispute with your Vendor about delivery, installation, service or any other matter, you must continue to perform all your obligations, hereunder.

5. **SALE/ASSIGNMENT:** YOU MAY NOT SELL, TRANSFER, ASSIGN OR LEASE THE EQUIPMENT OR YOUR OBLIGATIONS UNDER THIS AGREEMENT WITHOUT OUR PRIOR WRITTEN APPROVAL. We may sell, assign or transfer this Agreement or any part of it and/or our interest in the Equipment without notifying you and you agree that if we do, (i) the new Secured Party will have the same rights and benefits that we now have but will not have to perform any of our obligations; (ii) the rights of the new Secured Party will not be subject to any claims, defenses or setoffs that you may have against us or the Vendor, and (iii) you will not assert any claims, defenses or setoffs whatsoever against us or the new Secured Party.

6. **SECURITY DEPOSIT:** As security for the performance of all your obligations hereunder, you have deposited with us the amount set forth in the section shown as "Security Deposit". We have the right, but are not obligated, to apply the security deposit at any time to any amount you owe. Provided you have fully performed all of the provisions of this Agreement, we will return to you any then remaining balance of the security deposit. We will not keep the security deposit separate from our general funds and you shall not be entitled to any interest thereon.

7. **CARE, USE AND LOCATION; LOSS:** You are responsible for installing and keeping the Equipment in good working order and repair. You will keep and use the Equipment only for business or commercial purposes and in compliance with all applicable laws, ordinances or regulations and only at your address shown on this Agreement unless we agree to another location. You will not make any alterations to the Equipment without our prior written consent, nor will you permanently attach the Equipment to any real estate. In the event the Equipment is lost, stolen or damaged, so long as you are not in default hereunder, you shall have the option within

### TERMS AND CONDITIONS (PAGE 1 OF 2) – PLEASE READ CAREFULLY BEFORE SIGNING

By signing this Agreement you acknowledge that you have read and understand the terms and conditions on each page of this Agreement, and you warrant that the person signing this Agreement on your behalf has the authority to do so and to grant the power of attorney set forth in Section 13 of this Agreement.

| I AM AUTHORIZED TO SIGN THIS AGREEMENT ON BEHALF OF BORROWER: | ACCEPTED BY SECURED PARTY: NAVITAS CREDIT CORP., at Columbia, South Carolina |
|---|---|
| X: *Noah Katz*  Date Signed: 10/29/2021 | By: *Trisen Seabrook*  Date Accepted: 11/01/21 |
| Print Name & Title: Noah Katz  CEO | Print Name & Title: Trisen Seabrook  Customer Service Represent |

**UNCONDITIONAL GUARANTY:**
For the purposes of this Guaranty, "you" and "your" refer to the person making the guaranty. "We", "us" and "our" refer to the Secured Party, our successors or assigns. You acknowledge that you have read and understood the Agreement and this Guaranty and that this is an irrevocable, joint, several and continuing guaranty. You agree that you have an interest in the Borrower's business, economic or otherwise, and that we would not enter into this Agreement without this Guaranty. You unconditionally guaranty that the Borrower will fully and promptly pay all its obligations under the Agreement and any future Agreements with us when they are due and will perform all its other obligations under the Agreement even if we modify or renew the Agreement, or if any payments made by the Borrower are rescinded or returned upon the insolvency, bankruptcy or reorganization of the Borrower, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If the Borrower defaults, you will immediately pay and perform all obligations due under the Agreement. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property which secures the obligations of Borrower or you to us ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release the Collateral or any obligor under the Agreement or this Guaranty. You agree that we do not have to proceed first against the Borrower or any Collateral. You hereby waive any right of exoneration, notice of acceptance of this Guaranty and of all other notices or demands of any kind in which you may be entitled to except for demand for payment. You will reimburse all expenses we incur in enforcing our rights against Borrower or you, including, without limitation, attorney's fees and costs. We may obtain information from and report to credit reporting agencies to enter into the Agreement or to enforce this Guaranty. You consent to personal jurisdiction, forum, choice of law and jury trial and transfer of venue waiver as stated in section 17. **YOU AND WE EACH WAIVE TRIAL BY JURY IN ANY ACTION RELATING TO THE AGREEMENT OR THIS GUARANTY.** This Guaranty may be executed by facsimile, electronic or original signature and such a copy shall be treated as an original for all purposes.

| X: *Noah Katz*  Date Signed: 10/29/2021 | X: _____  Date Signed: _____ |
|---|---|
| Print Name: Noah Katz | Print Name: |

NCC05162016EFA

## TERMS AND CONDITIONS (PAGE 2 OF 2) – PLEASE READ CAREFULLY BEFORE SIGNING

one week of such event to: (i) repair or replace the Equipment or (ii) pay to us the unpaid balance of the remaining Payments hereunder discounted to present value at the rate of three percent (3%) (or such greater amount that may be required by law) plus any other amounts due or to become due hereunder. **UNDER NO CIRCUMSTANCES ARE WE RESPONSIBLE FOR SERVICE OR MAINTENANCE ON THE EQUIPMENT.**

8. **TAXES:** You will pay when due to your appropriate taxing authority, all taxes, fines and penalties relating to this Agreement or the Equipment, and any applicable registration or titling fees or other governmental charges, that are now or in the future assessed or levied by any government authority or required for the lawful possession and use of the Equipment. Sales taxes due upon the purchase of the Equipment and any other such governmental charges, if included in the purchase price, may be financed hereunder.

9. **INDEMNITY:** We are not responsible for any injuries or losses to you or any other person or property caused by the installation, operation, maintenance, ownership, possession or use of the Equipment. You agree to reimburse us for, hold us harmless from, and defend us against any claims made against us, and for losses or injuries suffered by us, including, without limitation, those arising out of the negligence, tort, or strict liability claims. This indemnity shall continue even after the Term has expired.

10. **INSURANCE:** You agree to maintain comprehensive liability insurance acceptable to us. You also agree to maintain insurance against the loss of or damage to the Equipment for an amount not less than the replacement cost and name us and our assigns as loss payee. If you fail to timely provide such proof to us, we may, but are not obligated to, obtain property loss insurance to protect our interests in the Equipment. If we secure insurance in the form and amounts we deem reasonable:(i) you will reimburse the premium, which may be higher than a premium that you might pay if you obtained the insurance, (ii) the premium may include a profit to us and/or one of our affiliates through an investment in reinsurance or otherwise, and (iii) we will not name you as an insured party and your interests may not be fully protected. Any insurance proceeds received for the Equipment will be applied, at our option, to repair or replace the Equipment, or to the remaining payments due or that become due hereunder, discounted at three percent (3%) (or such greater amount that may be required by law).

11. **DEFAULT:** You will be in default if : (i) you do not pay any amount when due; (ii) you break any of your promises or representations hereunder or under any other agreement with us; (iii) you become insolvent, commence dissolution proceedings, assign your assets for the benefit of your creditors, or a trustee is appointed to take control of your assets; (iv) you or any guarantor enters (voluntarily or involuntarily) into a bankruptcy or other insolvency-related proceeding; (v) you default on any obligations to any of your other creditors; (vi) you have made any untrue or misleading representations to us; (vii) any guarantor dies; or (viii) you change your name, state of organization, chief executive office and/or place of residence without providing us with 30 days prior written notice of such change.

12. **REMEDIES:** In the event of a default by you, we can: (i) cancel this Agreement; (ii) declare you in default under any other agreement you have with us, and exercise any or all remedies provided to us thereunder; (iii) disable the Equipment or require that you ship the Equipment to us at your expense; (iv) accelerate and demand that you pay all the remaining Payments due under this Agreement discounted to present value at three percent (3%) (or such greater amount that may be required by law) together with any other amounts due hereunder; and/or (v) pursue any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral. Interest shall accrue on all amounts due us from the date of default until paid at the rate of the lesser of (i) one and one-half percent (1.5%) per month and (ii) the maximum rate permitted by law ("Remedy Interest Rate"). You agree to reimburse us for all charges, costs, expenses and attorney's fees that we have to pay to enforce this Agreement. If you return the Equipment pursuant to clause "(iii)" above or we take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling or leasing the Equipment. You agree that we do not have to notify you that we are selling or leasing the Equipment except as otherwise required by law. You also agree that we are entitled to abandon the Equipment if we believe it to be in our best interest.

13. **BORROWER REPRESENTATIONS AND OTHER AUTHORIZATIONS:** You hereby represent, warrant and promise to us that: (i) you have had an adequate opportunity to study this Agreement and consult your legal and other advisors before signing, and this Agreement is enforceable against you in accordance with its terms; (ii) you are not subject to any bankruptcy proceeding; and (iii) if this document was sent by you to us electronically, it has not been altered in any way and any alteration or revision to any part of this or any attached documents will make all such alterations or revisions non-binding and void. You hereby authorize us, and appoint us or our designee as your attorney-in-fact, to endorse insurance proceeds and to execute and file financing statements (naming you as "Debtor") and documents of title and registration (if applicable) on the Equipment or Collateral, and you agree to reimburse us for our out-of-pocket costs relating thereto.

14. **FEES AND CHARGES:** If any part of any Payment is not made by you when due, you agree to pay us fifteen percent (15%) of each past due amount (or the maximum amount permitted by law, if less than 15%). You agree to pay an administrative fee of fifty dollars ($50.00) if any check or ACH is dishonored or returned. **AS A MATERIAL INDUCEMENT TO US TO ENTER INTO THIS AGREEMENT AND FINANCE YOUR EQUIPMENT, YOU AGREE THAT IF ANY PAYMENT, CHARGE OR FEE BILLED OR COLLECTED BY US IS FOUND TO EXCEED THE MAXIMUM AMOUNT ALLOWED BY LAW, THEN (I) WE MAY MODIFY ANY SUCH EXCESSIVE AMOUNT BILLED SO AS TO MAKE IT NOT EXCESSIVE, (II) WE MAY REFUND TO YOU THE EXCESSIVE AMOUNT, TOGETHER WITH INTEREST AT THE "REMEDY INTEREST RATE" (AS DEFINED IN SECTION 12), AND (III) THE FOREGOING SHALL BE YOUR EXCLUSIVE REMEDY FOR THE BILLING OR COLLECTING OF THE EXCESSIVE AMOUNTS AND YOU WILL NOT RAISE ANY OTHER CLAIM, COMPLAINT OR OBJECTION WITH RESPECT THERETO.**

15. **ENTIRE AGREEMENT; CHANGES:** This Agreement contains the entire agreement between you and us relating to the financing of the Equipment, and it may not be terminated or otherwise changed except in writing by both of us. A limiting endorsement on a check or other form of payment will not be effective to modify your obligations or any of the other terms of this Agreement, and we may apply any payment received without being bound by such limiting endorsements.

16. **COMPLIANCE; NOTICES:** In the event you fail to comply with any terms of this Agreement, we can, but we do not have to, take any action necessary to effect your compliance upon ten (10) days prior written notice to you. If we are required to pay any amount to obtain your compliance, the amount we pay plus all of our expense in causing your compliance, shall become additional obligations and shall be paid by you together with the next due payment. This Agreement is for the benefit of and is binding upon you, your personal representatives, successors and assigns. Any notice required by this Agreement or the UCC shall be deemed to be delivered when a record properly directed to the intended recipient has been (i) deposited with the US Postal Service, (ii) transmitted by facsimile or through the Internet, provided there is reasonably sufficient proof that it was received by the intended recipient; or (iii) has been personally delivered.

17. **CHOICE OF LAW; JURISDICTION: THIS AGREEMENT SHALL NOT BE BINDING UNTIL IT IS ACCEPTED BY US IN WRITING, AND YOU HEREBY STIPULATE THAT OUR ACCEPTANCE AND SIGNING OF THIS AGREEMENT IN SOUTH CAROLINA FOLLOWING YOUR SIGNATURE MEANS THAT THIS AGREEMENT WAS MADE IN SOUTH CAROLINA. YOU HEREBY ACKNOWLEDGE THAT OUR ACCOUNT SERVICING OPERATIONS (INCLUDING THOSE SERVICING YOUR ACCOUNT) ARE LOCATED IN SOUTH CAROLINA. YOU HEREBY AGREE THAT THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF SOUTH CAROLINA, BUT WITHOUT GIVING EFFECT TO THE LAWS OF SOUTH CAROLINA GOVERNING CHOICE OF LAW. YOU CONSENT TO THE JURISDICTION OF THE STATE OR FEDERAL COURTS LOCATED IN THE STATE OF SOUTH CAROLINA FOR THE COUNTY OF LEXINGTON, AND AGREE THAT ANY ACTIONS OR PROCEEDINGS INITIATED BY YOU ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT (WHETHER SOUNDING IN BREACH OF CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT ONLY IN SUCH COUNTY IN SOUTH CAROLINA; PROVIDED HOWEVER, WE MAY BRING ACTION AGAINST YOU IN ANY STATE OR FEDERAL COURTS OUTSIDE SOUTH CAROLINA WE CHOOSE IN OUR SOLE DISCRETION, PROVIDED ONLY THAT SUCH COURT HAS PROPER JURISDICTION. IN THE EVENT THIS AGREEMENT IS ASSIGNED BY US, YOU CONSENT TO THE JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS. YOU UNDERSTAND THAT YOUR AGREEMENT TO SOUTH CAROLINA LAW AND YOUR SUBMISSION TO PERSONAL JURISDICTION IN SOUTH CAROLINA DIRECTLY BENEFITS US AND IS A MATERIAL INDUCEMENT TO OUR ENTERING INTO THIS AGREEMENT AND FINANCING YOUR EQUIPMENT. YOU AND WE EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING, WHETHER BROUGHT IN CONTRACT OR TORT, OR AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.**

18. **MISCELLANEOUS:** No delay or failure by us to enforce our rights under this Agreement shall prevent us from enforcing any rights at a later time. If any part of this Agreement is determined to be unenforceable, all other parts will remain in full force and effect. Any Equipment discounts we may negotiate with Vendor accrue solely to our benefit. The original of this Agreement shall be that copy which bears your electronic, facsimile or original signature, and our electronic or original signature.

## PAY PROCEEDS DIRECTION TO FINANCE AGREEMENT

You hereby irrevocably instruct us to pay the Vendor(s) listed below for the Equipment listed on Vendor(s) proposals approved by us. You hereby acknowledge that the Equipment has been delivered and is acceptable in all respects OR the Equipment has NOT been delivered but you hereby authorize us to make payment to the Vendor(s) in order to initiate delivery. Disbursement by us in accordance with the foregoing instructions shall constitute payment and delivery to and receipt by you of any and all such proceeds.

X _Noah Katz_ (signature) — DocuSigned by: FBE192680BB24C3...

Print Name & Title: Noah Katz, CEO
Date Signed: 10/29/2021

I hereby authorize, in my absence, _____ Telephone # _____ , to verify my direction to disburse funds.

Vendor: Fishbowl Solutions, LLC   Vendor: _____   Vendor: _____

NCC06162016EFA

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Corporation Service Company**

B. E-MAIL CONTACT AT FILER (optional)
**FilingDept@cscinfo.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME
**ARTESIAN FUTURE TECHNOLOGY, LLC**

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 226 JAMES JACKSON AVE | CARY | NC | 27513 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
**Navitas Credit Corp.**

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 201 Executive Center Dr Ste100 | Columbia | SC | 29210 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Dealer Inv# 243559 Dated 10/29/21 together with any and all replacements, replacement parts, Accessions and attachments now or hereafter made a part of any of the Equipment and all Proceeds thereof. As used herein, Accessions and Proceeds shall have the meaning as set forth in the Uniform Commercial Code as presently adopted in the jurisdiction hereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, Item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
[221043494]