| Fill in this information to identify the case: | |
|---|---|
| Debtor name: Artesian Future Technology, LLC | |
| United States Bankruptcy Court for the: NORTHERN DISTRICT OF CALIFORNIA | |
| Case number (if known): 22-40396 | ☐ Check if this is an amended filing |

Official Form 425A

**Plan of Reorganization for Small Business Under Chapter 11**      02/20

# Artesian Future Technology, LLC's Plan of Reorganization, Dated July 6, 2022

## Executive Summary

Artesian Future Technology, LLC (the "Debtor") proposes in this Subchapter V Plan to liquidate its assets and enter into a global settlement of all claims against its founder, Noah Katz, and the estate's blanket secured creditors, Belinda Novik and Barry Katz. The settlement funds the Plan with a combination of contributed proceeds of collateral and a monthly cash infusion over the Plan term.

Under the Plan, the Debtor will pay its allowed priority claims for employee wages and benefits and consumer deposits in full, in cash on the Plan's Effective Date. Allowed priority tax claims will be paid in full in equal monthly installments with interest by April 1, 2027. Allowed unsecured claims will receive a pro rata share of $50,000 paid upon the Effective Date. Secured creditors J.P. Morgan Chase, N.A. and Navitas will retain their liens against collateral and their legal, equitable and contractual rights without modification. Secured creditors Belinda Novik and Barry Katz will retain the lien that secured their collateral but agree to allow the use of their collateral to pay allowed non-tax priority claims as a carve out (the "Carve Out") and will, in exchange, receive an assignment of all claims and causes of action the estate may hold against them, Noah Katz, or any other person or entity and any defenses to claims the estate may hold.

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

The Debtor is a North Carolina limited liability company that operated in Oakland, California and Durham, North Carolina. Prior to February, 2022, the Debtor manufactured high end computers and related parts for gaming and cryptocurrency mining. On March 1, 2022, the Debtor's reputation and industry following were damaged severely after a small streamer asserted that the Debtor's principal, Noah Katz, had, during a livestreamed event, denied her a sweepstakes prize in a drawing. The streamer's complaint was retweeted over 8,000 times. Mr. Katz later apologized, but these events led to a deep financial spiral for the Debtor. Over March 8-9, 2022, the Debtor closed down its operations and laid off all employees.

The Debtor filed this Chapter 11 case on April 22, 2022. It maintained saleable inventories of parts and computers in both Oakland and North Carolina. These assets were sold in a court-approved auction on June 28, 2022, generating $140,000.00.

.

| Debtor | Artesian Future Technology, LLC | Case number (*if known*) 22-40396 |
|---|---|---|
| | Name | |

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as Exhibit "B".

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $193,296.35 plus a monthly contribution equal to the present value payments to holders of allowed tax claims with interest paid in equal installments until April 1, 2027.

The final Plan payment is expected to be paid on April 1, 2027.

The assumptions underlying the feasibility analysis are as follows:

1. The Debtor assumes that the successful bidder at auction completes payment of the $140,000 purchase price;
2. The Tesla sells for its J.D. Power value of $100,000;
3. Belinda Novik and Barry Katz contribute the Carve Out and capital infusion necessary to fund the Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Artesian Future Technology, LLC (the *Debtor*) from the proceeds of the inventory liquidation, sale of the Debtor's Tesla, cash on hand, refunds from credit card charges reversed, a Carve Out (defined below) from collateral and, if necessary, an infusion of capital from Belinda Novik and Barry Katz.

This Plan provides for:  **0**  classes of priority claims;
 **3**  classes of secured claims;
 **1**  class of non-priority unsecured claims; and
 **1**  class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately  **.0166**  cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

| | | |
|---|---|---|
| Debtor | **Artesian Future Technology, LLC** | Case number (*if known*) **22-40396** |
| | Name | |

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** .................... | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2). |
| 2.02 | **Class 2A** .................. | The claim of Belinda Novik and Barry Katz to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | **Class 2B** .................. | The claim of J.P. Morgan Chase Bank, N.A. to the extent allowed as a secured claim under § 506 of the Code. |
| 2.04 | **Class 2C** .................. | The claim of Navitas Credit Corporation to the extent allowed as a secured claim under § 506 of the Code. |
| 2.05 | **Class 3** .................... | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.06 | **Class 4** .................... | Equity interests in the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under § 1123(a)(1) of the Code, administrative expense claims and priority wage, employee benefit plan contribution, consumer deposit and tax claims are not included in classes in this Plan. |
| 3.02 | **Administrative expense claims** | Each holder of an allowed administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date in cash or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | Each holder of an allowed priority tax claim will be paid as forth in Article 7 of this Plan in compliance with section 1129(a)(9)(C) of the Code. |
| 3.04 | **Other priority claims** | Each holder of an allowed priority wage, employee benefit plan contribution, consumer deposit will be paid in full in cash at the Effective Date as forth in Article 7 of this Plan. |
| 3.05 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.06 | **Prospective quarterly fees** | As this is a Subchapter V case, no U.S. Trustee's fees will accrue. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 - Priority claims excluding those in Article 3** | ☐ Impaired<br>☐ Unimpaired | The Debtor believes that there are no unpaid priority claims capable of classification and that there are therefore no Class 1 Claims. |
| **Class 2A – Secured claim of Belinda Novik and Barry Katz** | ☒ Impaired<br>☐ Unimpaired | Belinda Novik and Barry Katz shall retain the lien on their collateral (do we need to say what their collateral is?) and receive the remainder of proceeds from the sale thereof after the deduction of carved out contribution of $_____ (the "Carve Out") to make the |

| Debtor | **Artesian Future Technology, LLC** | Case number (*if known*) **22-40396** |
|---|---|---|
| | Name | |

| | | | |
|---|---|---|---|
| | | | payments to priority claimants described in Article 7 below. |
| | **Class 2B – Secured Claim of J.P. Morgan Chase, N.A.** | ☐ Impaired<br>☒ Unimpaired | J.P. Morgan Chase, N.A. shall retain its lien and legal, equitable and contractual rights without impairment. |
| | **Class 2C – Secured Claim of Navitas Credit Corporation** | ☐ Impaired<br>☒ Unimpaired | Navitas Credit Corporation shall retain its lien and legal, equitable and contractual rights without impairment. |
| | **Class 3 – Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Holders of allowed non-priority unsecured claims shall receive a pro rata distribution of $50,000 on the Effective Date. |
| | **Class 4 - Equity security holders** | ☐ Impaired<br>☒ Unimpaired | The equity security holders of the Debtor shall retain their interests without modification. |

### Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim** | A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | Except for executory contracts and unexpired leases that have been rejected or assumed, and if applicable assigned, before the Effective date or that are the subject of a pending motion to assume, and if applicable assigned, the Debtor will be conclusively deemed to have rejected all its executory contracts and unexpired leases as of the date of entry of the order confirming this Plan. |

### Article 7: Means of Execution

| | | |
|---|---|---|
| 7.01 | **Liquidating Assets** | The Debtor will liquidate all of its assets to cash as follows: |
| | | The Debtor will sell its half interest in the 2018 Tesla Model X it co-owns with Noah Katz, recover the credit balance on the credit card account that the Debtor used to pay creditors pre-petition, obtain a refund from Bank of America of funds in the Debtor's pre-petition bank account and combine those funds with the funds in its DIP (post-petition bank account. Total proceeds from these items are referred to as "Unencumbered Cash." |
| | | The Debtor will complete the sale of assets from its Oakland and North Carolina warehouses and any other assets against which Belinda Novik and Barry Katz hold a lien. The proceeds of these sales are referred to as "Encumbered Cash." |

Case: 22-40396   Doc# 95   Filed: 07/06/22   Entered: 07/06/22 16:18:45   Page 4 of 14

| 7.02 | **Carve Out** | Secured creditors Belinda Novik and Barry Katz will retain the lien that secured their collateral but agree to allow the use of their collateral to pay allowed priority claims in the manner set forth in paragraph 7.03 below as a carve out (the "Carve Out") and will, in exchange, receive an assignment of all claims and causes of action the estate may hold against them, Noah Katz, or any other person or entity as set forth below in Article 10. | |
|---|---|---|---|
| 7.03 | **Payment of Allowed Claims** | 1. | On the Effective Date the Debtor shall pay from Unencumbered Cash or reserve for, to the extent they are allowed: |
| | | | A. All administrative claims entitled to priority under § 507(a)(2) of the Code. |
| | | | B. All employee wage and other claims entitled to priority under § 507(a)(4) of the Code. |
| | | | C. All employee benefit plan contribution and other claims entitled to priority under § 507(a)(5) of the Code. |
| | | | D. All consumer deposit and other claims entitled to priority under § 507(a)(7) of the Code. |
| | | | E. A pro rata share of all claims entitled to priority under §507(a)(8) of the Code from the Unencumbered Cash remaining after payment of the higher priority claims listed in paragraph 7.03 of this Plan. |
| | | 2. | On the Effective Date, the Debtor will pay holders of Class 3 allowed, general unsecured claims their pro rata portion of $50,000 from the Carve Out. |
| | | 3. | Pursuant to 11 U.S.C. section 1129(a)(9)(C) each holder of an allowed claim entitled to priority under § 507(a)(8) of the Code will receive on account of their allowed claims regular installment payments in cash— (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief; (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. |

| | **Article 8: General Provisions** | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. Other terms are defined above in the Plan. |
| 8.02 | **Effective Date** | The Effective Date of this Plan is the later of first business day following the date that is 14 days after the entry of the confirmation order if confirmation occurs on or after May 31, 2022. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| | | |
|---|---|---|
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate Governance** | After the Effective Date, the Reorganized Debtor may amend and restate its organizational documents and file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the states of incorporation in accordance with applicable law.   Such new organizational documents, if any, will prohibit the issuance of non-voting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code. |
| 8.08 | **Retention of Jurisdiction** | Retention of Jurisdiction.   The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether the Debtor is in material default of any Plan obligation; (ii) whether the time for performing any Plan obligation, or whether the time for assumption or rejection of leases and executory contracts, should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan. |

### Article 9: Discharge

In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

### Article 10: Other Provisions

1. <u>Global Compromise with Noah Katz, Belinda Novik and Barry Katz.</u>   Under the Plan the Debtor will sell all the bankruptcy estate's claims and causes of action against any person or entity as well as any defense the estate has to claims against it, including claims against Noah Katz of any kind, including claims for breach of fiduciary duty and any claims against Belinda Novik and Barry Katz to Ms. Novik and Mr. Katz in exchange for (a) the contribution by Noah Katz of his 50% interest in the proceeds of sale of the Tesla to Unencumbered Funds, (b) the $123,342.45 Carve Out, and (c) a monthly cash infusion from Belinda Novik and Barry Katz of the amount necessary to pay holders or allowed priority tax claims in full in accordance with § 1129(a)(9)(C) of the Code.   If the amount of such claims remains at $285,468.92, then the payment shall be $5,653 per month.   If the total of allowed priority tax claims is higher, the payment amount shall increase to pay all such claims with statutory interest by April 1, 2027, not later than 60 months after the Petition Date.   If the amount of allowed priority tax claims is lower than $285,468.92, the monthly payment amount shall remain $5,6,53, but the payment shall cease when all such claims have been paid in full.

    The compromise is fair and equitable under the law of the 9th Circuit.   The Debtor has little chance of successfully prosecuting claims, if any exist, against Noah Katz or his parent, Ms. Novik and Barry Katz did not receive any payments from the estate.   The Debtor's examination of transactions for avoidability shows that they simply contributed cash and made loans to the Debtor, with only the last tranche being secured.   Noah Katz received salary and expense reimbursement in the year before the filing in the ordinary course.   The claims against Noah Katz, based upon the loss of the Debtor's customer base, does not appear to support any kind of action.   The cost of such an action, given the difficulties prosecuting an individual, would greatly exceed any potential recovery.

    The settlement allows the payment of all priority claims and a dividend to unsecured creditors and compares favorably to a Chapter 7 liquidation in which the secured creditors do not allow a Carve Out or contribute to pay priority tax claims and unsecured creditors receive nothing.

2. <u>Preservation of Claims in Litigation</u>.   The Debtor specifically retains the right to litigate its claims and causes of action against any person or entity and preserves such claims and rights for the benefit of Barry and Belinda Katz as set forth in the preceding paragraph.

3. <u>Role and Payment of Subchapter V Trustee in Non-Consensual Plan</u>.   Whether the Plan is confirmed consensually or non-consensually, Chief Restructuring Officer Edward Webb shall act as the disbursing agent for payments hereunder. The Subchapter V trustee shall be entitled to payment for post-confirmation services rendered on the same terms as he is entitled for pre-confirmation services rendered.

4. <u>Post-Effective Date Compensation</u>.   Neither Dr. Webb nor any other professional shall be required to seek approval for compensation for fees or expenses incurred after confirmation of this Plan.   All amounts paid shall be reported in Debtor's post-confirmation quarterly reports until this case has been closed.

5. <u>Default In Plan Payments</u>. In the event of a default in plan payments, any creditor or the Subchapter V trustee may file a notice of default with the court.   The Debtor shall have 10 days to cure the default.   The Debtor may within that 10 days cure the default or set a hearing before the Court on 20 days' notice to (a) determine if there was a default, (b) determine if Debtor has cured the default, (c) set a 10-day deadline for cure of any default determined under this paragraph; (d) modify the Plan if confirmation was obtained under 11 U.S.C. § 1191(b), or (e) authorize and direct the Subchapter V trustee in the event of an uncured default to take control of and then liquidate and distribute any estate assets remaining.

Respectfully submitted,
              **ARTESIAN FUTUE TECHNOLOGY, LLC**

              **X  /s/ Edward Webb**                                      **Edward Webb**
                                                                         [Printed name]

              **Its: Chief Restructuring Officer**


              **X  /s/ Robert G. Harris**                                  **Robert G. Harris #124678**
              [Signature of the Attorney for the Plan                      [Printed name]
              Proponent]

EXHIBIT A

| Notes | ASSETS | Chapter 7 | Chapter 11 |
|---|---|---:|---:|
|  | *Real Property* | $ - | $ - |
|  | *Personal Property* |  |  |
|  | DIP Account | $ 3,564 | $ 3,564 |
|  | Bank of America Account | $ 5,000 | $ 5,000 |
|  | Auction Proceeds | $ 140,000 | $ 140,000 |
|  | Credit Card Refunds | $ 50,000 | $ 50,000 |
| [1] | 2018 Tesla Model X | $ 25,000 | $ - |
| [2] | IP, customer names, influencer lists | $ - | $ - |
|  | *Sub-total* | $ 223,564 | $ 198,564 |
| [3] | *Plan Funder Contribution* | $ - | $ 373,549 |
| [4] | **Total Assets** | **$ 223,564** | **$ 572,113** |
|  | **LIABILITIES** |  |  |
|  | *Aministrative Expense Claims* |  |  |
| [5] | Chapter 11 | $ 100,000 | $ 100,000 |
| [6] | Chapter 7 (includes trustee and professional fees) | $ 58,575 | $ - |
|  | *Sub-total* | $ 158,575 | $ 100,000 |
|  | ***Sub-total avaliable after Administrative Expense Claims*** | **$ 64,989** | **$ 472,113** |
|  | *Priority Claims* |  |  |
| [7] | 507(a)(4) | $ 64,989 | $ 122,089 |
|  | 507(a)(7) | $ - | $ 14,555 |
| [8] | Priority Tax Claims | $ - | $ 285,469 |
|  | *Sub-total* | $ 64,989 | $ 422,113 |
| [9] | ***Sub Total available after Prority Claims*** | **$ -** | **$ 50,000** |
| [10] | General Unsecured Claims | $ 5,487,447 | $ 4,108,793 |
|  | ***Estimated Percentage Distribution to GUCs*** | **$ -** | **1.22%** |

Notes to Liquidation Analysis

[1] Title to the Tesla is in the name of the Debtor and Noah Katz, the sole member of the Debtor. The down payments on the Tesla and for its insurance were made from the Debtor's account and charged to Noah Katz as distributions to ownership, while Noah Katz has made the ongoing monthly payments directly. In a chapter 7 scenario it is assumed the trustee would sell the Tesla and following resolution of disputes with Noah Katz retain ~$25,000 (representing a portion of the net sale proceeds). In the chapter 11 scenario, title to the Tesla will ultimately pass to Noah Katz as part of the global compromise embodied in the Plan and in partial consideration for the plan contribution (the "Plan Contribution") being made by Belinda Novik and Barry Katz (together, the "Plan Funders").

[2] The Debtor included its intellectual property, customers list and influences lists among the assets marketed for sale via auction. The highest and best bid obtained for such assets was $5,000. Because the transactions costs exceeded the consideration offered, the Debtor determined not to proceed with a sale of these assets and has assigned zero value to them. These assets will be abandoned.

[3] The Plan Contribution consists of the following components: (a) cash in the amount of $373,549 funded by the Plan Funders; (b) sale proceeds of $140,000 that would otherwise be due and payable to the Plan Funders on account of their liens on personal property of the Debtor sold at auction; (c) withdrawal of the Plan Funders' unsecured claims totaling $843,056 and settlement of all other claims of the Plan Funders pursuant to the terms of the Plan, and (d) withdrawal of Noah Katz's unsecured claim of $535,598 and settlement of all other claims of Noah Katz pursuant to the terms of the Plan. The Plan Contribution shall be in an amount sufficient to cover allowed priority claims and a "pot" of $50,000 for general unsecured creditors. To the extent the priority tax claims are more or less than the amount estimated ($285,469) the Plan Funders shall adjust the Plan Contribution accordingly. In the highly unlikely event the priority tax claims materially exceed the amount estimated in the Debtor's books and records, the Plan may require amendment or withdrawal. The total of the asserted priority tax claims will be known within approximately 180 days of the Petition Date.

[4] The total assets shown do not include retainers held by professionals in the amount of $214,245.60. The entirety of the retainers are anticipated to be exhausted and no retainer funds are anticipated to be available for payment to creditors.

[5] The chapter 11 administrative expense claims include post-petition rent to landlords, utilities to PG&E, Debtor's professionals to the extent their fees are in excess of retainers, and the amount of $25,000 for the Subchapter V trustee.

[6] The chapter 7 administrative expense claims take into account both the trustee's statutory fee and the projected fees of trustee's counsel.

[7] In a chapter 7 scenario it is anticipated that only a portion of section 507(a)(4) claims will be paid and there will be no funds available for claims of lower priority.

[8] The estimated priority tax claims are based on the Debtor's books and records. The Debtor has confidence in this estimate, but it may differ from the actual claimed amount. The Plan Funders will pay the tax claims in full so long as the final allowed amount does not differ materially from the Debtor's estimate.

[9] The $50,000 being made available to general unsecured creditors is a fixed amount. This is a "pot" Plan.

[10] The pool of general unsecured claims does not include the disputed claim of Brian Quinlivan in the amount of $3,495,552. The Debtor believes that claim has no merit. It that claim is ultimately allowed, the percentage distribution to general unsecured creditors will decrease significantly.

EXHIBIT B

# Exhibit "B"
# Feasibility Analysis

## Calculation of Projected Disposable Income

| Income | |
|---|---|
| Projected Unencumbered Cash on Hand at Effective Date | $106,154.00 |
| Carve Out | $125,342.35 |
| **A. Total Projected Cash at Effective Date** | **$231,496.35** |

| Expenses | Amount |
|---|---|
| Non-Professional Administrative Expenses<br><br>    Lessor E.P. Madigan & Sons Inc. (Oakland) - $11,200<br>    PG&E (Oakland utilities) - $2,000 | $13,200 |
| Professional Administrative Expenses (Projected)<br><br>Mark Sharf - $25,000.00<br>Binder & Malter – TBD<br>Edward Webb/BPM - TBD | $25,000 |
| **B. Total Expenses** | **$35,200** |

| | |
|---|---|
| **C. Projected Disposable Income** (Line A - Line B) | $193,296.35 |

| Plan Payments | |
|---|---|
| Priority § 507(a)(4) employee wage claims | $122,088.61 |
| Priority § 507(a)(5) employee benefit plan contribution claims | $ 0.00 |
| Priority § 507(a)(7) consumer deposit claims | $ 14,554.74 |
| Priority § 507(a)(8) Tax Claims monthly payment | $ 5,653.00 |
| Class 3 General Unsecured Claims' Carve Out | $ 50,000.00 |
| **D. Total Plan Payments** | **$192,296.35** |

| | |
|---|---|
| **E. Plan Feasibility** (Line C - Line D) Amount | $ 1,000.00 |

## Effective Date Feasibility

Can the Debtors Make the Effective Date Payments?

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | $231,496.35 |  |
| Payments on Effective Date: |  |  |
| Non-Professional Administrative Expenses<br><br>    Lessor E.P. Madigan & Sons Inc. (Oakland) - $11,200<br>    PG&E (Oakland utilities) - $2,000 |  | $ 13,200 |
| Professional Administrative Expenses (Projected) |  | $ 25,000 |
| Non-Tax Priority Claims - §§ 507(a)(4), 507(a)(5), 507(a)(7) |  | $136,643.35 |
| Tax Priority Claim (1st payment) §§ 507(a)(4), |  | $ 5,653.00 |
| Class 3 GUC payment |  | $ 50,000.00 |
| B. Total Payments on Effective Date |  | $230,496.35 |
| **C. Net Cash on Effective Date** (Line A - Line B)<br>(Not feasible if less than zero) | $1,000.00 |  |