**Fill in this information to identify the case:**

Debtor
name    Artesian Future Technology, LLC

United States Bankruptcy Court
for the:    NORTHERN DISTRICT OF CALIFORNIA

Case number (if
known)    22-40396

☒ Check if this is an
amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

## Artesian Future Technology, LLC's Plan of Reorganization, Dated September 27, 2022

**Executive Summary**

Artesian Future Technology, LLC (the "Debtor") proposes in this Subchapter V Plan to liquidate its assets and enter into a global settlement of all claims against its founder, Noah Katz, and the estate's blanket secured creditors, Belinda Novik and Barry Katz. The settlement funds the Plan with a combination of contributed proceeds of collateral and a monthly cash infusion over the Plan term.

Under the Plan, the Debtor will pay its allowed priority claims for employee wages and benefits and consumer deposits in full, in cash on the Plan's Effective Date. Allowed priority tax claims will be paid in full in equal monthly installments with interest by April 1, 2027. Allowed unsecured claims will receive a pro rata share of $50,000 paid upon, or as soon as practicable after, the Effective Date. Secured creditors J.P. Morgan Chase, N.A. and Navitas will retain their liens against collateral and their legal, equitable and contractual rights without modification. Secured creditors Belinda Novik and Barry Katz will retain the lien that secured their collateral but agree to allow the use of their collateral to pay allowed non-tax priority claims as a Carve Out (defined below at par. 7.02) and will, in exchange for their Further Contribution (defined below at par. 7.02) as part of the Global Compromise (defined below at Article 10, par. 1) receive an assignment of all claims and causes of action the estate may hold against them, Noah Katz, or any other person or entity and any defenses to claims the estate may hold upon the completion of payments under the Plan.

**Background for Cases Filed Under Subchapter V**

     **A.**     **Description and History of the Debtor's Business**

The Debtor is a North Carolina limited liability company that operated in Oakland, California and Durham, North Carolina. Prior to February, 2022, the Debtor manufactured high end computers and related parts for gaming and cryptocurrency mining. On March 1, 2022, the Debtor's reputation and industry following were damaged severely after a small streamer asserted that the Debtor's principal, Noah Katz, had, during a livestreamed event, denied her a sweepstakes prize in a drawing. The streamer's complaint was retweeted over 8,000 times. Mr. Katz later apologized, but these events led to a deep financial spiral for the Debtor. Over March 8-9, 2022, the Debtor closed down its operations and laid off all employees.

The Debtor filed this Chapter 11 case on April 22, 2022. It maintained saleable inventories of parts and computers in both Oakland and North Carolina. These assets were sold in a court-approved auction on June 28, 2022, generating $140,000.00.

.

#### B.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**.

#### C.   Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as Exhibit "B".

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $193,296.35 plus a monthly contribution equal to the present value payments to holders of allowed tax claims with interest paid in equal installments until April 1, 2027.

The final Plan payment is expected to be paid on or before April 1, 2027.

The assumptions underlying the feasibility analysis are as follows:

1. The Debtor assumes that the successful bidder for the purchase of Debtor's assets completed payment of the $140,000.00 purchase price;

2. The net $2,700 value to the estate from the Tesla automobile (assuming a J.D. Power value of $82,975) is to be paid by Belinda Novik and Barry Katz; and,

3. Belinda Novik and Barry Katz contribute the Carve Out and Further Contribution totaling the amount necessary to fund the Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Artesian Future Technology, LLC (the *Debtor*) from the proceeds of the inventory liquidation, a contribution equal to the Debtor's $2,700 interest in the Tesla to be supplied by Belinda Novik and Barry Katz, cash on hand, refunds from credit card charges reversed, the Carve Out from collateral and, if necessary, the Further Contribution, an infusion of capital from Belinda Novik and Barry Katz necessary to pay the holders of allowed priority tax claims under the Plan.

This Plan provides for:   **0**   classes of priority claims;

**3**   classes of secured claims;

**1**   class of non-priority unsecured claims; and

**1**   class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 0.6919 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** ......................... | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2). |
| 2.02 | **Class 2A** ...................... | The claim of Belinda Novik and Barry Katz to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | **Class 2B** ...................... | The claim of J.P. Morgan Chase Bank, N.A. to the extent allowed as a secured claim under § 506 of the Code. |
| 2.04 | **Class 2C** ...................... | The claim of Navitas Credit Corporation to the extent allowed as a secured claim under § 506 of the Code. |
| 2.05 | **Class 3** ......................... | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.06 | **Class 4** ......................... | Equity interests in the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under § 1123(a)(1) of the Code, administrative expense claims and priority wage, employee benefit plan contribution, consumer deposit and tax claims are not included in classes in this Plan. |
| 3.02 | **Administrative expense claims** | Each holder of an allowed administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date in cash or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | Each holder of an allowed priority tax claim will be paid as forth in Article 7 of this Plan in compliance with section 1129(a)(9)(C) of the Code. |
| 3.04 | **Other priority claims** | Each holder of an allowed priority wage, employee benefit plan contribution and consumer deposit claim will be paid in full in cash at the Effective Date as forth in Article 7 of this Plan. |
| 3.05 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.06 | **Prospective quarterly fees** | As this is a Subchapter V case, no U.S. Trustee's fees will accrue. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 - Priority claims excluding those in Article 3** | ☐ Impaired<br>☐ Unimpaired | The Debtor believes that there are no unpaid priority claims capable of classification and that there are therefore no Class 1 Claims. |

Case: 22-40396   Doc# 190   Filed: 09/27/22   Entered: 09/27/22 16:43:53   Page 3 of 16

| Class 2A – Secured claim of Belinda Novik and Barry Katz | ☒ Impaired ☐ Unimpaired | Belinda Novik and Barry Katz shall retain the lien on their collateral and receive the remainder of proceeds from sale thereof, if any, after the Carve Out. |
| Class 2B – Secured Claim of J.P. Morgan Chase, N.A. | ☐ Impaired ☒ Unimpaired | J.P. Morgan Chase, N.A. shall retain its lien and legal, equitable and contractual rights without impairment. |
| Class 2C – Secured Claim of Navitas Credit Corporation | ☐ Impaired ☒ Unimpaired | Navitas Credit Corporation shall retain its lien and legal, equitable and contractual rights without impairment. |
| Class 3 – Non-priority unsecured creditors | ☒ Impaired ☐ Unimpaired | Holders of allowed non-priority unsecured claims shall receive a pro rata distribution of $50,000 on the Effective Date. |
| Class 4 - Equity security holders | ☐ Impaired ☒ Unimpaired | The equity security holders of the Debtor shall retain their interests without modification. |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed Claim** | A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: <br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or <br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | Except for executory contracts and unexpired leases that have been rejected or assumed, and if applicable assigned, before the Effective Date or that are the subject of a pending motion to assume, and if applicable assigned, the Debtor will be conclusively deemed to have rejected all its executory contracts and unexpired leases as of the date of entry of the order confirming this Plan. The commercial auto finance agreement with secured Class 2B creditor J.P. Morgan Chase Bank, N.A. to which the Debtor is a party is excluded from rejection pursuant to this paragraph 6.01. |

## Article 7: Means of Execution

| 7.01 | **Liquidating Assets** | The Debtor will liquidate all of its assets to cash as follows: <br><br>The Debtor will transfer legal title to its half interest in the 2018 Tesla Model X it co-owns with Noah Katz, recover the credit balance on the credit card account that the Debtor used to pay creditors pre-petition, obtain a refund from Bank of America of funds in the Debtor's pre-petition bank account and combine those funds with the funds in its DIP (post-petition bank account. Total proceeds from these items are referred to as "Unencumbered Cash." |

|  |  | The Debtor will complete the sale of assets from its Oakland and North Carolina warehouses and any other assets against which Belinda Novik and Barry Katz hold a lien. The proceeds of these sales are referred to as "Encumbered Cash." |
|---|---|---|
| 7.02 | **Carve Out and Further Contribution Defined** | Secured creditors Belinda Novik and Barry Katz will retain the lien that secured their collateral but agree to allow the use of the proceeds thereof to pay allowed priority claims in the manner set forth in paragraph 7.03 below as a carve out (the "Carve Out") and to contribute such other sums as are necessary to make all remaining payments under this Plan (the "Further Contribution") and will upon the completion of all payments required under this plan, receive a transfer and an assignment of all claims and causes of action the estate may hold against them, Noah Katz, or any other person or entity as set forth below in Article 10 below.   On the Effective Date, Belinda Novik and Barry Katz shall (a) deposit into the debtor-in-possession bank account all sums necessary to pay the remaining Effective Date payments listed in Exhibit B hereto as part of their Further Contribution, (b) deposit into the debtor-in-possession bank account the sums necessary to pay estate professionals on the allowed fees and costs they may incur after confirmation and prior to the Effective Date, and (c) pay, on a monthly basis, the sums necessary to pay the holders of all allowed claims entitled to priority under § 507(a)(8) of the Code as set forth in paragraph 7.03 below. |

| 7.03 | **Payment of Allowed Claims** | 1. | On the Effective Date the Debtor shall pay from Unencumbered Cash or reserve for, to the extent they are allowed: |

        A.   All administrative claims entitled to priority under § 507(a)(2) of the Code.

        B.   All employee wage and other claims entitled to priority under § 507(a)(4) of the Code.

        C.   All employee benefit plan contribution and other claims entitled to priority under § 507(a)(5) of the Code.

        D.   All consumer deposit and other claims entitled to priority under § 507(a)(7) of the Code.

        E.   A pro rata share of all claims entitled to priority under §507(a)(8) of the Code from the Unencumbered Cash remaining after payment of the higher priority claims listed in paragraph 7.03 of this Plan.

2.     On the Effective Date, the Debtor will pay holders of Class 3 allowed, general unsecured claims their pro rata portion of $50,000 from the Carve Out.

3.     Pursuant to 11 U.S.C. section 1129(a)(9)(C) each holder of an allowed claim entitled to priority under § 507(a)(8) of the Code will receive on account of their allowed claims regular installment payments in cash— (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief; (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.

4.     Pursuant to the Federal Rules of Bankruptcy Procedure, Interim Rule 3010(b), neither the Debtor nor the Subchapter V Trustee shall be required to make a payment to a creditor in an amount less than $15 but retains the discretion to do so without further order of the bankruptcy court.   Funds not distributed because of this paragraph shall be paid whenever the accumulation aggregates to $15 or more.   Any funds remaining shall be distributed with the final payment.   Further, if any distribution check is returned by mail due to an expired address with no forwarding information, or a creditor does not cash a distribution check within 120 days of the date of issuance, such check shall be considered void, and the Debtor shall deposit those funds with the Clerk of the Court as unclaimed dividends.

## Article 8: General Provisions

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.   Other terms are defined above in the Plan. |
| 8.02 | **Effective Date** | The Effective Date of this Plan is October 26, 2022, 186 days after the commencement of this case and the sixth day after the bar date for claims entitled to priority under § 507(a)(8) of the Code except as provided below.   If a stay of the confirmation order is in effect on October 26, 2022, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |

Official Form 425A            Plan of Reorganization for a Small Business Under Chapter 11           page 6

| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
|------|------------------|--------|
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate Governance** | After the Effective Date, the Reorganized Debtor may amend and restate its organizational documents and file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the states of incorporation in accordance with applicable law.   Such new organizational documents, if any, will prohibit the issuance of non-voting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code. |
| 8.08 | **Retention of Jurisdiction** | Retention of Jurisdiction.   The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether the Debtor is in material default of any Plan obligation; (ii) whether the time for performing any Plan obligation, or whether the time for assumption or rejection of leases and executory contracts, should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan. |
| 8.09 | **Property of the Estate and Revesting** | Pursuant to section 1186 of the Bankruptcy Code, if this plan is confirmed under section 1191(b) of the Bankruptcy Code then property of the estate includes, in addition to the property specified in section 541 of the Bankruptcy Code, all property of the kind specified in that section that the Debtor acquires after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. |
|      |  | The assets of this estate, specifically the claims and causes of action, if any, against Belinda Novik, Barry Katz, and Noah Katz shall not vest in the Debtor at either confirmation of the plan or the Effective Date but shall instead remain property of the bankruptcy estate until the completion of all payments required under the plan.   On conversion to Chapter 7 all assets revest in the Chapter 7 estate and all claims and causes of action of the estate may be prosecuted by any subsequently appointed Chapter 7 trustee. |

███      **Article 9: Discharge**

In accordance with § 1192(2) of the Code, the Debtor waives and will not receive any discharge of debt in this bankruptcy case.

███      **Article 10: Other Provisions**

1. Global Compromise with Noah Katz, Belinda Novik and Barry Katz.   Under the Plan the Debtor will, upon the completion of all payments required under this Plan transfer and assign all claims and causes of action the Debtor or the estate may hold against the Plan Funders, Noah Katz, or any other person or entity.   The above claims transferred to the Plan

Funders include, but are not limited to, claims of the Debtor and its estate (i) against any officers, directors, managers, members or shareholders of the Debtor, including claims that might otherwise be brough derivatively by interest holders or creditors on the Debtor's behalf, such as claims in the nature of breach of fiduciary duty, negligence, gross negligence, unlawful distribution, fraud, malfeasance, misrepresentation and willful misconduct, (ii) alter ego claims to the fullest extent such claims belong to the Debtor under applicable non-bankruptcy law, and (iii) all claims of the Debtor's estate under Chapter 5 of the Bankruptcy Code.   Notwithstanding any provision to the contrary in this Plan, the Plan does not release any claims against the Plan Funders or Noah Katz held by of any non-Debtor in exchange for (a) the payment by Belinda Novik and Barry Katz of $2,700 on account of the estate's 50% interest in the Tesla to Unencumbered Funds, (b) the $123,342.45 Carve Out, and (c) a monthly cash infusion from Belinda Novik and Barry Katz of the amount necessary to pay holders of allowed priority tax claims in full in accordance with § 1129(a)(9)(C) of the Code.   If the amount of the priority tax claims remains at $285,468.92, then the monthly payment shall be $5,653.   If the total of allowed priority tax claims is higher, the payment amount shall increase to pay all such claims with statutory interest by April 1, 2027, not later than 60 months after the Petition Date.   If the amount of allowed priority tax claims is lower than $285,468.92, the monthly payment amount shall remain $5,653, but the payment shall cease when all such claims have been paid in full.

The compromise is fair and equitable under the law of the 9th Circuit.   The Debtor has little chance of successfully prosecuting claims, if any exist, against Noah Katz or his parents, Belinda Novik and Barry Katz did not receive any payments from the estate.   The Debtor's examination of transactions for avoidability shows that Belinda Novik and Barry Katz simply contributed cash and made loans to the Debtor, with only the last tranche being secured.   Noah Katz received salary and expense reimbursement in the year before the filing in the ordinary course.   Any potential claims against Noah Katz, based upon the loss of the Debtor's customer base, does not appear to support any kind of action. The cost of such an action, given the difficulties prosecuting and collecting from an individual, would greatly exceed any potential recovery.

The settlement allows the payment of all priority claims and a dividend to unsecured creditors and compares favorably to a Chapter 7 liquidation in which the secured creditors do not allow a Carve Out or contribute to pay priority tax claims and unsecured creditors receive nothing.

2.  <u>Global Compromise Contingent on Completion of Required Plan Payments, Tolling of Statutes of Limitations</u>. The Global Compromise described in the preceding paragraph is contingent upon Belinda Novik and Barry Katz making all payments they have agreed to make under this Plan, including the Carve Out, the Further Contribution, and payments to holders of allowed priority claims to complete payments under the Plan.   The statute of limitations on all actions subject to the Global Compromise shall, by agreement, be tolled as to Noah Katz, Belinda Novik and Barry Katz until the completion of all payments required under this plan.

3.  <u>Preservation of Claims in Litigation</u>.   The Debtor specifically retains the right to litigate its claims and causes of action against any person or entity and preserves such claims and rights for the benefit of the Chapter 7 bankruptcy estate in the event this case is converted to Chapter 7 or Barry and Belinda Katz as set forth in the preceding paragraph should all payments under this Plan be made.

4.  <u>Role and Payment of Subchapter V Trustee in Non-Consensual Plan</u>.   Whether the Plan is confirmed consensually or non-consensually, Chief Restructuring Officer Edward Webb shall act as the disbursing agent for payments hereunder. The Subchapter V trustee shall be entitled to payment for post-confirmation services rendered on the same terms as he is entitled for pre-confirmation services rendered.

5.  <u>Post-Effective Date Compensation</u>.   Neither Dr. Webb, BPM LLP, Binder & Malter, LLP, nor any other professional shall be required to seek approval for compensation for fees or expenses incurred after confirmation of this Plan.   All amounts paid shall be reported in Debtor's post-confirmation quarterly reports until this case has been closed.

6.  <u>Default In Plan Payments</u>. In the event of a default in plan payments, any creditor or the Subchapter V trustee may file a notice of default with the court.   The Debtor shall have 10 days to cure the default.   The Debtor may within that 10 days cure the default or set a hearing before the Court on 20 days' notice to (a) determine if there was a default, (b) determine

if Debtor has cured the default, (c) set a 10-day deadline for cure of any default determined under this paragraph; (d) modify the Plan if confirmation was obtained under 11 U.S.C. § 1191(b), or (e) authorize and direct the Subchapter V trustee in the event of an uncured default to take control of and liquidate and distribute any estate assets remaining.

7. <u>Abandonment</u>.   The Debtor may abandon assets of inconsequential value or that are burdensome after the Effective Date without order of the Court except the claims listed in Article 10, paragraph 3 of this plan.

8. <u>Preparation of Tax Returns and Retention of Right to Seek Prompt Determination</u>.   The Debtor may retain professionals after the Effective Date to prepare and file tax returns and reserves the right to submit motions for prompt determination of tax liability pursuant to 11 U.S.C. § 505.

9. <u>Compromise with Navitas</u>.   The objection of Navitas Credit Corp. [Dkt. #143] (the "Navitas Objection") is resolved pursuant to the following terms: (a) the Navitas proof of claim is allowed; (b) the Plan Funders, Belinda Novik and Barry Katz, will pay $21,500 to Navitas via wire transfer of immediately available funds on the earlier of (i) October 26, 2022 so long as the Effective Date has occurred, or (ii) the first business day immediately following the occurrence of the Effective Date; (c) the payment of Navitas by the Plan Funders shall not reduce any other amounts to be paid by the Plan Funders under this Plan; (d) the payment to Navitas will be made pursuant to instructions provided by Navitas; (d) the Navitas Objection is withdrawn; (f) Navitas supports confirmation of this Plan; (g) Navitas will retain its deficiency claim against the Debtor and may in its discretion send a form 1099C to the Debtor on account of such deficiency; and (h) the above treatment is in full satisfaction of the Navitas claim in this bankruptcy case, and Navitas will not pursue any co-obligor or guarantor of the Debtor, although it may in its discretion report the account of any obligator or guarantor as settled for less than full balance (or generally similar language) with any credit bureau.

Respectfully submitted,

                    **ARTESIAN FUTURE TECHNOLOGY, LLC**

      **X**  /s/ Edward Webb                     **Edward Webb**
                                      [Printed name]

      **Its: Chief Restructuring Officer**

      **X** **/s/ Robert G. Harris**               **Robert G. Harris #124678**
        [Signature of the Attorney for the Plan          [Printed name]
        Proponent]

# EXHIBIT A

| 2468 | | Chapter 7 | | Chapter 11 | |
|---|---|---|---|---|---|
| Notes | **ASSETS** | | | | |
| | | | | | |
| | *Real Property* | $ | - | $ | - |
| | | | | | |
| | *Personal Property* | | | | |
| | DIP Account | $ | 24,685 | $ | 24,685 |
| | Auction Proceeds (after payment of $3,808 security exp) | $ | - | $ | 136,192 |
| | Credit Card Refunds | $ | 50,000 | $ | 50,000 |
| [1] | 2018 Tesla Model X | $ | 2,700 | $ | - |
| [2] | IP, customer names, influencer lists | $ | - | $ | - |
| | *Sub-total* | $ | 77,385 | $ | 210,877 |
| | | | | | |
| [3] | *Plan Funder Contribution* | $ | - | $ | 351,935 |
| | | | | | |
| [4] | **Total Assets** | $ | **77,385** | $ | **562,812** |
| | | | | | |
| | **LIABILITIES** | | | | |
| | | | | | |
| | *Aministrative Expense Claims* | | | | |
| [5] | Chapter 11 | $ | 100,000 | $ | 100,000 |
| [6] | Chapter 7 (includes trustee and professional fees) | $ | 58,575 | $ | - |
| | *Sub-total* | $ | 158,575 | $ | 100,000 |
| | | | | | |
| | ***Sub-total avaliable after Administrative Expense Claims*** | $ | **(81,190)** | $ | **462,812** |
| | | | | | |
| | *Priority Claims* | | | | |
| [7] | 507(a)(4) | $ | (81,190) | $ | 112,405 |
| | 507(a)(7) | $ | - | $ | 14,406 |
| [8] | Priority Tax Claims | $ | - | $ | 286,001 |
| | *Sub-total* | $ | (81,190) | $ | 412,812 |
| | | | | | |
| [9] | ***Sub Total available after Prority Claims*** | $ | **-** | $ | **50,000** |
| | | | | | |
| [10] | General Unsecured Claims | $ | 8,605,765 | $ | 7,227,113 |
| | | | | | |
| | ***Estimated Percentage Distribution to GUCs*** | $ | **-** | | **0.69%** |

Notes to Liquidation Analysis

[1] Title to the Tesla is in the name of the Debtor and Noah Katz, the sole member of the Debtor. Proof of Claim #48 of secured creditor JP Morgan Chase reflects a secured loan of $52,500.74 and a market value of $82,975.00.  The Responsible Individual has recently discovered that two large down payments on the Tesla totaling $34,680.70 were made by Noah Katz and were not made by the Debtor, contrary to the Debtor's accounting records.  Monthly payments to JP Morgan Chase on the loan secured by the Tesla were also all made by Noah Katz, contrary to the Debtor's accounting records.   In a chapter 7 scenario it is assumed the trustee would sell the Tesla and following resolution of disputes with Noah Katz and the Estate retain approximately ~$2,700 or less  (representing the Debtor's equitable interest in the vehicle and in the net sale proceeds). In the chapter 11 scenario, title to the Tesla will ultimately pass to Noah Katz as part of the global compromise embodied in the Plan and in partial consideration for the plan contribution (the "Plan Contribution") being made by Belinda Novik and Barry Katz (together, the "Plan Funders").

[2] The Debtor included its intellectual property, customers list and influences lists among the assets marketed for sale via auction. The highest and best bid obtained for such assets was $5,000. Because the transactions costs exceeded the consideration offered, the Debtor determined not to proceed with a sale of these assets and has assigned zero value to them.  These assets will be abandoned.

[3] The Plan Contribution consists of the following components: (a) cash in the amount of $373,549 funded by the Plan Funders; (b) net sale proceeds of $136,192 after payment of security guard expense, that would otherwise be due and payable to the Plan Funders on account of their liens on personal property of the Debtor sold at auction; (c) withdrawal of the Plan Funders' unsecured claims totaling $843,056 and settlement of all other claims of the Plan Funders pursuant to the terms of the Plan, and (d) withdrawal of Noah Katz's unsecured claim of $535,598 and settlement of all other claims of Noah Katz pursuant to the terms of the Plan. The Plan Contribution shall be in an amount sufficient to cover allowed priority claims and a "pot" of $50,000 for general unsecured creditors. To the extent the priority tax claims are more or less than the amount estimated of $286,001, then the Plan Funders shall adjust the Plan Contribution accordingly. In the highly unlikely event the priority tax claims materially exceed the amount estimated in the Debtor's books and records, the Plan may require amendment or withdrawal. The total of the asserted priority tax claims will be known within approximately 180 days of the Petition Date.

[4] The total assets shown do not include retainers held by professionals in the amount of $214,245.60. The entirety of the retainers are anticipated to be exhausted and no retainer funds are anticipated to be available for payment to creditors.

[5] The chapter 11 administrative expense claims include post-petition rent to landlords, utilities to PG&E,  Debtor's professionals to the extent their fees are in excess of retainers, and the amount of $25,000 for the Subchapter V trustee.  In a chapter 7 scenario, it is anticipated that chapter 11 administrative expenses would not be paid in full.

[6] The chapter 7 administrative expense claims take into account both the trustee's statutory fee and the projected fees of trustee's counsel.

[7] In a chapter 7 scenario it is anticipated that no priority claims will receive any payment.

[8] The estimated priority tax claims are based on the Debtor's books and records and proofs of claim filed to date. The Debtor has confidence in this estimate, but it may differ from the actual claimed amount. In a chapter 11 scenario, the Plan Funders will pay the tax claims in full so long as the final allowed amount does not differ materially from the Debtor's estimate.

[9] The $50,000 being made available to general unsecured creditors is a fixed amount. This is a "pot" Plan.

[10] The total amount of projected unsecured non-priority claims is in a chapter 7 case is $8,605,765.34.  In chapter 11, the claims of the Plan Funders and Noah Katz are removed and the total is reduced to $7,227,113.  This results in a distribution of 0.6918% to general unsecured creditors, rounded to 0.69% in chapter 11.

# EXHIBIT B

**Exhibit "B"**
**Feasibility Analysis**

## Calculation of Projected Disposable Income

| Income | |
|---|---|
| Projected Unencumbered Cash on Hand at Effective Date | $95,471.59 |
| Carve Out ($140,000 sale proceeds less $3,808 security expense) | $136,192 |
| **A. Total Projected Cash at Effective Date** | $231,663.59 |

| Expenses | Amount |
|---|---|
| Non-Professional Administrative Expenses<br><br>    Lessor E.P. Madigan & Sons Inc. (Oakland) - $11,200<br>    PG&E (Oakland utilities) - $2,000 | $13,200 |
| Professional Administrative Expenses (Projected)<br><br>Mark Sharf - $25,000.00<br>Binder & Malter – TBD<br>Edward Webb/BPM - TBD | $25,000 |
| **B. Total Expenses** | $38,200 |

| **C. Projected Disposable Income** (Line A - Line B) | $193,463.59 |
|---|---|

| Plan Payments | |
|---|---|
| Priority § 507(a)(4) employee wage claims | $122,405.01 |
| Priority § 507(a)(5) employee benefit plan contribution claims | $      0.00 |
| Priority § 507(a)(7) consumer deposit claims | $ 14,405.58 |
| Priority § 507(a)(8) Tax Claims monthly payment | $   5,653.00 |
| Class 3 General Unsecured Claims' Carve Out | $ 50,000.00 |
| **D. Total Plan Payments** | $192,463.59 |

| **E. Plan Feasibility** (Line C - Line D)<br>Amount | $   1,000.00 |
|---|---|

**Effective Date Feasibility**

Can the Debtors Make the Effective Date Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | $231,496.35 | |
| Payments on Effective Date: | | |
| Non-Professional Administrative Expenses<br><br>     Lessor E.P. Madigan & Sons Inc. (Oakland) - $11,200<br>     PG&E (Oakland utilities) - $2,000 | | $  13,200 |
| Professional Administrative Expenses (Projected) | | $  25,000 |
| Non-Tax Priority Claims - §§ 507(a)(4), 507(a)(5), 507(a)(7) | | $136,810.59 |
| Tax Priority Claim (1st payment) §§ 507(a)(4), | | $   5,653.00 |
| Class 3 GUC payment | | $  50,000.00 |
| B. Total Payments on Effective Date | | $230,663.59 |
| **C. Net Cash on Effective Date** (Line A - Line B)<br>(Not feasible if less than zero) | $1,000.00 | |