Ryan C. Wood (State Bar No. 249048)
Law Offices of Ryan C. Wood, Inc.
611 Veterans Blvd. Ste. 218
Redwood City, CA 94063
Telephone: (650) 366-4858
Facsimile: (650) 366-4875
Ryan@WestCoastBK.com

Attorneys for Brian Quinlivan

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| In re: | ) | Bankruptcy Case No. 22-40396 CN-11 |
|---|---|---|
| Artesian Future Technology, LLC, et. al., | ) | Chapter 11 |
| Debtors. | ) | **OPPOSITION TO MOTION TO COMPROMISE CONTROVERSY; CONFIRMATION OF THIRD AMENDED CHAPTER 11 SUBCHAPTER V PLAN, DATED SEPTEMBER 27, 2022; AND SETTLEMENT AGREEMENT: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[No Hearing Scheduled]** |

Creditor, Brian Quinlivan ("Creditor"), by and through his attorney of record, Ryan C. Wood, respectfully opposes confirmation of the Third Amended Subchapter V Chapter 11 Plan, Dated September 27, 2022 ("Third Amended Plan") Docket No. 190, opposes the Motion to Compromise Controversy ("Compromise") Docket No. 121, and opposes the Settlement Agreement ("Settlement") Docket No. 167, Pages 3-7, filed by and for the benefit of (1) Artesian Future Technologies, LLC, et. al. ("Artesian" and "Debtor") and (2) third-party beneficiaries, non-filing individual humans, Noah Katz, Belinda Novik and Barry Katz (collectively the "Katz Family" and/or "Economic Unit" and/or "Actual Debtors" and/or "Quasi-Debtors"). Creditor respectfully requests confirmation of the Plan be denied and the Compromise and Settlement not granted. The Plan, Compromise, Settlement are forbidden by law, not fair, equitable or reasonable under the fact of this case and cannot be confirmed.

This Plan and Subchapter V Chapter 11 case seek to make the Bankruptcy Code, and the Ninth Circuits interpretation of the Code, obsolete and superfluous to the detriment of general unsecured creditors holding scheduled claims totaling $8,442,654.58, with no hope of improving during this Plan.

## I.

## **Memorandum of Points and Authorities**

Creditor in this case is seeks to be paid for his time and effort already earned according to the terms set by Debtor and Katz Family in Creditors executed employment contract. Nothing more.

Debtor and Katz Family seek to buy recently defined but still unvalued causes of action and claims against themselves to make sure the wronged parties, that actual have the right to prosecute such claims, are forced to give up those claims for a price set by the Katz Family, so the Katz Family can sit on such claims to ensure they never have to pay the full value of such claims to the wrong parties. Thereby permanently releasing/discharging the Katz Family from liability.

## II.

## **Summary of Case and Ninth Circuit Law**

No part of the proposed Plan or this Chapter 11 Subchapter V case are consistent with the Bankruptcy Code, but forbidden by law, not filed in good faith and therefore not confirmable. The entity Debtor/Artesian is a shell with no future disposable income, yet confirmation requires debtors to propose future income for the benefit of creditors. Equity requires equal treatment, yet Debtor/Artesian chose to cherry-pick which assets to liquidate for the benefit of creditors and which assets to sit upon, and not treat equally, and attempt to permanently release/enjoin/discharge for the personal benefit of the Katz Family. There is nothing fair, equitable or reasonable about this intentional unequal treatment for the personal benefit of the Katz Family. The remaining assets of the Debtor/Artesian, claims against Noah Katz and his parents, Belinda Novik and Barry Katz ("Katz Family Personal Claims") are not scheduled in the Debtor's petition, valued, or part of the Debtor's estate that can be sold or settled. Nevertheless, Debtor and Katz Family seek to sell, without a motion pursuant to Section 363, to themselves, claims against themselves, held by creditors of Artesian/Debtor, with an alleged value of $0.00, so the Katz Family can sit on these claims forever

and do nothing with the Katz Family Claims, giving themselves a complete "release" "enjoinment" "discharge" of the Katz Family Claims. Even worse, the Katz Family Claims <u>can be</u> in violation of the kind specified in Section 523(a) of the Bankruptcy Code. This is what is being proposed and no part of this precise statement of facts and proposition is fair, equitable, reasonable, or allowed under the Bankruptcy Code.

In the Ninth Circuit, all third-party releases of pre-petition liability of third parties are prohibited. Whether the actual bankruptcy filer, the debtor, receives a discharge, eligible for a discharge, discharge is revoked, objected to, or waived in writing, it is not relevant to the Ninth Circuit's holding that the Bankruptcy Code does not allow the release, enjoinment or discharge of pre-petition claims against third-party non-filing entities or individuals.

In the Ninth Circuit until Congress amends the Bankruptcy Code and creates additional exceptions, as it stands, Section 524(g) is the only statutory exception to third-party releases of liability in Chapter 11 Plans. The exception the Debtor and Katz Family proposed exception does not exist. The Ninth Circuit recognizes that only honest but unfortunate debtors may receive any type of "release" "enjoinment" or "discharge" of liability after full disclosure of income, expenses, assets and debts; and the debt or claim <u>cannot be</u> in violation of the kind specified in Section 523(a) of the Bankruptcy Code, as the Bankruptcy Code requires.

### III.

### In Contrast Fourth Circuit Law and Interpretation

In the Fourth Circuit, the circuit the Debtor and Katz Family specifically chose to avoid, and other circuits that allow for third-party releases in **consensual plans,** of the liability of a non-debtor third party, creates an additional dilemma when interpreting the Bankruptcy Code. A third-party release of liability, no matter what it is called, is precisely a discharge of debt/liability forever, just as a statutory discharge under the Bankruptcy Code for the actual debtor, who is forced to meet the rigorous requirements of the Bankruptcy Code to obtain a discharge. In the Fourth Circuit a third-party somehow can receive all the same benefits of a release/enjoinment/discharge without filing for bankruptcy protection. Can the third-party also commit fraud, embezzlement, breach of fiduciary

duty, willful and malicious injuries against creditors of the actual debtor barred by Section 523(a) of the Bankruptcy Code and still receive the third-party release/enjoinment/discharge of those claims? No, that is too far and inconsistent with allowing third-party releases/enjoinments/discharges. Accordingly, the Fourth Circuit, consistent with its improper allowance of third-party releases/enjoinments/discharges, held in both individual Chapter 11 cases and entity Chapter 11 cases Section 523(a) of the Bankruptcy Code must therefore apply. This is how incorrect interpretation of one section leads to the necessary incorrect interpretation of another section of the Bankruptcy Code. To be consistent, given the Fourth Circuit allows third-party releases/enjoinment/discharges, they also must extend the law that the release/enjoinment/discharge for the third-party cannot be obtained regarding any debt: "of the kind specified in section 523(a) of this title," as it should be. If not, then a third-party, not filing a petition for relief under the Bankruptcy Code, in the Fourth Circuit, could not only obtain a release/enjoinment/discharge of claims against them, but also be guilty of exceptions to release/enjoinment/discharge specified in Section 523(a) with no legal recourse. While the Bankruptcy Code has no express statutory provision allowing such third-party releases, other than Section 524(g), at least the third parties must also be subject to the limitations of such a release that exist for all debtors pursuant to Section 523(a). Yet this type of interpretation and implementation of the Bankruptcy Code is precisely what the SCOTUS opined in Law v. Siegel is not allowed pursuant to Section 105(a).

## IV.

## Third Party Releases Are Not Permitted By Law in the Ninth Circuit

In the Ninth Circuit, since at least 1949, held third-party releases of liability are not allowed. See Commercial Wholesalers v. Investors Commercial, 172 F.2d 800, at 801 (9th Cir. 1949) (decided under the Bankruptcy Act of 1898)): "The bankruptcy court has no power to relieve other parties than Commercial Wholesalers, Inc., of their debts or obligations." After the Commercial case many other cases followed and are consistent with the Bankruptcy Court's limited jurisdiction not reaching the rights or liabilities of non-debtor third parties.

Whether a debtor receives a discharge, is eligible for a discharge, has their discharge revoked, discharge successfully objected to under Sections 727, or waived is not relevant to the law in the Ninth Circuit not allowing a Bankruptcy Court to "release" or "enjoin" or "discharge" the liability of a third-party non-debtor from the reach of creditors permanently. If a debtor, that is not even receiving a discharge, also seeks at the same time to permanently release the liability of a non-debtor third party, is just more egregious and unlawful, and not fair, equitable or reasonable.

The Ninth Circuit Court of Appeals in In re American Hardwoods, Inc., 885 F.2d 621, 625-27 (9th Cir.1989) has held that bankruptcy courts lack jurisdiction and power to enjoin permanently, beyond confirmation of a plan, a creditor from enforcing a claim against a non-debtor guarantor.

> A recent amendment to the Bankruptcy Code buttresses our conclusion that § 524(e) does not permit bankruptcy courts to release claims against non-debtors. The Bankruptcy Reform Act of 1994 added § 524(g) to the Code. That section provides that in asbestos cases, if a series of limited conditions are met, an injunction issued in connection with a reorganization plan may preclude litigation against third parties. The numerous requirements of § 524(g) make it clear that this subsection constitutes a narrow rule specifically designed to apply in asbestos cases only, where there is a trust mechanism and the debtor can prove, among other things, that it is likely to be subject to future asbestos claims. See 11 U.S.C. § 524(g)(2)(B).
>
> That Congress provided explicit authority to bankruptcy courts to issue injunctions in favor of the third parties in an extremely limited class of cases reinforces the conclusion that § 524(e) denies such authority in other, non-asbestos, cases.

There is also the Lowenschuss case. In re Lowenschuss, 67 F.3d 1394, 1401 (9th Cir. 1995), in which the Ninth Circuit continues to strike down "sweeping nondebtor releases from creditors' claims on the debts discharged in the bankruptcy, not releases of participants in the plan development and approval process for actions taken during those processes." Blixseth, 961 F.3d at 1083-84. The Blixeth case is cited and discussed only to illustrate the narrow and allowable post-petition claim release for third-parties the Ninth Circuit allowed, "exculpation." The proposed Plan in this case and the Plan's broad and sweeping release, enjoinment, discharge of the Katz Family Claims is as far away from what is allowed in the Ninth Circuit as a debtor or plan can get. The authority not allowing the

release, enjoinment, or discharge in the Ninth Circuit is long and consistent. See Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.), 171 B.R. 71, 77 (Bankr. 9th Cir. 1994) (holding reorganization plans which proposed to **release** non-debtor guarantors violated § 524(e) and were therefore unconfirmable).

> "The first two plans proposed to **release** the non-debtor guarantors from obligations to creditors, and therefore violate § 524(e) and are not confirmable. *American Hardwoods,* 885 F.2d at 626; *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985); *In re Rohnert Park Auto Parts, Inc.,* 113 B.R. 610, 616 (9th Cir. BAP 1990); *In re Keller,* 157 B.R. 680, 686 (Bankr.E.D.Wash.1993)."

The Third Circuit declined to even decide the issue in In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000), ruling that a plan release provision did not pass muster under even the most flexible tests for the validity of nondebtor releases.

The Ninth Circuit Court of Appeals recently, in Blixeth, as part of a **consensual** plan, did allow for a narrow "exculpation" clause covering an extremely limited time period, the formulation of the plan, for third parties to have liability released only as to actions as part of the plan formulation. No part of the Blixeth holding allows a Bankruptcy Court to change, modify, enjoin, discharge or release the claims of third parties that arose pre-petition.

The Ninth Circuit Court of Appeals always had and has it right, was and is ahead of its time in discussing the limited scope and addressing the slippery slope of equitable powers pursuant to Section 105(a) of the Code. The Ninth Circuit Court of Appeals highlighted that express statutory language of the Code cannot be contravened by power granted pursuant to Section 105(a); as necessary and appropriate. It has never been and never was necessary or appropriate for any Bankruptcy Court to change the Bankruptcy Code as written by Congress. The Supreme Court of the United States, in an unanimous decision, Law v. Siegel, 571 U.S. 415, 421 (2014), again reiterated the limitations of Section 105(a). It is questionable, in light of Law v. Siegel, what legal or statutory basis the majority of circuits may continue to rely upon to justify non-debtor third-party releases/enjoinments/discharges, pursuant to Section 105(a) as necessary and appropriate? Here in the Ninth Circuit that quandary

luckily does not exist as third-party releases always have been and are prohibited under the express statutory authority of the Bankruptcy Code.

Accordingly, the Plan is forbidden by law due to the proposed impermissible broad release of liability for non-debtor third parties, the Katz Family. The proposed Plan seeks to permanently release/enjoin/discharge the Katz Family from "Any and All Claims" now defined as:

> "claims of the Debtor and its estate (i) against any officers, directors, managers, members or shareholders of the Debtor, including claims that might otherwise be brough derivatively by interest holders or creditors on the Debtor's behalf, such as claims in the nature of breach of fiduciary duty, negligence, gross negligence, unlawful distribution, fraud, malfeasance, misrepresentation and willful misconduct, (ii) alter ego claims to the fullest extent such claims belong to the Debtor under applicable non-bankruptcy law, and (iii) all claims of the Debtor's estate under Chapter 5 of the Bankruptcy Code."

Even if all parties agreed and no opposition ever filed, this Plan is forbidden by law, in violation of Sections 524 and 1129(a), therefore not confirmable under any circumstance.

## V.

### Even If The Plan Is Permissible Debtor Has No Right To Settle or Pursue "Any and All Claims"

This Court has no "claim" before it to consider, evaluate, pursue, compromise, or settle. There are only two ways for a debtor to gain control over a pre-bankruptcy legal claim and pursue the claim or settle the claim while in bankruptcy. One way is to schedule an exempt the legal claim. In order to claim an exemption, the debtor must first list the legal claim as an item of personal property of the debtor in Schedules A/B and give the claim an estimated or "unknown" value. On Schedule C the debtor must designate an available exemption for the legal claim. If the exemption claim is properly asserted and no one objects, the exemption is allowed, and the debtor has standing to pursue the claim as its legal owner. See 11 U.S.C. § 522(l). Cusano v. Klein, 264 F.3d 936 (9th Cir. 2001); In re Adair., 253 B.R. 85 (B.A.P. 9th Cir. 2000). Normally when scheduling a claim the claim will include a description of the cause of action in the listing of the debtor's personal property in schedules A/B, "Claims against third parties", whether or not the debtor has filed a lawsuit or made a demand for payment, or include the claims in Line 34 of Schedule A/B, "Other contingent and unliquidated claims

of every nature including counterclaims of the debtor and rights to set off claims"), an appropriate exemption claimed in Schedule C. See 11 U.S.C. § 554(d); Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 465 (6th Cir. 2013).

The second way is the cause of action or claim is listed on the debtor's schedules may be "abandoned" the trustee. Abandonment can happen only two ways: (1) if, on request by the trustee or a party-in-interest and after notice and hearing, the court finds that the property is "burdensome" or of "inconsequential value and benefit to the estate," or (2) automatically when the bankruptcy case is closed.

No claim exists to consider, evaluate, pursue, compromise, or settle given "Any and All Claims" is not scheduled, nor any request for a claim to be abandoned has been made. Accordingly, this Court has no jurisdiction over "Any and All Claims" and the Plan must be denied. The Compromise and Settlement of unscheduled claims cannot be granted.

## VI.

### Regardless of Law The Liquidation Analysis Is Stil Deficient

Regardless of whether the Plan is forbidden by law the liquidation analysis is still fatally deficient. The Debtor/Artesian and Katz Family have determined $50,000.00 is all we will give general unsecured creditors regardless of what any party evaluates; this Court included. If you do not like it, Katz Family threatens to make the ice cube magically melt immediately and the $50,000.00 will disappear. Perfect. Please convert to Chapter 7 and allow an impartial third-party fiduciary not being paid in advance for a desired outcome to evaluate the Debtor/Artesian assets so actual transparency can be achieved. There will truly be a liquidation for the benefit of all estate creditors; not just the Katz Family buying claims against themselves to never prosecute and so the creditors with the right to pursue such claims NEVER receive the full value of such claims. There is nothing fair, equitable or reasonable about limiting an estate claim rather than maximizing the estate claims for the benefit of all creditors.

Nothing more is necessary than the information not provided by the Debtor and Katz Family to know something here is very wrong:

No amount was or is ever provided under penalty of perjury totaling the amount of the claims against the Katz Family. Not even an estimate. Yet somehow the expenses of pursuing the Katz Family Claims are so high, the expense of pursuit outweighs the return of the pursuit. Even knowing the Katz Family has no problem and had no problem spending over $1 million to prop up the insolvent Debtor and now pay hundreds of thousands to try and clean up the mess.

How can an argument be made that the Katz Family Claims are $0.00, but the expense to pursue the claims worth $0.00 will exceed $150,000.00 plus? The Katz Family is paying over $200,000.00 in administrative expenses to buy and sit on claims worth $0.00? No, this argument is clearly disingenuous and hypocritical. What is the value of "Any and All Claims?" This is not a negotiation in which misstatements, alleging "Any and All Claims" are worth $0.00, are allowed to deceive the other party in accepting less that what can or must be paid. For a hypothetical liquidation to be evaluated all parts of the equation must have a number. As previously provided Debtor/Artesian is specifically choosing to hide the ball from this Court and not value, or even schedule the claims of their fellow creditors being released/enjoined/discharged by operation of the proposed Plan. Accordingly, the liquidation analysis is still impossible to complete and nonsensical and only benefits the Katz Family and not the estate.

What is true is the proposed Plan, Section "A" Liquidation Analysis, fails to include a value for "Any and All Claims" to be evaluated. This entire bankruptcy case filing and proposed Plan are centered upon not scheduled nor valued claims against third parties, the Katz Family.

There is no admissible evidence as to the value or nature of the alleged claims to settled/release/enjoin/discharge against the Katz Family. There are however over $7.0 million (See Claims Register as of 10/6/2022) in general unsecured claims with no dollar amount in a hypothetical chapter 7 liquidation to compare or contrast. After deducting the subordinated Katz claims the total general unsecured pool is about $7,227,113.00. A liquidation analysis requires dollar amounts to be compared and contrasted so a determination as to proposed distributions to general unsecured creditors can be evaluated. All that is known is $50,000.00 is being paid to general unsecured creditors, an entirely arbitrary amount, and a distribution of 0.005% of general unsecured claims, with no estimate or information regarding the likely payout in a hypothetical Chapter 7 liquidation.

Debtor's proposed Plan liquidation analysis provides for percentage of 0.6918% and Debtor/Katz Family should actually pay that number to creditors or $4,999,716.70 to general unsecured creditor to FORCE creditors to give up their valuable claims against Artesian and the Katz Family. For every creditor to be FORCED to give up their legal rights against the Katz Family, $4.9 million to be shared by general unsecured creditors is fair, equitable and reasonable. It appears to be a scriber's error that requires amendment.

Section 547(b)(5) is not the only provision in the Bankruptcy Code that mandates a comparison to distributions in a hypothetical chapter 7 liquidation. Pursuant to section 1129(a)(7)(a)(ii) provides each impaired class: (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date. See Affiliated Foods, 249 B.R. at 788 (the section 1129(a)(7) best interests test requires an estimation of the value of all of the estate's assets, including hard-to-determine asset values like disputed and contingent claims, the potential disallowance of claims, the probability of success and the value of causes of action held by the estate, and potential preference actions); In re Larson, 245 B.R. 609, 614 (Bankr. D. Minn. 2000) (in the hypothetical liquidation analysis under section 1129(a)(7), the court "must look not only at the Debtor's assets as listed on his schedules, but must also consider the recovery of assets by the trustee through fraudulent transfer and preference actions"); Sierra-Cal, 210 B.R. at 174 (the hypothetical liquidation analysis should include potential avoidance recoveries under sections 544 and 549); Mason & Dixon Lines, Inc. v. St. Johnsbury Trucking Co. (In re Mason & Dixon Lines, Inc.), 65 B.R. 973, 976 (Bankr. M.D.N.C. 1986) (the section 547(b)(5) analysis should consider the creditor-transferee's setoff rights); see also Collier on Bankruptcy ¶ 1129.02 [7][b][iv][C] (16th ed. 2017) (noting that "a trustee's avoiding powers in a hypothetical chapter 7 case may also affect the analysis" under section 1129(a)(7)).

The liquidation analysis in this case is even more deficient than failing to provide the amount of the Katz Claims. That is just one part of the hypothetical liquidation analysis. A hypothetical chapter 7 liquidation analysis remains impossible given there are no estimates or even a line item for

-10-

preferential transfers or fraudulent transfers by the Debtor to any party. The Responsible individual, Edward Webb, did not complete a four-year look back regarding the Debtor's preferential and more importantly fraudulent transfers to third-parties; specifically the Katz Family. Mr. Webb only completed one-year look back. See Declaration of Edward Webb, Docket No. X, Page X, Lines X – X. In a hypothetical chapter 7 liquidation every Chapter 7 Trustee will look at and evaluate claims pursuant to California's Uniform Fraudulent Transfers Act with a four-year look back. For this liquidation analysis to have any type of legitimacy a four-year look back regarding the transactions of the Debtor must take place and an item in Schedule "A" of the proposed Plan include an estimated amount of the transfers.

This is not new and Debtor/Artesian and Katz Family are manipulating the Bankruptcy Code. See <u>In re AOV Indus.</u>, 792 F.2d 1140 (D.C. Cir. 1986) (a plan provision releasing liabilities of nondebtors was <u>unfair</u> because the plan did not provide additional compensation to a creditor whose claim against the nondebtor was being released; adequate consideration must be provided to a creditor **<u>forced</u>** to release claims against nondebtors).

Accordingly, Debtor/Artesian and Katz Family and intentionally not being transparent regarding the nature and value of the Katz Family Claims. A transparent, fair, equitable and reasonable analysis liquidation analysis is purposely not possible so that general unsecured creditors are forced to take $50,000.00 or 0.005% of their claims.

VII.

**<u>Clear Impermissible Manipulation of the Bankruptcy Code as This Case is Not a Reorganization or Liquidation</u>**

This Chapter 11 Subchapter V case is an impermissible hybrid. It is not a reorganization or liquidation. As it stands the Debtor/Artesian at the direction of the Katz Family is trying to take parts their like and ignore the parts that are not favorable to them.

A. **This Case Is Not A Liquidation**

Even if the Debtor's proposed Plan was not forbidden by law it manipulates the Bankruptcy Code and is not filed in good faith. The Debtor is purposely not liquidating substantially all of the

assets of the Debtor to ensure the true value and liability of the Katz Family Claims are never known. If this were a true liquidation no creditor could object. All assets of the Debtor/Artesian will be properly valued by the "market" upon liquidation and all creditors would share equally in the estate assets. Debtor and the Katz Family alleged credit Mr. Quinlivan must put his money where his mouth is regarding the Katz Family Claims or estate. This is again disingenuous and not accurate as creditor Mr. Quinlivan has proposed the liquidation/sale of the Katz Family claims on the open market, just like the other assets of the Debtor. Mr. Quinlivan would have chance to bid or purchase the Katz Family claims from the estate in addition to all other humans on Earth. Such as the ten promoters of Artesian that fairly won giveaways but were denied and/or defamed over Twitch by Noah Katz that led to this debacle. Or a business that goes around and purchases claims just like the Katz Family claims, does not sit on the claims, but seeks to maximize the value of the claims.

But no party will sign a declaration in support of the Debtor's schedules to include the claims against any of the three Katz Family defendants. Debtor will however choose which claims to liquidate or not to the detriment of all creditors and the estate. This case and proposed Plan are not filed in good faith and cannot be confirmed.

### B. This is Not a Reorganization Case Either

Despite the analogy used by this Court, the ever-expanding universe of feasibility, the universe does not expand for the benefit of general unsecured creditors over the course of this proposed five-year Plan as it is required in reorganization plans. No disposable income can even be evaluated to consider confirmation of the proposed Plan. Section 1191(c)(2) requires, which cannot factually be met:

> (c)Rule of Construction.—For purposes of this section, the condition that a **plan be fair and equitable** with respect to each class of claims or interests includes the following requirements:
>
> (2) As of the effective date of the plan—
>
> > (A)the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the

date that the first payment is due under the plan will be applied to make payments under the plan; or

(B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

Section 1191(d) provides:

(d) <u>Disposable Income.</u>—For purposes of this section, the term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended—
(1) for—
(A) the maintenance or support of the debtor or a dependent of the debtor; or
(B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or
(2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

Debtor/Artesian is using the Katz Family income, and solely the Katz Family income, as a means for feasibility. See Exhibit "B" of the Plan. This is again choose to cherry pick and not consistent. Part of the Plan is based upon the facts and circumstances of the actual Debtor, Artesian, and some of the proposed Plan feasibility is based upon the circumstances of the Katz Family. It is the Katz Family's monthly disposable income and assets that must be evaluated regarding Sections 1191(c)(2) and 1191(d), as the actual Debtor has none and purposely will have none in the future. A third-party may contribute to the feasibility of a plan, but it is still the underling debtor's future monthly disposable income that is on the hook for the life of the plan. Debtor/Artesian again want their cake and eat it too regarding this issue. We will use the Katz Family payments to satisfy feasibility while no entity or human's future monthly disposable income can be evaluated or benefited from in the future by general unsecured creditors. The Plan provides for $50,000.00, this number cannot be evaluated as "future disposable income" as it is arbitrary and the universe cannot expand as is required for confirmation pursuant to Section 1192(c)(2).

The Debtor/Artesian and Katz Family cannot us their "Economic Unit" status for their benefit and not also for the benefit of creditors. The proposed Plan potentially could be confirmable is the Katz Family's monthly disposable income is disclosed along with and the Katz Family future monthly

-15-

Case: 22-40396    Doc# 199    Filed: 10/07/22    Entered: 10/07/22 17:07:51    Page 13 of 14

disposable income is truthfully disclosed and factored into the "every expanding universe." Without truly evaluating the Katz Family individual monthly disposable income and assets as the "Economic Unit" they are presenting this Court, no confirmable plan is legally possible as fair, equitable or reasonable. The arbitrary $50,000.00 for general unsecured creditors will have no transparency or be based upon the requirements for confirmation the Bankruptcy Code requires.

## VIII.

## CONCLUSION

The proposed Plan is therefore not confirmable and does not meet the requirements of confirmation pursuant to Sections 1129(a), 1191(b) and 1191(c)(2).

Dated: October 7, 2022                  LAW OFFICES OF RYAN C. WOOD, INC.

                                                       /s/Ryan Wood
                                                       Attorney for Creditor Brian Quinlivan