**Entered on Docket
December 05, 2022**
**EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**



The following constitutes the order of the Court.
Signed: December 5, 2022

_____

**Charles Novack
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 22-40396 CN<br>Chapter 11 |
| ARTESIAN FUTURE TECHNOLOGY, LLC, | |
| Debtor. | **ORDER RE: APPROVAL OF COMPROMISE AND CONFIRMATION OF THIRD AMENDED PLAN OF REORGANIZATION** |

On September 23, 2022, this court conducted a confirmation hearing on the second amended plan of reorganization filed by debtor Artesian Future Technology, LLC ("Artesian") and its motion to compromise claims with Noah Katz, Belinda Novik, and Barry Katz (the "Compromise Motion"). All appearances were noted on the record. Artesian has proposed a liquidating plan of reorganization that will be primarily funded by the (almost completed) sale of its computer hardware inventory and substantial cash contributions from Belinda Novik and Barry Katz, the parents of Noah Katz, who is Artesian's sole LLC member.[1] Katz/Novik have also agreed to waive their security interest in the cash proceeds of the inventory and forego (along with Noah Katz) their substantial unsecured claims in this Chapter 11. Artesian estimates that Katz/Novik are contributing

---

[1] The court will refer to Belinda Novik and Barry Katz as "Katz/Novik." When necessary, the court will refer to Belinda Novik, Barry Katz and Noah Katz as the "Katz Family Members."

approximately $600,000 to the plan, and it asserts that these funds will help satisfy the bankruptcy estate's administrative expenses and priority wage and tax claims and provide a small (very small) dividend to general unsecured creditors. Their largess, however, has a price: in exchange for the above consideration, Artesian has agreed (subject to this court's approval) to assign any litigation claims it may have against Katz/Novik, Noah Katz and all other entities (*i.e.*, the entire litigation cupboard) to Katz/Novik (the "Katz/Novik Deal").

The general unsecured creditor class is the sole class that rejected the plan, and Brian Quinlivan, Artesian's largest unsecured creditor (whose "no" vote determined the outcome of that class's vote), objected to plan confirmation on several grounds. He contends that the second amended plan 1) was not filed in good faith; 2) is forbidden under Ninth Circuit case law because it provides a third-party release of pre-petition liability; 3) does not satisfy the best interest of creditor's test because the bankruptcy estate may have undervalued its litigation claims (and that he is entitled to conduct discovery regarding the merits of any such litigation claims); and 4) does not provide a deadline for filing non-dischargeability adversary proceedings. Quinlivan similarly objects to the Compromise Motion. He contends that Artesian has not identified what litigation claims it holds against the Katz Family Members and that if it had carefully examined its records, it would realize that these claims may have substantial value.

Artesian has since filed a third amended plan of reorganization (the "Plan") and a revised Settlement Agreement Between Artesian Future Technology LLC and Belinda Novik and Barry Katz (the "revised Katz/Novik Deal") to address several concerns raised by this court during the September 23rd hearing, and the parties have filed supplemental briefs regarding the merits of the Compromise Motion and Quinlivan's request to conduct discovery. This court, having read the Plan, the Compromise, and supplemental briefs, rules as follows.

Artesian filed its Chapter 11 bankruptcy on April 22, 2022. When it filed this SubChapter V case, Noah Katz had already ceded control of the company's day-to-day

operations to an independent chief restructuring officer, whose task was to fully wind down the company, liquidate its assets (primarily computer hardware), and lead Artesian through its bankruptcy.[2] Katz/Novik provided substantial secured and unsecured funding to Artesian during both its operational and wind-down phases. Katz/Novik are listed as holding a $723,442.87 general unsecured claim on Artesian's Bankruptcy Schedule E/F, and they have filed a $398,425 secured proof of claim. Their collateral included Artesian's computer and parts inventory, which Artesian sold for $140,000 through a § 363(f) bankruptcy auction free and clear of their lien (the "Sales Proceeds").[3] Their lien, however, attached to the Sales Proceeds.

Katz/Novik have funded Artesian's bankruptcy. Their pre-petition secured loan provided the substantial retainers for Artesian's bankruptcy counsel and its chief restructuring officer[4] and – if this court approves the revised Katz/Novik Deal and confirms the Plan – the proceeds of their collateral and their contribution of hundreds of thousands of dollars in fresh funds will largely fund the Plan.[5]

The Plan is straightforward. There are three secured classes, two of which are unimpaired.[6] The impaired secured class represents the Katz/Novik lien against the Sales Proceeds, which are subject to a "Carve Out" that will (in this court's estimation) consume all of the Sales Proceeds. Katz/Novik unsurprisingly voted in favor of confirmation. The

---

[2] Artesian manufactured high-end computers and related hardware for gaming and cryptocurrency mining. In March 2022, a small streamer alleged that Noah Katz, during a live-streamed event, refused to award her a sweepstake prize in a drawing. The streamer's accusations were retweeted thousands of times which catastrophically affected Artesian's business. Artesian soon thereafter terminated its operations.

[3] Katz/Novik consented to the free and clear sale under Bankruptcy Code § 363(f).

[4] The court approved their employment over the objections of the United States Trustee.

[5] The Plan also states that Artesian intends to recover a credit balance on one its credit cards and obtain a refund from Bank of America of funds that it used, pre-petition, to pay creditors. These recoveries pale in comparison to the funds that Katz/Novik will contribute to the Plan.

[6] Novitas Credit Corporation's secured claim is one of the unimpaired classes, and Katz/Novik are paying a significant portion of its claim.

- 3 -

priority wage/employee benefit/consumer deposit claims (which total $151,199.09) are unimpaired and will be fully satisfied on the Effective Date, and the priority tax claims (which presently total $262,616.23) will be paid in full over a period that will not extend past the fifth anniversary of the petition date (consistent with Bankruptcy Code § 1129(a)(9)(C)).[7] Katz/Novik's funds will also ensure that all allowed administrative expenses are paid (including those of Artesian's bankruptcy professionals that exceed their retainers). Finally, Katz/Novik have agreed to contribute $50,000 on the Effective Date to the general, unsecured creditor class, which, given the class's size (approximately $7.2 million dollars), will generate a miniscule 0.69% dividend.[8] Artesian is also waiving its right to a bankruptcy discharge.

The revised Katz/Novik Deal is the heart of the Plan, and its terms are extensively set forth in the Plan and the Compromise Motion. Broadly stated:

1. Katz/Novik will allow Artesian to use the Sales Proceeds to fund the Plan, pay $50,000 on the Effective Date which will be shared pro-rata by the general unsecured creditor class, contribute sufficient funds to ensure that the priority wage/employee benefits and consumer deposit creditors are paid in full on the Effective Date, contribute sufficient funds to ensure that allowed administrative expenses are paid in full, and contribute sufficient funds to ensure that the priority tax claimants are timely and fully paid under Bankruptcy Code § 1129(a)(9)(C). The Katz Family Members are also waiving their general unsecured claims. Artesian estimates that Katz/Novik may ultimately contribute approximately $600,000 to the Plan.

2. Upon completion of the payments described in paragraph 1, Artesian and the bankruptcy estate will transfer and assign to Katz/Novik all claims that they hold

---

[7] The court calculated this number by examining the proof of claims filed by several taxing authorities. Artesian believes that it may need to amend its tax returns, which may increase its tax liability.

[8] This class does not presently include the Katz Family Members' unsecured claims, which they will waive if the Plan is confirmed.

- 4 -

against the Katz Family Members and all other parties, including but not limited to claims which creditors may assert derivatively against such parties on behalf of the Debtor. The Plan and the Compromise Motion expressly state that Artesian and the bankruptcy estate are not assigning or transferring any claims or causes of action that third parties (such as Quinlivan) may hold against these parties.[9]

Artesian's bankruptcy schedules do not list any claims or causes of action against the Katz Family Members, and the few potential claims listed on Schedule A/B against other parties (including, with some irony, Quinlivan) are listed as having "unknown" value. While the Statement of Financial Affairs lists some pre-petition payments to Noah Katz and other parties, the declarations in support of the Compromise Motion state that they are not avoidable. Moreover, the Compromise Motion and supporting declarations collectively and expressly state that Artesian has not repaid any of the loans made by Katz/Novik, and that Katz/Novik have never held an equity interest in Artesian nor served as an officer or employee of the company. The Compromise Motion is not as conclusive *vis à vis* Noah Katz. The Compromise Motion states that as the sole member of a single member LLC, Noah Katz elected to treat Artesian and himself as a single taxable entity and as a result some portion of Artesian's pre-petition income and expense payments flowed through his personal financial accounts. The Debtor's chief restructuring officer ("Webb") reviewed Noah Katz's personal records and Artesian's accounts, however, and concluded that Noah Katz ultimately transferred the Artesian income (whether received by him via PayPal or cryptocurrency transactions) into Artesian's own business accounts. Furthermore, Webb concludes that litigation against Noah Katz would be speculative, expensive and – given Noah Katz' unrebutted statement that he is insolvent – unrewarding. The Compromise Motion emits the distinct vibe that the Katz/Novik Deal is a parental

---

[9] Paragraph 4 of the revised Novik/Katz Deal states, "[n]otwithstanding any provision to the contrary in this Agreement or the Plan, there is no release under this Agreement or the Plain of claims of any non-Debtor against the Plan Funders or Noah Katz."

Case: 22-40396   Doc# 213   Filed: 12/05/22   Entered: 12/05/22 15:06:35   Page 5 of 17

bailout and not an end run around any investigation into Artesian's business affairs with the Katz Family Members, and that the assignment of claims represents not only consideration for the funds but, perhaps more importantly, prophylactic protection in an uncertain, litigation driven world.

Quinlivan strongly objects to the Compromise Motion and the Plan. He asserts, as Artesian's former chief marketing officer, that the Katz Family Members have syphoned off substantial funds from Artesian and that he is entitled to discovery under Federal Rule of Bankruptcy Procedure 9014(c) to demonstrate that Artesian has undervalued its claims against them. He contends, with some logic, that is it difficult to evaluate the Compromise Motion when Artesian's bankruptcy schedules do not list any claim against the Katz Family Members. He also contends that a) Artesian filed the Plan in bad faith, b) the Plan and Compromise Motion are granting the Katz Family Members third-party releases, and c) the Plan does not set a deadline for creditors to file non-dischargeability litigation against Artesian.

Artesian responded to Quinlivan's objection to the Compromise Motion and Plan with equal fervor. Artesian asserts, among other things, that 1) Quinlivan's counsel asked for information regarding Artesian and Noah Katz's financial records and that it has provided information which refute his allegations that the Katz Family Members improperly received funds from Artesian; 2) Quinlivan is not entitled to discovery given the information that had been already provided and his failure to conduct a 2004 examination; and 3) the Katz/Novik Deal is fair and equitable. Artesian requests that this court deny Quinlivan's request for discovery, approve the Compromise Motion and confirm the Plan. Artesian has also filed evidentiary objections against Quinlivan's pleadings and objects to some of Quinlivan's requests for judicial notice.

**The Compromise Motion**

Plan confirmation is premised upon the approval of the Compromise Motion. Accordingly, the court will examine the Compromise Motion first, both as a compromise

of controversy under Rule 9019 and as an asset sale under Bankruptcy Code § 363(b).  *See Adeli v. Barclay (In re Berkeley Delaware Court, LLC)*, 834 F.3d 1036 (9th Cir. 2016).

Federal Rule of Bankruptcy Procedure 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." This court has significant latitude in approving compromise agreements. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  The factors that this court must consider are found in the "*A & C Properties*" test, which requires this court to determine the fairness, reasonableness and adequacy of a proposed settlement agreement by examining "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending to it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). "Each factor need not be treated in a vacuum; rather the factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Grief & Co. v. Shaprio (In re W Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017).

Furthermore, "[w]hen assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues.  A mini trial on the merits is not required." *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. BAP 1997) (citations omitted).  "If the court were required to do more than canvass the issue, there would be no point in compromising; the parties might as well go ahead and try the case." *Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008).  Before it reaches these elements, the court will first address Quinlivan's objections.

Quinlivan vociferously contends that the amended Katz/Novik Deal is granting third party releases for the Katz Family Members that are prohibited under Bankruptcy Code § 524(e) and Ninth Circuit case law.  The court disagrees.  Section 524(e) provides that the "discharge of a debt of a debtor does not affect the liability of any other entity on, or the

Case: 22-40396   Doc# 213   Filed: 12/05/22   Entered: 12/05/22 15:06:35   Page 7 of 17

property of any other entity for, such debt." 11 U.S.C. § 523(e).   In *Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995), the Ninth Circuit expressly rejected the argument that "the general equitable powers bestowed upon the bankruptcy court by 11 U.S.C. § 105(a) permit the bankruptcy court to discharge the liabilities of non-debtors". *In re Lowenschuss*, 67 F.3d at 1402; *see also In re Lighthouse Lodge, LLC*, 2010 Bankr. LEXIS 3663, at *28–*29 (Bankr. N.D. Cal. 2010) (bankruptcy courts "do not have the equitable power under § 105(a) to discharge the liabilities of non-debtors through chapter 11 plan confirmations, contrary to the provision of § 524(e)").  The Ninth Circuit more recently reiterated the limits of the discharge in *Blixseth v. Credit Suisse (In re Blixseth)*, 961 F.3d 1074 (9th Cir. 2020).

> That § 524(e) confines the debt that may be discharged to the 'debt of the debtor'—and not the obligations of third parties for that debt—conforms to the basic fact that "a discharge in bankruptcy does no extinguish the debt itself but merely releases the debtor from personal liability . . . . The debt still exists, however, and can be collected from any other entity that may be liable" . . . . A bankruptcy discharge thus protects the debtor from efforts to collect the debtor's discharged debt indirectly and outside of the bankruptcy proceedings; it does not, however, absolve a non-debtor's liabilities from that same "such" debt.

*In re Blixseth*, 961 F.3d at 1082–83 (quoting *Landsing Diversified Props. Il v. First Nat'l Bank & Tr. Co. of Tulsa (In re W. Real Estate Fund)*, 922 F.2d 592, 600 (10th Cir. 1990)).

Quinlivan's reliance on § 524(e) is misplaced.  No entity is receiving a discharge in this Chapter 11 because the Debtor is expressly waiving its discharge under § 1192.  Further, the claims that the Katz/Novik Deal is compromising and/or transferring are limited to claims owned by the bankruptcy estate. *In re WCI Cable, Inc.*, 282 B.R. 457, 468–69 (Bankr. Ore. 2002); *In re Lighthouse Lodge, LLC*, 2010 Bankr. LEXIS 3663, at *28–*29 (Bankr. N.D. Cal. 2010); *see also CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 384 (9th Cir. BAP 1997) ("Once the bankruptcy petition is filed property rights which belong to the debtor become assets of the estate.  Thus, a right of action which is property

- 8 -

1   of the debtor becomes property of the estate."). If a litigation claim is not property of the

2   Artesian bankruptcy estate, then a third party like Quinlivan may assert it.[10]

3          Quinlivan also contends that this court should allow him to conduct discovery

4   before it determines whether the Katz/Novik Deal satisfies *A & C Properties*. He refers

5   this court to Federal Rule of Bankruptcy Procedure 9014(c) and argues that his objections

6   to the Compromise Motion create a contested matter and that he is entitled to conduct

7   discovery. While the Compromise Motion is a contested matter, its status as such does not

8   automatically entitle him to discovery. The federal rules of discovery apply in contested

9   matters "unless the court directs otherwise . . . ." Fed. R. Bankr. P. 9014(c). Discovery is

10  not appropriate or necessary here. The court understands Quinlivan's argument – how can

11  a court determine the reasonableness of a compromise if it does not know exactly what

12  litigation claims are at issue? If the Compromise Motion was based solely on the paucity

13  of claims disclosed on Artesian's bankruptcy schedules and Statement of Financial Affairs,

14  Quinlivan's argument would have some weight. The Compromise Motion pleadings

15  demonstrate, however, that the parties have a good idea what claims – real or imagined –

16  may exist against the Katz Family Members. Quinlivan asserts that Noah Katz failed to

17  report Artesian income that flowed into his personal accounts, and that he retained and/or

18  used corporate funds to buy cars, gifts and make unauthorized loans. He further contends

19  that Katz/Novik received some of this largess. While the exact amounts may be uncertain,

20  the scope of Quinlivan's accusations are not. Noah Katz asserts that notwithstanding the

21  merits of any of the claims against him (the litigation of which Webb asserts will not be

22  easy sledding), he is insolvent. Moreover, Katz/Novik and Webb assert that Artesian has

23  not repaid any of the Katz/Novik loans. Quinlivan's arguments and evidence offered in

24  support of his objections demonstrate that as Artesian's former chief marketing officer he

25  was aware of Artesian's sources of income and the platforms it used to generate business.

26

27

28         [10] The parties have informed the court that Quinlivan has filed a Los Angeles County
    Superior Court action Katz/Novik.

- 9 -

1 The court therefore has sufficient information to determine the reasonableness of the
2 Katz/Novik Deal.

3        To the extent that the Compromise Motion represents a compromise of claims
4 against the Katz Family Members, it satisfies the *A & C Properties* test. Any potential
5 litigation against Katz/Novik is problematic at best, since neither Artesian nor Katz/Novik
6 believe that any real claims exist. Given this, any attempt to mount a campaign to identify
7 such claims will be expensive and time consuming. While Katz/Novik appear to be
8 financially well endowed, this factor is of little significance if no claims exist against them.
9 As to Noah Katz, Webb has stated, without contradiction, that litigation against him will
10 involve a lengthy and expensive forensic accounting, making it difficult to assess the merits
11 of these claims and provide a litigation timeline. In addition, Noah Katz informs this court
12 that he is virtually insolvent. Finally, the Compromise Motion is in the best interest of the
13 creditor body. The Katz/Novik funds will fully and promptly satisfy the administrative
14 expenses and priority wage and consumer refund claims in this Chapter 11, timely satisfy
15 the priority tax claims, and provide a minimal return to the general unsecured creditors
16 class on the Effective Date (which return is nominally improved by the Katz Family
17 Members' withdrawal of their unsecured claims). No other general unsecured creditor has
18 objected to the Katz/Novik Deal or offered to finance the litigation.

19        This court is also exercising its discretion to scrutinize the Katz/Novik Deal under
20 Bankruptcy Code § 363. While there may be claims flowing in both directions here, the
21 bankruptcy estate does not dispute the merits of Katz/Novik's secured and unsecured
22 claims. From this perspective, the transaction resembles a "sale" of not only the
23 bankruptcy estate's alleged claims against the Katz Family Members but against all other
24 third parties. "When confronted with a motion to approve a settlement under Rule 9019(a),
25 a bankruptcy court is obliged to consider, as part of the 'fair and equitable' analysis,
26 whether any property of the estate that would be disposed of in connection with the
27 settlement might draw a higher price through a competitive process and be the proper
28 subject of a section 363 sale. Whether to impose formal sale procedures is ultimately a

matter of discretion that depends upon the dynamics of the particular situation." *Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Ent. Grp.)*, 292 B.R. 415, 421-22 (9th Cir. BAP 2003).

Further, "[t]o satisfy section 363, the sale must be proposed in good faith and for a proper purpose and realize optimal value . . . for the estate under the circumstances." *Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 833 F. App'x 116, 119 (9th Cir. 2020); *see also Paulman v. Gateway Venture Partners Iii, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998) ("A good faith buyer is one who buys in good faith and for value."). "Lack of good faith is typically shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *In re Filtercorp, Inc.*, 163 F.3d at 577 (quoting *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992)). Additionally, while "it is not per se bad faith for an insider to purchase the assets of the debtor," the sale of property to an insider is subject to careful scrutiny. *Mission Prod. Holdings v. Old Cold, LLC (In re Old Cold, LLC)*, 558 B.R. 500, 516 (1st Cir. BAP 2016); *see Coleman v. ANMP (In re Dexter Distrib. Corp.)*, 434 F. App'x. 618, 619 (9th Cir. 2011). "In this context, higher scrutiny requires a debtor to demonstrate 'that the assets are being sold for the highest price attainable' and 'that the insider transaction is the result of bona fide arm's length transaction and not driven by other factors.'" *In re Tempnology, LLC*, 542 B.R. 50, 65 (Bankr. D.N.H. 2015) (quoting *In re Tidal Const. Co., Inc.*, 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009)); *see also Mission Prod. Holdings, Inc. v. Old Cold LLC (In re Old Cold LLC)*, 879 F.3d 376, 384 (1st. Cir. BAP 2018).

Belinda Novik and Barry Katz are insiders of the Debtor. *See* 11 U.S.C. § 101(31)(B)(vi). However even when carefully scrutinized, the Katz/Novik Deal was proposed in good faith and for a proper purpose. Artesian is a defunct entity with no income stream and the bulk of its cash is someone else's cash collateral. Simply put, Artesian has no independent means to pay its creditors, and the bankruptcy estate turned to its only ready source of funds to propose the Plan. As stated above, the Katz/Novik Deal ensures that the Plan's administrative expenses and priority claims will be paid in full.

Admittedly, the $50,000 for the general, unsecured creditors is *de minimis*; yet no one has concretely suggested a more fruitful path towards a confirmable plan of reorganization. The court's spitball calculations indicates that the bankruptcy estate – if it retained counsel on a 33% contingency fee agreement – would need to recover at least one million dollars in collectible judgments/settlements to match this deal. The Katz/Novik Deal also represents the "optimal value" for the bankruptcy estate under the circumstances. The Compromise Motion did not attract any overbids, and no interested party took the initiative to conduct a Rule 2004 examination to evaluate Artesian's potential litigation claims.[11] There is also no evidence that the Katz Family Members colluded with the Debtor to dissuade other potential bidders. Webb (and not Noah Katz) negotiated this agreement with Katz/Novik. Webb also inquired if Quinlivan wanted to overbid, and he declined. The evidence therefore demonstrates that this was a bona fide arm's length transaction – all parties were represented by separate counsel, Webb, not Noah Katz negotiated on the Debtor's behalf, and the Motion to Compromise was served broadly to encourage potential overbids. The court therefore sees no need to create auction procedures.

Accordingly, the Compromise Motion is **APPROVED**.[12]

**Plan Confirmation**

Bankruptcy Code § 1191(a) governs consensual plans and states that a bankruptcy court shall confirm a SubChapter V plan "only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met." Nonconsensual SubChapter V plans must satisfy the applicable requirements in Bankruptcy Code § 1191(b). Section

---

[11] The Certificate of Service (Docket Entry No. 122) shows that the Notice of Motion to Approve Compromise of Controversy, Motion to Compromise, Declaration of Edward Webb, and Declaration of Noah Katz were served on the Debtor, Webb, the U.S. Trustee, the Subchapter V Trustee, all parties who requested special notice, all creditors who filed a claim in the bankruptcy case, and the 20 largest unsecured creditors.

[12] For the same reasons, Quinlivan's motion under Bankruptcy Code § 1183(b)(2) to expand the SubChapter V trustee's duties is **DENIED**. Webb is an experienced CRO, and his staff examined Artesian and Noah Katz's finances before and as part of the Compromise Motion. The court therefore believes that cause does not exist to empower the SubChapter V trustee to investigate the Debtor's financial affairs.

- 12 -

1191(b) provides in pertinent part that "if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class or claims or interests that is impaired under, and has not accepted, the plan." The general unsecured creditor class is the only impaired class that rejected the Plan. Artesian must demonstrate the confirmation elements by a preponderance of the evidence.

The Plan satisfies § 1129(a)'s relevant provisions:

1) Artesian and the Plan have complied with the applicable provisions of this title and Artesian has proposed the Plan in good faith and not by any means forbidden by law (§§ 1129(a)(1) – (3)). Quinlivan's objection that the Plan was not filed in good faith is overruled. "A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1037 (9th Cir. 2013) [citations omitted]. The Plan meets those objectives and purposes. Liquidating Chapter 11 plans are commonplace, and the Plan is providing dividends to all classes that are consistent with the Bankruptcy Code.[13] While good faith may also entail "a fundamental fairness in dealing with one's creditors,[14]" the Plan meets this standard by fully paying those creditors who must be paid in full and providing some dividend to impaired creditors. The court understands Quinlivan's distain for such a small dividend to the general unsecured creditor class, but, as demonstrated herein, the Debtor has satisfied the best interests of creditors test.

---

[13] Quinlivan also complains that the Debtor did not ask the SubChapter V trustee to facilitate the development of a consensual plan. The evidence indicates that the parties' attorneys discussed and exchanged documentation regarding Quinlivan's objections and that the SubChapter V trustee was aware of these communications. The trustee is not objecting to plan confirmation on any ground.

[14] *Jorgensen v. Federal Land Bank of Spokane (In re Jorgensen)*, 66 B.R. 104, 109 (9th Cir. BAP 1986).

- 13 -

2) Artesian's pre-confirmation professional fees are subject to this court's review and approval (§ 1129(a)(4)).

3) While the reorganized Artesian will be a defunct company, Noah Katz is retaining his equity interest and Webb will remain in place to ensure the Plan is performed. These roles are consistent with the interest of creditors, the sole equity holder and with public policy (§ 1129(a)(5)).

4) The sole, impaired secured class has accepted the Plan and, for reasons stated by this court in its discussion of the Compromise Motion, the Plan satisfies the best interest of creditors test (§ 1129(a)(7)).

5) The Plan pays its priority employee and consumer deposit creditors in full on the Effective Date and its priority tax claims within 5 years of the petition date (§ 1129(a)(9)).

6) The Plan is a liquidating plan and is not likely to be followed by another liquidation (§ 1129(a)11)).

The Plan also satisfies § 1191(b) because it does not discriminate unfairly against the general unsecured creditor class. There is only one class for the general unsecured creditor body, and while Quinlivan openly hints that his claim should be separately classified (which might require this court to conduct an in-depth discrimination analysis), he has not demonstrated why that would be appropriate nor objected to the Plan on that basis. Moreover, the disparate treatment between the priority unsecured classes and the general unsecured class is rationally related to the varying rights of these creditor classes. The Plan is also "fair and equitable" as those terms are defined in § 1191(c). Section 1191(c)(2)(A) requires that,

> As of the effective date of the plan –
>
> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3 year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

- 14 -

> (B) the value of the property to be distributed under the plan in the 3 year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

No one disputes that this is a liquidating plan and that Artesian is a defunct company with no plan to restart its business operations. Given this, all of Artesian's future "income" – the payments under the Katz/Novik Deal – is being used to fund the Plan.

Section 1191 also requires (in subsection (c)(3)) evidence "[t]hat the debtor will be able to make all payments under the plan; or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and . . . the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event the payments are not made." Katz/Novik have submitted a declaration that they can make the payments under the Katz/Novik Deal. No one disputes their ability to make the payments, and their past funding of Artesian is adequate evidence of this.

Finally, Quinlivan objects to confirmation because the Plan fails to acknowledge that creditors may file non-dischargeability actions under Bankruptcy Code § 523(a). Quinlivan refers this court to Bankruptcy Code § 1192, which provides (in pertinent part) that where a non-consensual plan is confirmed under § 1191(b) the court, "unless [it] approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, except any debt . . . (2) of the kind specified in section 523(a) of this title." Historically, non-dischargeability adversary proceedings in Chapter 11 under § 523(a) could only be commenced against individual debtors. *See* Bankruptcy Code § 1141(d)(2). And no discharge was ever available to corporate Chapter 11 debtors that proposed and confirmed liquidating plans. *See* Bankruptcy Code § 1141(d)(3). Bankruptcy Code § 1192, however, may add a new twist to the Chapter 11 discharge landscape, as one circuit court, *In re Cleary Packaging*, 36 F.3d 509 (4th Cir. 2022) has

- 15 -

held that individual *and* corporate Subchapter V debtors who confirm non-consensual plans are subject to § 523(a) non-dischargeability litigation.  While bankruptcy courts nationwide are examining this issue, it has no relevance in this case because the Plan expressly waives Artesian's right to a Chapter 11 discharge.  The court construes Article 9 of the Plan as an express written waiver of the Debtor's discharge and approves it.  The court declines to set a deadline for dischargeability actions.

   For the reasons stated above, the Plan is **CONFIRMED**.

**\*\*\*END OF ORDER\*\*\***

1   Case No. 22-40396

2                           **COURT SERVICE LIST**

3

4   Recipients are ECF participants

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -